## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **Ledge Lounger, Inc.,**<br><br>  **Plaintiff,**<br><br> **v.**<br><br>**Global Lift Corp.**<br>  **d/b/a Global Pool Products,**<br><br>  **Defendant.** | **Case No.  4:23-cv-04258**<br><br>**Jury Trial Demanded**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114**<br><br>**(2) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);**<br><br>**(3) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**<br><br>**(4) TRADE DRESS DILUTION IN VIOLATION OF TEX. BUS. & COM. CODE § 16.103;**<br><br>**(5) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**<br><br>**(6) COMMON LAW TRADE DRESS INFRINGEMENT;**<br><br>**(7) COMMON LAW UNFAIR COMPETITION;**<br><br>**(8) COMMON LAW MISAPPROPRIATION; AND**<br><br>**(9) UNJUST ENRICHMENT.** |

## <u>COMPLAINT</u>

Plaintiff, Ledge Lounger, Inc. ("Ledge Lounger" or "Plaintiff"), for its complaint against

Global Lift Corp. d/b/a Global Pool Products ("Global Pool" or "Defendant"), alleges as follows:

**PARTIES**

1.      Ledge Lounger is a company organized and existing under the laws of the State of Texas with a principal place of business at 616 Cane Island Parkway, Suite 100, Katy, Texas 77494.

2.      Upon information and belief, Global Lift Corp. is a company organized and existing under the laws of the State of Michigan with a principal place of business at 1330 Pigeon Road, Bad Axe, Michigan 48413. Upon information and belief, Global Lift Corp. does business under the name Global Pool Products.

**JURISDICTION AND VENUE**

3.      This is a complaint for damages and injunctive relief and includes multiple grounds for relief including trade dress infringement, trade dress dilution, unfair competition and false designation of origin, misappropriation, and unjust enrichment. This complaint arises under the Texas Business & Commerce Code; the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq. ("the Lanham Act"); federal common law; and state common law, including the law of Texas.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, and 1367(a).

5.      This Court has personal jurisdiction over Global Pool, *inter alia*, because the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, confers personal jurisdiction over Global Pool and exercising jurisdiction is consistent with due process. On information and belief, Global Pool purposefully directed business activities to Texas and this district by delivering products manufactured by or for Global Pool, including its Global Lounger, into the stream of commerce with the expectation that its products would be purchased by or used by consumers in Texas and this district. *See* https://global-poolproducts.com/find-a-dealer/ ("Global Pool Products does not sell direct to consumers but we are happy to help you find a dealer near you."). Upon information

and belief, Global Pool's products, including the Global Lounger, have and are being sold through one or more dealers and distributors in Texas and this district. On information and belief, Global Pool sales representatives solicit sales of its products, including the Global Lounger, in Texas and in this district. On information and belief, Global Pool's business activities and contacts with Texas and this district are continuous and systematic.

6.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

## FACTUAL BACKGROUND

### Ledge Lounger's Intellectual Property

7.      For over a decade, Ledge Lounger has continuously engaged in and is at the forefront of the design, development, manufacture, promotion, and sale of outdoor furniture, including its Signature Chaise™ chair ("Signature Chaise™") and Signature Chaise™ Deep chair (collectively, "Ledge Lounger's Furniture"). Ledge Lounger created the unique, distinctive, and non-functional designs of Ledge Lounger's Furniture. Ledge Lounger has extensively and continuously promoted and used these designs in the United States including Texas. As result of its extensive and continuous promotion and use, Ledge Lounger's designs have become well-known indicators of the origin and quality of Ledge Lounger's Furniture. Ledge Lounger's designs also have acquired substantial secondary meaning in the marketplace and have become famous.

8.      Ledge Lounger has enjoyed significant sales of Ledge Lounger's Furniture throughout the United States, including sales to customers in the State of Texas. Ledge Lounger has also invested tremendous resources in the design, development, manufacture, advertising, and marketing of Ledge Lounger's Furniture. The designs of Ledge Lounger's Furniture have received widespread and unsolicited public attention.

