UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LEDGE LOUNGER, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:23-CV-4258 |
| § | |
| GLOBAL LIFT CORP., § | |
| § | |
| Defendant. § | |

## ORDER TRANSFERRING CASE

Pending before the Court in this trade dress infringement case is a motion filed by Defendant Global Lift Corporation ("Global Lift") requesting that the Court either dismiss this case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or transfer it under 28 U.S.C. § 1404(a). Global Lift's motion (Dkt. 24) is **GRANTED IN PART AND DENIED IN PART**. The Court will **TRANSFER** this case to the United States District Court for the Eastern District of Michigan, Northern Division.

### A. Background

Plaintiff Ledge Lounger, Inc. ("Ledge Lounger") is a Texas-based company that manufactures these pool chairs:





Dkt. 1 at pp. 2, 7–8.

Global Lift is a Michigan-based company that manufactures these pool chairs:



Case 1:24-cv-11267-TLL-PTM   ECF No. 3, PageID.69   Filed 05/14/24   Page 3 of 12



Dkt. 1 at pp. 2, 10.

In this lawsuit, Ledge Lounger has sued Global Lift for trade dress infringement, trade dress dilution, unfair competition, misappropriation, and unjust enrichment. (Dkt. 1 at p. 1). In its motion seeking dismissal or transfer, Global Lift contends that "there is *nothing* in [Ledge Lounger's] complaint factually supporting personal jurisdiction over Global [Lift]." (Dkt. 24 at p. 15) (emphasis in Global Lift's brief). Global Lift has also attached an unsworn declaration to its motion in which its President and Chief Executive Officer, Joshua Steinman ("Steinman"), explains that Global Lift "has no offices or facilities located outside of Michigan" and lists numerous key witnesses who are located in Michigan (along with one who lives in Minnesota). (Dkt. 24-3).

In response to Global Lift's motion, Ledge Lounger has presented unauthenticated printouts from websites that, according to Ledge Lounger, show that Global Lift had a

regional sales manager residing in Texas in August of 2023; "appears" to have a dealer in Texas (though the printout from that alleged dealer's website does not show an option to order Global Lift's allegedly infringing chair); and participated in a trade show in Houston in February of 2023 and a trade show in San Antonio in February of 2024. (Dkt. 25 at pp. 10–11; Dkt. 25-2; Dkt. 25-3; Dkt. 25-5; Dkt. 25-6; Dkt. 25-7; Dkt. 25-8; Dkt. 25-9). Ledge Lounger also claims in its brief that its "key witnesses reside in Texas" but does not provide any evidence naming or discussing those witnesses. (Dkt. 25 at p. 15).

   **B.  The relevant factors and legal standard**

28 U.S.C. § 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). In deciding whether to transfer a case under Section 1404(a), district courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *Weber v. PACT XPP Technologies, AG*, 811 F.3d 758, 766–67 (5th Cir. 2016). The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. at 767. "No factor is of dispositive weight," and the Fifth

Circuit has "cautioned against a raw counting of the factors that weighs each the same." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quotation marks and brackets omitted) ("Indeed, we have found an abuse of discretion even where a majority of factors are neutral.").

Motions to transfer venue under Section 1404(a) are committed to the sound discretion of the district court. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). The party seeking a transfer has the burden of showing good cause for the transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Generally, the burden on a party seeking a transfer is "significant[,]" *id.* at 314 n.10, and a transferee venue must be "clearly more convenient than the venue chosen by the plaintiff" for a transfer to be granted. *Id.* at 315.

### C. Analysis

The Court will transfer this case to the Eastern District of Michigan, Northern Division under 28 U.S.C. § 1404. Of paramount importance in the Court's analysis of the relevant factors is the fact that Global Lift has provided specific statements contained in an unsworn declaration while Ledge Lounger has relied on unauthenticated website printouts and "unsupported contentions in various litigation documents[.]" *See TikTok*, 85 F.4th at 360, 365 n.14 (explaining that a district court's inferences and conclusions regarding the Section 1404 factors must be "rooted in record evidence").