9.      For example, Ledge Lounger's Furniture has been featured in numerous newspapers, magazines, and Internet articles and posts and in numerous television programs

throughout the United States and Texas.

10.    As another example, numerous television programs shown throughout the United States and Texas have featured Ledge Lounger's Furniture including, for example, Cool Pools (HGTV, DIY), Insane Pools (Animal Planet), Pool Kings (HGTV, DIY), Desert Flippers (HGTV), Big Brother (CBS), and WAGS Miami (E! Network).

11.    As yet another example, numerous magazines throughout the United States and Texas have featured Ledge Lounger's Furniture, including, for example, Luxury Pools magazine and Luxury Home magazine:



**Illustration 1: Images of Magazines Featuring Ledge Lounger's Furniture**

12.    In addition, numerous celebrities throughout the United States and Texas have been photographed or have shared photographs of Ledge Lounger's Furniture on social media, including Kendall Jenner, Ellen DeGeneres, Kourtney Kardashian, Christina Hall (fka Christina El Mousa-Anstead), Kim Kardashian, J.J. Watt, Steve Aoki, and other such celebrities and professional

athletes that have hundreds of millions of social media followers.

13.     As another example, numerous resort-type and commercial properties throughout the United States and Texas own and use Ledge Lounger's Furniture, including the Marriot Marquis in Houston, Texas, the Post Oak Hotel in Houston, Texas, the Hotel Zaza in Houston, Texas, the Embassy Suites in The Woodlands, Texas, the Hilton Garden Inn in Dallas, Texas, the La Cantera in San Antonio, Texas, the Fairmont in Austin, Texas, the Golden Nugget in Lake Charles, Louisiana, the Golden Nugget in Biloxi, Mississippi, the Cosmopolitan in Las Vegas, Nevada, the MGM Grand in Las Vegas, Nevada, the Raleigh Hotel in Miami, Florida, the Laylow Hotel in Waikiki, Hawaii, Royal Caribbean Cruise Lines throughout the world, and Top Golf throughout the country, to name a few.

14.     The designs of Ledge Lounger's Furniture have distinctive and nonfunctional features that identify to consumers that the origin of the furniture products is Ledge Lounger. As a result of at least Ledge Lounger's continuous and exclusive use of the designs of Ledge Lounger's Furniture, Ledge Lounger's marketing, advertising, and sales of Ledge Lounger's Furniture, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, Ledge Lounger owns rights in the designs and appearances of Ledge Lounger's Furniture, which consumers have come to uniquely associate with Ledge Lounger.

15.     Ledge Lounger owns trade dress rights relating to the source identifying features of Ledge Lounger's Furniture designs. Ledge Lounger has extensively and continuously promoted and used its designs for years in the United States and in Texas. Through that extensive and continuous promotion and use, Ledge Lounger's designs have become well-known indicators of the origin and quality of Ledge Lounger's Furniture. Ledge Lounger's designs have also acquired substantial secondary meaning in the marketplace and have become famous.

16.     Ledge Lounger owns U.S. Trademark Registration No. 6,932,905 (the "'905 Mark"), a federal trade dress registration relating to Ledge Lounger's Signature Chaise™ product.

17.     On December 27, 2022, the '905 Mark was duly and legally registered in the U.S. Patent and Trademark Office by Ledge Lounger. A copy of the '905 Mark Registration Certificate is attached as Exhibit 1. Ledge Lounger owns the entire right, title, and interest in and to the '905 Mark. An exemplary image of the '905 Mark is shown below:

| Illustration 2: Drawing of the '905 Mark (Ex. 1) |
|---|



18.     The '905 Mark consists of a three-dimensional configuration of a chair curved like a wave where the back of the chair slopes down and the lower half of the chair curves up and down towards the right. The bottom side of the chair and the horizontal line at the base of the curve to the right side appear in broken lines and are not claimed as features of the mark. *See* Ex. 1.