—*The relative ease of access to sources of proof*

This factor focuses on the location of documents and physical evidence relating to the case. *Id.* at 358. This factor "bears less strongly on the transfer analysis" when the vast majority of the evidence is electronic. *Id.*

Based on the record evidence, this factor weighs slightly in favor of transfer. In his declaration, Steinman testifies that the documents related to Global Lift's creation, design, marketing, and sale of its allegedly infringing chair are located in Bad Axe, Michigan; but Steinman concedes that those documents are "mostly electronic[.]" (Dkt. 24-3 at p. 3). Steinman does point out that discovery involving "physical devices . . . would likely have to take place in Bad Axe" because the components used in manufacturing Global Lift's allegedly infringing chair are all sourced and assembled in Michigan. (Dkt. 24-3 at pp. 2–3). For its part, Ledge Lounger presents no evidence relevant to this factor and simply states in its brief that "[d]ocuments and physical evidence relating to [Ledge Lounger's] activities are in Texas at [Ledge Lounger's] principal place of business." (Dkt. 25 at p. 15).

This factor weighs slightly in favor of transfer. The evidentiary record reflects that, although some evidence may have to be examined in Michigan, most of the relevant evidence is electronic.

—*The availability of compulsory process*

This factor focuses on the availability of compulsory process to secure the attendance of witnesses. *Id.* at 360. It favors transfer where non-party witnesses are outside the transferor district's subpoena power and a proper venue that does enjoy absolute subpoena power for both depositions and trial is available. *Id.* However, the availability of

compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify. *Id.*

Based on the record evidence, this factor weighs slightly in favor of transfer. In his declaration, Steinman lists several non-party witnesses who would be under no obligation to testify absent a subpoena, and those witnesses are all located within the Eastern District of Michigan's subpoena power and outside of this Court's subpoena power. (Dkt. 24-3). However, there is no evidence in the record showing that any of the witnesses listed by Global Lift would be unwilling to testify. Ledge Lounger, again, presents no evidence and simply states in its brief that its "key witnesses[,]" none of whom is identified, "reside in Texas[.]" (Dkt. 25 at p. 15).

This factor weighs slightly in favor of transfer. Although the only witnesses named in the evidentiary record are all located within subpoena range of the Eastern District of Michigan, there is no evidence showing that those witnesses would be unwilling to testify.

—*The cost of attendance for willing witnesses*

To evaluate the cost of attendance for willing witnesses, the Fifth Circuit utilizes a "100-mile test." *Id.* at 361. Under that test, when the distance between an existing venue and a proposed transferee venue is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled. *Id.* As the Fifth Circuit has explained, additional distance "means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses

must be away from their regular employment." *Volkswagen*, 545 F.3d at 317. In short, "it is more convenient for witnesses to testify at home[.]" *Id.*

Based on the record evidence, this factor weighs heavily in favor of transfer. The Southern District of Texas, Houston Division is located in Houston, Texas; the Eastern District of Michigan, Northern Division is located in Bay City, Michigan. *See* 28 U.S.C. §§ 102(a)(2), 124(b)(2). In his declaration, Steinman testifies that the distance between the two courthouses is roughly 1,200 miles. (Dkt. 24-3 at p. 1). Steinman also lists several relevant witnesses who are located within 100 miles of the Bay City, Michigan courthouse, along with one witness who now resides in Rochester, Minnesota. (Dkt. 24-3). Steinman does not identify any witnesses who reside in Texas. (Dkt. 24-3).

As with the first two factors, Ledge Lounger presents no evidence. Its argument regarding this factor is limited to a statement in its brief that its unnamed "witnesses are located in this District[.]" (Dkt. 25 at p. 16).

This factor weighs heavily in favor of transfer. The only relevant witnesses identified in the evidentiary record are located over a thousand miles away from this Court. All but one—the one exception being the witness who lives in Rochester, Minnesota—live within 100 miles of the Bay City, Michigan courthouse. On this record, under the 100-mile test, the Eastern District of Michigan, Northern Division "is a clearly more convenient venue for most relevant witnesses in this case." *TikTok*, 85 F.4th at 361–62.

> —*All other practical problems that make trial of a case easy, expeditious, and inexpensive*

Based on the record evidence, this factor weighs in favor of transfer, as the parties vehemently disagree as to whether this Court can even hear this case. In its request for dismissal under Federal Rule of Civil Procedure 12(b)(2), Global Lift has vigorously, and with considerable force, argued that this Court may not exercise personal jurisdiction over it because Ledge Lounger "has not identified a sale to any Texas consumer" made by Global Lift either directly or "through any distributor or representative of Global [Lift] in Texas." (Dkt. 24 at p. 14). In response, Ledge Lounger has provided unauthenticated website printouts purporting to show that Global Lift had a regional sales manager residing in Texas in August of 2023; "appears" to have a dealer in Texas (though the printout from that alleged dealer's website does not show an option to order Global Lift's allegedly infringing chair); and participated in a trade show in Houston in February of 2023 and a trade show in San Antonio in February of 2024. (Dkt. 25 at pp. 10–11; Dkt. 25-2; Dkt. 25-3; Dkt. 25-5; Dkt. 25-6; Dkt. 25-7; Dkt. 25-8; Dkt. 25-9). Ledge Lounger has also requested that the Court allow it to take jurisdictional discovery. (Dkt. 25 at p. 13).