19.     An exemplary image of Ledge Lounger's Signature Chaise™ is shown below:

| Illustration 3: Image of the Signature Chaise™ |
| --- |



20.     As a result of Ledge Lounger's exclusive, continuous, and substantial use, advertising, and sales of products bearing the '905 Mark, including the Signature Chaise™, and the publicity and attention that has been paid to the '905 Mark and the overall look, design, and appearance of the Signature Chaise™, Ledge Lounger's trade dress rights in the '905 Mark and the Signature Chaise™ have become famous and have acquired valuable goodwill and substantial secondary meaning in the marketplace. Indeed, the '905 Mark confirms the source identifying property of the Signature Chaise™.

21.     Ledge Lounger also owns common law trade dress rights in the overall look, design,

and appearance of its Signature Chaise™ Deep chair, which includes the design and appearance of the curves and slopes in the Signature Chaise™ Deep chair; the design and appearance of the profile of the Signature Chaise™ Deep chair; the design and appearance of the curves and slopes of the upper portion of the Signature Chaise™ Deep chair; the design and appearance of the curves and slopes of the middle portion of the Signature Chaise™ Deep chair; the design and appearance of the base, curves, and slopes of the lower portion of the Signature Chaise™ Deep chair; the design and appearance of the arch of the Signature Chaise™ Deep chair; and the relationship of these features to each other and to other features.

22.     An exemplary image of Ledge Lounger's Signature Chaise™ Deep is shown below:

**Illustration 4: Image of Ledge Lounger's Signature Chaise™ Deep chair**



23.     As a result of Ledge Lounger's exclusive, continuous, and substantial use, advertising, and sales of its Signature Chaise™ Deep chair, bearing Ledge Lounger's trade dress, and the publicity and attention that has been paid to Ledge Lounger's trade dress in the Signature Chaise™ Deep chair, Ledge Lounger's trade dress in the Signature Chaise™ Deep chair has become famous and has acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate Ledge Lounger's trade dress in the Signature Chaise™ Deep chair as a source identifier of Ledge Lounger.

24.     Ledge Lounger's Furniture is made in the United States using high-quality components and processes, resulting in a durable, sleek, and attractive final product. For example, Ledge Lounger's Furniture is roto molded, which is a process that is generally more complicated and expensive compared to other methods of manufacturing. As a result of using these high-quality components and processes, Ledge Lounger is well known among consumers and industry professionals for making the highest quality outdoor and lounge furniture.

**Global Pool's Willful and Unlawful Activities**

25.     After Ledge Lounger's Furniture became extremely popular in the marketplace, in particular its Signature Chaise™ and Signature Chaise™ Deep chairs, Global Pool entered the market by selling the infringing products described below.

26.     Without Ledge Lounger's authorization or consent, Global Pool began advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products that violate Ledge Lounger's rights, including the rights protected by Ledge Lounger's intellectual property.

27.     Global Pool's infringing product include, at least, its Global Lounger and Global Lounger with deep water kit (the "Infringing Products"). Exemplary images of Global Pool's Infringing Products from its website, https://global-poolproducts.com/global-lounger/, are shown below in Illustration 5:

| Illustration 5: Images of Global Pool's |
| :---: |
| Infringing Global Lounger Products (https://global-poolproducts.com/global-lounger/) |



*White



*White (options shown: deep water kit, connecting table, & headrest)

28.    It is evident that Global Pool copied Ledge Lounger's extremely popular furniture designs, as illustrated below:



| Illustration 6: Images of Ledge Lounger's Federal Trade Dress Registration and Trade Dress Compared to Global Pool's Infringing Products | |
|---|---|
| Example Images of Ledge Lounger's Federal Trade Dress Registration and Trade Dress | Example Images of Global Pool's Infringing Products |

29.     As a result of Global Pool's activities related to the Infringing Products, there is a likelihood of confusion between Global Pool and its Infringing Products on the one hand, and Ledge Lounger and its trade dress protected products on the other hand.

30.     Ledge Lounger used its trade dress and trademarks extensively and continuously

before Global Pool began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing into the United States its Infringing Products. Moreover, Ledge Lounger's trade dress and trademarks became famous and acquired secondary meaning in the United States, and in the State of Texas generally and in geographic areas in Texas, before Global Pool commenced its infringing activities.

31.     Global Pool promotes and sells, through its dealers, distributors and sales representatives, its Infringing Products to the same types of consumers as those to whom Ledge Lounger promotes and sells its furniture. The Infringing Products Global Pool sells are the same types of products Ledge Lounger sells. The channels of trade through which Global Pool markets and sells the Infringing Products are the same as those used by Ledge Lounger. But, while Ledge Lounger produces and sells high-quality, American-made products, Global Pool sells lower-quality, lower-priced imitations of Ledge Lounger's Furniture.

32.     Global Pool's actions have been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's Furniture and Global Pool's continuing disregard for Ledge Lounger's rights.

33.     Ledge Lounger's correspondence with Global Pool evidences Global Pool's intentional, willful, and malicious disregard for Ledge Lounger's rights. For example, on August 28, 2023, Ledge Lounger sent a letter to Global Pool requesting that Global Pool cease manufacturing, importing, offering for sale, selling, and distributing its Global Lounger chair. *See* Exhibit 2.

34.     On October 4, 2023, Global Pool responded and claimed that it believed that it is not infringing any intellectual property of Ledge Lounger and refused to discontinue the Global Lounger chair.

35.     Because Global Pool has not ceased its infringing activities and is harming Ledge Lounger, and because Global Pool's infringing activities continue to grow and further harm Ledge Lounger, Ledge Lounger has been forced to seek relief in this Court, as more fully described below.

**<u>Count I: Trade Dress Infringement Under § 32 of the Lanham Act, 15 U.S.C. § 1114</u>**

36.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 35 as though fully set forth herein.

37.     The '905 Mark is federally registered with the U.S. Patent and Trademark Office, as set forth above.

38.     The actions of Global Pool described above including, without limitation, its unauthorized use of the '905 Mark, and confusingly similar variations thereof, in commerce to sell, distribute, advertise, or promote Global Pool's Infringing Products throughout the United States, including Texas, constitutes trade dress infringement in violation of 15 U.S.C. § 1114.

39.     Ledge Lounger has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law as a result of Global Pool's continuing infringing activities.

40.     The actions of Global Pool, if not enjoined, will continue. Ledge Lounger is entitled to injunctive relief under at least 15 U.S.C. § 1116.

41.     Ledge Lounger is also entitled to recover damages in an amount to be proven at trial, including, at least, Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. § 1117. Ledge Lounger believes the actions of Global Pool were taken willfully and with the intention of violating the trade dress rights of Ledge Lounger, making this an exceptional case entitling Ledge Lounger to recover treble damages and attorneys' fees.

**Count II: Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

42.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

43.     Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Ledge Lounger's trade dress in its Signature Chaise™ and Signature Chair™ Deep chairs. Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Global Pool with Ledge Lounger as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger.

44.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

45.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

46.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count III: Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

47.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 46 as though fully set forth herein.

48.     Based on the activities described above, including, for example, Global Pool's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Infringing Products, Global Pool is likely to dilute, has diluted, and continues to dilute Ledge Lounger's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Specifically, Global Pool's Infringing Products are likely to dilute, have diluted, and continue to dilute, at least, Ledge Lounger's famous trade dress rights in the Signature Chaise™ chair and Signature Chaise™ Deep chairs. Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Ledge Lounger's famous trade dress at least by eroding the public's exclusive identification of Ledge Lounger's famous trade dress with Ledge Lounger and Ledge Lounger's products, by lessening the capacity of Ledge Lounger's famous trade dress to identify and distinguish Ledge Lounger's products, and by impairing the distinctiveness of Ledge Lounger's famous trade dress.

49.     Ledge Lounger's trade dress is famous and is entitled to protection under the Lanham Act. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger's trade dress has acquired distinctiveness, as acknowledged by the U.S. Patent and Trademark Office, through Ledge Lounger's extensive and continuous promotion and use of Ledge Lounger's trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a famous, well-known indicator of the origin and quality of Ledge Lounger's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of Ledge Lounger and Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace.

Moreover, Ledge Lounger's trade dress became famous and acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with the Infringing Products.

50.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

51.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

52.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

### Count IV: Trade Dress Dilution under Tex. Bus. & Com. Code § 16.103

53.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 52 as though fully set forth herein.

54.     Based on the activities described above, including, for example, Global Pool's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Infringing Products, Global Pool is likely to dilute, has diluted, and continues to dilute Ledge Lounger's trade dress in violation of § 16.103 of the Texas Business & Commerce Code. Specifically, Global Pool's Infringing Products are likely to dilute, have diluted, and continue to dilute, at least, Ledge Lounger's famous trade dress rights in the Signature Chaise™

and Signature Chaise™ Deep chairs. Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Ledge Lounger's famous trade dress at least by eroding the public's exclusive identification of Ledge Lounger's famous trade dress with Ledge Lounger, by lessening the capacity of Ledge Lounger's famous trade dress to identify and distinguish Ledge Lounger's products, and by impairing the distinctiveness of Ledge Lounger's famous trade dress.

55.     Ledge Lounger's trade dress is famous and is entitled to protection under Texas law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States and in the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a famous, well-known indicator of the origin and quality of Ledge Lounger's products in the United States and in the State of Texas generally and in geographic areas in Texas, and Ledge Lounger's trade dress is widely recognized by the public throughout Texas and in geographic areas in Texas as a designation of the source of Ledge Lounger and Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace, including in the State of Texas and in geographic areas in Texas. Moreover, Ledge Lounger's trade dress became famous and acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with the Infringing Products.

56.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge

Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

57.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

58.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced profits and damages, and reasonable attorney fees under at least Tex. Bus. & Com. Code § 16.104.

### Count V: Unfair Competition and False Designation of Origin Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

59.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 58 as though fully set forth herein.

60.     Global Pool's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Global Pool has obtained an unfair advantage as compared to Ledge Lounger through Global Pool's use of Ledge Lounger's trade dress, and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Global Pool's Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chaise™ Deep chairs.

61.     Ledge Lounger's trade dress is entitled to protection under the Lanham Act. Ledge

Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with the Infringing Products.

62.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

63.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count VI: Common Law Trade Dress Infringement

64.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 63 as though fully set forth herein.

65.     Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law trade dress infringement, at least because Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by,

authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chaise™ Deep chairs.

66.    Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States and the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

67.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

68.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

69.    Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

## Count VII: Common Law Unfair Competition

70.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 69 as though fully set forth herein.

71.     Global Pool's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law unfair competition, at least by palming off/passing off of Global Pool's goods, by simulating Ledge Lounger's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Global Pool's Infringing Products, and by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chair™ Deep chairs.

72.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

73.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least

substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

74.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

75.    Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

### Count VIII: Common Law Misappropriation

76.    Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 75 as though fully set forth herein.

77.    Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law misappropriation.

78.    Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money. Global Pool has wrongfully used Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger and gained a special advantage because Global Pool was not burdened with the expenses incurred by Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chair™ Deep chairs. Global Pool has commercially damaged Ledge Lounger, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of Global Pool's Infringing Products, by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated

with Ledge Lounger, and by taking away sales that Ledge Lounger would have made.

79.    Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

80.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Moreover, as a result of its misappropriation, Global Pool has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Ledge Lounger invested in establishing the reputation and goodwill associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

81.    Global Pool's misappropriation of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

82.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

## Count IX: Unjust Enrichment

83.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 82 as though fully set forth herein.

84.     Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its Infringing Products, in direct competition with Ledge Lounger, constitute unjust enrichment, at least because Global Pool has wrongfully obtained benefits at Ledge Lounger's expense. Global Pool has also, *inter alia*, operated with an undue advantage.

85.     Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money. Global Pool has wrongfully used and is wrongfully using Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger, and has gained and is gaining a wrongful benefit by undue advantage through such use. Global Pool has not been burdened with the expenses incurred by Ledge Lounger, yet Global Pool is obtaining the resulting benefits for its own business and products.

86.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States and the State of Texas. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before

Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

87.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Ledge Lounger accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Global Pool has wrongfully obtained and is wrongfully obtaining a benefit at Ledge Lounger's expense by taking undue advantage and free-riding on Ledge Lounger's efforts and investments, and enjoying the benefits of Ledge Lounger's hard-earned goodwill and reputation.

88.     Global Pool's unjust enrichment at Ledge Lounger's expense has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

89.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits.

## **Demand for Jury Trial**

Ledge Lounger hereby demands a jury trial on all issues so triable.

## **Relief Sought**

WHEREFORE, Plaintiff respectfully prays for:

1.  Judgment that Global Pool has willfully (i) infringed Ledge Lounger's trade dress registration in violation of § 1114 of Title 15 in the United States Code; (ii) infringed

Ledge Lounger's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) diluted Ledge Lounger's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iv) diluted Ledge Lounger's trade dress in violation of Tex. Bus. & Com. Code § 16.103; (v) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (vi) violated Ledge Lounger's common law rights in Ledge Lounger's trade dress; (vii) engaged in common law unfair competition; (viii) engaged in common law misappropriation; and (iv) been unjustly enriched at Ledge Lounger's expense; and that all of these wrongful activities by Global Pool were willful;

2. A preliminary and permanent injunction against further infringement and dilution of Ledge Lounger's trade dress by Global Pool and each of Global Pool's agents, employees, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, pursuant to at least 15 U.S.C. § 1116, and Tex. Bus. & Com. Code § 16.104;

3. An Order directing Global Pool to recall all Infringing Products sold and/or distributed and to provide a full refund for all recalled Infringing Products;

4. An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products, (ii) any other products that use a copy, reproduction, or colorable imitation of Ledge Lounger's trade dress in Global Pool's possession or control, (iii) all plates, molds, and other means of making the Infringing Products in Global Pool's possession, custody, or control, or under its direction, and (iv) all advertising materials related to the Infringing Products in Global Pool's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5. An Order directing Global Pool to publish a public notice providing proper attribution of Ledge Lounger's trade dress rights, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6. An Order barring importation of the Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7. An award of Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116, and 1117; Tex. Bus. & Com. Code § 16.104; and

8. Such other and further relief as this Court deems just and proper.


Dated:  November 10, 2023                    Respectfully submitted,

                                             BANNER & WITCOFF, LTD.

                                             By: */s/Scott A. Burow*
                                                 Scott A. Burow (admitted in the Southern
                                                 District of Texas)
                                                 Attorney-In-Charge
                                                 Illinois Bar No. 6242616
                                                 Southern District of Texas Bar No. 3468321
                                                 sburow@bannerwitcoff.com
                                                 BANNER & WITCOFF, LTD.
                                                 71 South Wacker Drive, Suite 3600
                                                 Chicago, IL 60606
                                                 Telephone: (312) 463-5000
                                                 Facsimile: (312) 463-5001

                                                 Matthew P. Becker (*pro hac vice forthcoming*)
                                                 Illinois Bar No. 6255614
                                                 mbecker@bannerwitcoff.com

Christian T. Wolfgram (*pro hac vice forthcoming*)
Illinois Bar No. 6333565
cwolfgram@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

ATTORNEYS FOR PLAINTIFF
LEDGE LOUNGER, INC.