On the record before the Court, the merits of the jurisdictional dispute appear to overwhelmingly favor Global Lift. But leaving that aside, it is undeniable that the issue of personal jurisdiction will somewhat impede the progress of this case (and could perhaps lead to the case's dismissal altogether) in this Court but would create no obstacle to the case's resolution in the Eastern District of Michigan. Accordingly, this factor weighs in favor of transfer. *Cf. Defense Distributed v. Bruck*, 30 F.4th 414, 433–35 & n.24 (5th Cir.

2022) (analyzing this factor by considering whether the district court would have needed to decide whether it had personal jurisdiction over the moving defendant had it not transferred the case under Section 1404; the Fifth Circuit concluded that the issue of personal jurisdiction over the moving defendant had been settled by an earlier Fifth Circuit opinion in the same case and accordingly was not a concern at the time of the transfer request).

*—The administrative difficulties flowing from court congestion*

This factor focuses on "docket efficiency" as evaluated by the district court, and relevant considerations include whether the case "appears to be timely proceeding to trial" before the transferor court and whether the transferor court believes that it can try the case faster than the transferee court. *TikTok*, 85 F.4th at 363–64 & n.12 (brackets omitted).

In this case, this factor weighs slightly in favor of transfer. Currently, this lawsuit is not actively moving toward trial because Global Lift has asserted a jurisdictional challenge under Federal Rule of Civil Procedure 12(b)(2). Such motions take priority on the Court's motion docket, and this Court strives to move cases to trial efficiently through active management of its trial docket. However, challenges to personal jurisdiction still require time and judicial resources, particularly if the parties engage in jurisdictional discovery, and even if denied those motions stall a case's progress toward trial. As discussed above, there would be no such challenge in the Eastern District of Michigan.

*—The local interest in having localized interests decided at home*

This factor refers not to the parties' significant connections to each forum but rather to "the significant connections between a particular venue and the events that gave rise to

a suit." *Id.* at 364. "Indeed, the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (quotation marks omitted).

On this record, this factor weighs in favor of transfer. The operations of Global Lift, the alleged infringer, are located in Michigan. "Courts have observed that intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *PuraPharm International (H.K.) Limited v. PurePharma, Inc.*, No. 4:14-CV-3181, 2015 WL 1808582, at *2 (S.D. Tex. Apr. 20, 2015) (quotation marks and brackets omitted) (quoting *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791–92 (S.D. Tex. 2005)).

Ledge Lounger contends that Texas is "the place of the alleged wrong" because "[t]oday, almost all courts follow the rule that a claim of trademark infringement takes place where the allegedly infringing sales occur." (Dkt. 25 at p. 17). In support, Ledge Lounger cites *Alcon Laboratories, Inc. v. Lens.com, Inc.*, No. 18-CV-407, 2019 WL 254038, at *5 (E.D.N.Y. Jan. 17, 2019). However, the rule articulated in *Alcon* is inapposite because Ledge Lounger presents no record evidence showing that Global Lift has sold its allegedly infringing chair in Texas, much less in the Southern District of Texas. Accordingly, this factor weighs in favor of transfer. *Cf. CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 21–22 (S.D.N.Y. 2012) (concluding in a trade dress infringement case that the plaintiff's "sparse" evidence of allegedly infringing sales showed "only a minimal connection to" the transferor district and "provide[d] little reason to retain the action" when

11 / 12

the evidence showed that only six percent of the alleged infringer's sales took place in the state containing the transferor district).

*—The familiarity of the forum with the law that will govern the case*

Neither party presents any argument regarding this factor. Accordingly, this factor is neutral.

*—The avoidance of unnecessary problems of conflict of laws*

Neither party presents any argument regarding this factor. Accordingly, this factor is neutral.

### D. Conclusion

Having considered the record and the required factors, the Court concludes that transfer of Ledge Lounger's claims against Global Lift is proper. Global Lift's motion to either dismiss this case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or transfer it under 28 U.S.C. § 1404(a) (Dkt. 24) is **GRANTED IN PART AND DENIED IN PART**. This case is hereby **TRANSFERRED** to the United States District Court for the Eastern District of Michigan, Northern Division.

SIGNED at Houston, Texas on May 13, 2024.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE