## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

| | |
|---|---|
| **Ledge Lounger, Inc.,** | **Case No.  1:24-cv-11267-TLL-PTM** |
| **Plaintiff,** | **Hon. Thomas L. Ludington** |
| | **Magistrate Judge Patricia T. Morris** |
| **v.** | **Jury Trial Demanded** |
| **Global Lift Corp.** | |
| **d/b/a Global Pool Products,** | **FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**[1] |
| **Defendant.** | |

**(1) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114**

**(2) TRADE DRESS INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);**

**(3) TRADE DRESS DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**

**(4) UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**

**(5) COMMON LAW TRADE DRESS INFRINGEMENT;**

**(6) COMMON LAW UNFAIR COMPETITION;**

**(7) COMMON LAW MISAPPROPRIATION; AND**

**(8) UNJUST ENRICHMENT.**

---

[1] Defendant consented to the filing of Plaintiff's First Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2) ("a party may amend its pleading only with the opposing party's written consent").

## FIRST AMENDED COMPLAINT

Plaintiff, Ledge Lounger, Inc. ("Ledge Lounger" or "Plaintiff"), for its first amended complaint against Global Lift Corp. d/b/a Global Pool Products ("Global Pool" or "Defendant"), alleges as follows:

## PARTIES

1.      Ledge Lounger is a company organized and existing under the laws of the State of Texas with a principal place of business at 616 Cane Island Parkway, Suite 100, Katy, Texas 77494.

2.      Upon information and belief, Global Lift Corp. is a company organized and existing under the laws of the State of Michigan with a principal place of business at 1330 Pigeon Road, Bad Axe, Michigan 48413. Upon information and belief, Global Lift Corp. does business under the name Global Pool Products.

## JURISDICTION AND VENUE

3.      This is a complaint for damages and injunctive relief and includes multiple grounds for relief including trade dress infringement, trade dress dilution, unfair competition and false designation of origin, misappropriation, and unjust enrichment. This complaint arises under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq. ("the Lanham Act"); federal common law; and state common law, including the law of Michigan.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, and 1367(a).

5.      This Court has personal jurisdiction over Global Pool, *inter alia*, because Global Pool is a company organized and existing under the laws of the State of Michigan with a principal

place of business in Michigan. Global Pool's business activities and contacts with Michigan and this district are extensive, continuous and systematic.

6.     Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

## FACTUAL BACKGROUND

### Ledge Lounger's Intellectual Property

7.     Since 2011, Ledge Lounger, out of its headquarters in Katy, Texas, has continuously engaged in and is at the forefront of the design, development, manufacture, promotion, and sale of outdoor furniture, including its Signature Chaise™ chair ("Signature Chaise™") and Signature Chaise™ Deep chair (collectively, "Ledge Lounger's Furniture"). Ledge Lounger created the unique, distinctive, and non-functional designs of Ledge Lounger's Furniture at its headquarters in Katy, Texas. Out of its Katy headquarters, Ledge Lounger designed, developed, manufactured, advertised, and marketed Ledge Lounger's Furniture.

8.     Ledge Lounger has extensively and continuously promoted and used the designs reflected in Ledge Lounger's Furniture in the United States. For example, Ledge Lounger's 2015 product catalog prominently featured the Signature Chaise™ chair on its cover and Ledge Lounger has distributed over 250,000 copies of the catalog and over 1,000,000 copies of direct message flyers and similar direct consumer product materials. Ledge Lounger regularly attends tradeshows to market and promote its Signature Chaise™ chair and Signature Chaise™ Deep chair, including at the 2023 Southwest Pool & Spa tradeshow show in Houston, Texas and at the 2024 Southwest Pool & Spa in San Antonio, Texas.

9.     Ledge Lounger extensively promotes its Signature Chaise™ chair and Signature Chaise™ Deep chair using social media, and has over 33,000 followers on its Facebook account and over 51,000 followers on its Instagram account. As result of its extensive and continuous promotion and use, Ledge Lounger's designs have become well-known indicators of the origin

and quality of Ledge Lounger's Furniture. Ledge Lounger's designs also have acquired substantial secondary meaning in the marketplace and have become famous, including in the United States.

10.     Ledge Lounger began selling its Signature Chaise™ chair in 2011 and it has been Ledge Lounger's best-selling product, with sales exceeding $79 million and over 138,000 units. Sales of the Signature Chaise™ Deep chair have exceeded $24 million since 2019. Ledge Lounger has also invested tremendous resources in the design, development, manufacture, advertising, and marketing of Ledge Lounger's Furniture, with expenses exceeding $7,500,000 since 2014.

11.     The designs of Ledge Lounger's Furniture have received widespread and unsolicited public attention. For example, Ledge Lounger's Furniture has been featured in numerous newspapers, magazines, and Internet articles and posts and in numerous television programs throughout the United States.

12.     As another example, numerous television programs shown throughout the United States have featured Ledge Lounger's Furniture including, for example, Cool Pools (HGTV, DIY), Insane Pools (Animal Planet), Pool Kings (HGTV, DIY), Desert Flippers (HGTV), Big Brother (CBS), and WAGS Miami (E! Network).

13.     As yet another example, numerous magazines throughout the United States have featured Ledge Lounger's Furniture, including, for example, Luxury Pools magazine and Luxury Home magazine:

| Illustration 1: Images of Magazines Featuring Ledge Lounger's Furniture |
| --- |



Stellar Magazine featured the Signature Chaise™ chair in a May 31, 2022 article. A July 14, 2022 article in Tampa Magazine also prominently featured the Signature Chaise™ chair.

14.    In addition, numerous celebrities throughout the United States have been photographed or have shared photographs of Ledge Lounger's Furniture on social media, including Kendall Jenner, Ellen DeGeneres, Kourtney Kardashian, Christina Hall (fka Christina El Mousa-Anstead), Kim Kardashian, J.J. Watt, Steve Aoki, and other such celebrities and professional athletes that have hundreds of millions of social media followers.

15.    As another example, numerous resort-type and commercial properties throughout the United States own and use Ledge Lounger's Furniture, including the Marriot Marquis in Houston, Texas, the Post Oak Hotel in Houston, Texas, the Hotel Zaza in Houston, Texas, the Embassy Suites in The Woodlands, Texas, the Hilton Garden Inn in Dallas, Texas, the La Cantera in San Antonio, Texas, the Fairmont in Austin, Texas, the Golden Nugget in Lake Charles,

Louisiana, the Golden Nugget in Biloxi, Mississippi, the Cosmopolitan in Las Vegas, Nevada, the MGM Grand in Las Vegas, Nevada, the Raleigh Hotel in Miami, Florida, the Laylow Hotel in Waikiki, Hawaii, Royal Caribbean Cruise Lines throughout the world, and Top Golf throughout the country, to name a few.

16. Ledge Lounger's Signature Chaise™ product has distinctive and nonfunctional features that identify to consumers that the origin of the furniture product is Ledge Lounger, including the wave form of the chair where the back of the chair slopes down and the lower half of the chair curves up and down towards the right. The design of Ledge Lounger's Signature Chaise™ product and its configuration of the nonfunctional features as a whole is not essential to the use or purpose of a chaise lounge chair. The design of Ledge Lounger's Signature Chaise™ product and its wave-form configuration of the nonfunctional features as a whole does not affect the cost or quality of the article. There are also numerous other alternative designs for chaise lounge chairs, as demonstrated by the wide variety of lounge chairs in the market that do not use Ledge Lounger's trade dress. There is no competitive need for the trade dress of Ledge Lounger's Signature Chaise™ as applied to outdoor furniture because other competitors and consumers alike have diverse choices for the appearance of a chaise.

17. As a result of at least Ledge Lounger's continuous and exclusive use of the design of the Ledge Lounger's Signature Chaise™ product for over twelve years, Ledge Lounger's marketing, advertising, and sales of Ledge Lounger's Signature Chaise™ product, the large number of customers for Ledge Lounger's Signature Chaise™ product and its established place in the market as a high-quality in-pool product, and intentional copying by Global Pool and others, the design of Ledge Lounger's Signature Chaise™ product has acquired highly valuable goodwill, secondary meaning, and fame. As a result, Ledge Lounger owns protectable trade dress rights in

the distinctive design of Ledge Lounger's Signature Chaise™ product, which consumers have come to uniquely associate with Ledge Lounger.

18. Ledge Lounger owns trade dress rights relating to the source identifying features of Ledge Lounger's Furniture designs. Ledge Lounger has extensively and continuously promoted and used its designs for years in the United States. Through that extensive and continuous promotion and use, Ledge Lounger's designs have become well-known indicators of the origin and quality of Ledge Lounger's Furniture. Ledge Lounger's designs have also acquired substantial secondary meaning in the marketplace and have become famous.

19. Ledge Lounger owns U.S. Trademark Registration No. 6,932,905 (the "'905 Mark"), a federal trade dress registration relating to Ledge Lounger's Signature Chaise™ product.

20. Ledge Lounger's registration constitutes prima facie evidence of the trade dress's validity (i.e., the trade dress is distinctive and nonfunctional) and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a).

21. On December 27, 2022, the '905 Mark was duly and legally registered in the U.S. Patent and Trademark Office by Ledge Lounger. A copy of the '905 Mark Registration Certificate is attached as Exhibit 1. Ledge Lounger owns the entire right, title, and interest in and to the '905 Mark. An exemplary image of the '905 Mark is shown below:

| Illustration 2: Drawing of the '905 Mark (Ex. 1) |
| --- |



22.    The '905 Mark consists of a three-dimensional configuration of a chair curved like a wave where the back of the chair slopes down and the lower half of the chair curves up and down towards the right. The bottom side of the chair and the horizontal line at the base of the curve to the right side appear in broken lines and are not claimed as features of the mark. *See* Exhibit 1.

23.    An exemplary image of Ledge Lounger's Signature Chaise™ is shown below:

| Illustration 3: Image of the Signature Chaise™ |
|:---:|
|  |

24.     As a result of Ledge Lounger's exclusive, continuous twelve-plus year use, the extensive advertising and publicity and attention of the Signature Chaise™ product, the substantial amount of sales of products bearing the '905 Mark, including the Signature Chaise™ product, to a large number of customers, the established place of the Signature Chaise™ product in the high-quality in-pool furniture market, and intentional copying of its distinctive design, Ledge Lounger's trade dress in the Signature Chaise™ and trade dress registered in the '905 Mark have become famous and have acquired valuable goodwill and secondary meaning in the marketplace. Indeed, the '905 Mark confirms the source identifying property of the Signature Chaise™.

25.     The trade dress of the Signature Chaise™ chair and/or Signature Chaise™ Deep chair has been intentionally copied by others. For example, Luxury Lounger Inc. has copied Ledge Lounger's trade dress. *See Ledge Lounger Inc. v. Luxury Lounger, Inc.*, 4:23-cv-00727 (S.D. Tex.), Doc#1 at ¶¶ 32-34. So too has Aqua Chairs, LLC. *See Ledge Lounger Inc. v. Aqua Chairs, LLC.*, 4:19-cv-3995 (S.D. Tex.), Doc#1 at ¶¶ 18-25. And also The Step2 Company. *See The Step2 Company LLC v. Ledge Lounger, Inc.*, 5:24-cv-00807 (N.D. Ohio), Doc#1 at 11. Ledge Lounger is actively addressing others who have copied the Signature Chaise™ and/or Signature Chaise™ Deep trade dress.

26.     Ledge Lounger also owns common law trade dress rights in the overall look, design, and appearance of its Signature Chaise™ Deep chair, which mirrors the trade dress of the Signature Chaise™ chair, and adds a distinctive base. The Signature Chaise™ Deep chair includes the design and appearance of the curves and slopes in the Signature Chaise™ Deep chair; the design and appearance of the profile of the Signature Chaise™ Deep chair; the design and appearance of the curves and slopes of the upper portion of the Signature Chaise™ Deep chair; the design and appearance of the curves and slopes of the middle portion of the Signature Chaise™ Deep chair; the design and appearance of the base, curves, and slopes of the lower portion of the Signature Chaise™ Deep chair; the design and appearance of the arch of the Signature Chaise™ Deep chair; and the relationship of these features to each other and to other features.

27.    An exemplary image of Ledge Lounger's Signature Chaise™ Deep is shown below:

| Illustration 4: Image of Ledge Lounger's Signature Chaise™ Deep chair |
| --- |



28.    As a result of Ledge Lounger's exclusive, continuous and substantial use of its Signature Chaise™ Deep chair, extensive advertising, and substantial sales of its Signature Chaise™ Deep chair bearing Ledge Lounger's trade dress to numerous customers, and the publicity and attention that has been paid to Ledge Lounger's trade dress in the Signature Chaise™ Deep chair, its established place in the market as a high-quality in-pool product, and intentional copying of its design, Ledge Lounger's trade dress in the Signature Chaise™ Deep chair has become famous and has acquired valuable goodwill and secondary meaning in the marketplace, as consumers have come to uniquely associate Ledge Lounger's trade dress in the Signature Chaise™ Deep chair as a source identifier of Ledge Lounger, in part, because it mirrors the design and federally protected trade dress of Ledge Lounger's Signature Chaise™ chair.

29.    The design of the Signature Chaise™ Deep and its wave-form configuration of nonfunctional features, as a whole, is not essential to the use or purpose of a chaise lounge chair. The design of Ledge Lounger's Signature Chaise™ Deep and its configuration of the nonfunctional features as a whole does not affect the cost or quality of the article. There are numerous other alternative designs for chaise lounges, as demonstrated by the wide variety of

lounge chairs in the market that do not use Ledge Lounger's trade dress. There is no competitive need for the trade dress of Ledge Lounger's Signature Chaise™ Deep as applied to outdoor furniture because other competitors and consumers alike have diverse choices for the appearance of a chaise.

30.     Ledge Lounger's Furniture is made in the United States using high-quality components and processes, resulting in a durable, sleek, and attractive final product. For example, Ledge Lounger's Furniture is roto molded, which is a process that is generally more complicated and expensive compared to other methods of manufacturing. As a result of using these high-quality components and processes, Ledge Lounger is well known among consumers and industry professionals for making the highest quality outdoor and lounge furniture.

## Global Pool's Willful and Unlawful Activities

31.     After Ledge Lounger's Furniture became extremely popular in the marketplace, in particular its Signature Chaise™ and Signature Chaise™ Deep chairs, Global Pool entered the market by selling the infringing products described below.

32.     Without Ledge Lounger's authorization or consent, Global Pool began advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products that violate Ledge Lounger's rights, including the rights protected by Ledge Lounger's intellectual property.

33. Global Pool's infringing products include, at least, its Global Lounger and Global Lounger with deep water kit (the "Infringing Products"). Exemplary images of Global Pool's Infringing Products from its website, https://global-poolproducts.com/global-lounger/, are shown below in Illustration 5:

| Illustration 5: Images of Global Pool's Infringing Global Lounger Products (https://global-poolproducts.com/global-lounger/) |
| --- |





34. The Global Lounge chair and Ledge Lounger's trade dress are confusingly similar, with both having a wave form configuration. It is evident that Global Pool copied Ledge Lounger's

extremely popular furniture designs, as illustrated below:

| Illustration 6: Images of Ledge Lounger's Federal Trade Dress Registration and Trade Dress Compared to Global Pool's Infringing Products | |
| --- | --- |
| Example Images of Ledge Lounger's Federal Trade Dress Registration and Trade Dress | Example Images of Global Pool's Infringing Products |
|  | |

35.     As a result of Global Pool's activities related to the Infringing Products, there is a likelihood of confusion between Global Pool and its Infringing Products on the one hand, and Ledge Lounger and its trade dress protected products on the other hand.

36.     Ledge Lounger used its trade dress and trademarks extensively and continuously before Global Pool began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing into the United States its Infringing Products. Moreover, Ledge Lounger's trade dress and trademarks became famous and acquired secondary meaning in the United States before Global Pool commenced its infringing activities.

37.     Global Pool promotes and sells, through its dealers, distributors and sales and manufacturing representatives, its Infringing Products to the same types of consumers as those to whom Ledge Lounger promotes and sells its furniture. The Infringing Products Global Pool sells are the same types of products Ledge Lounger sells. The channels of trade through which Global Pool have marketed and sold the Infringing Products are the same as those used by Ledge Lounger, including direct to consumer on-line sales over the internet, including on amazon.com, and at trade shows, including at the 2023 Southwest Pool & Spa tradeshow show in Houston, Texas and at the 2024 Southwest Pool & Spa in San Antonio, Texas. And both parties ultimately target the same end purchaser—those whose property includes a pool. But, while Ledge Lounger produces and sells high-quality, American-made products, Global Pool sells lower-quality, lower-priced imitations of Ledge Lounger's Furniture.

38.     Global Pool's actions have been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's Furniture and Global Pool's continuing disregard for Ledge Lounger's rights.

39.     Ledge Lounger's correspondence with Global Pool evidences Global Pool's intentional, willful, and malicious disregard for Ledge Lounger's rights. For example, on August 28, 2023, Ledge Lounger sent a letter to Global Pool requesting that Global Pool cease manufacturing, importing, offering for sale, selling, and distributing its Global Lounger chair. *See*

Exhibit 2.

40.     On October 4, 2023, Global Pool responded and claimed that it believed that it is not infringing any intellectual property of Ledge Lounger and refused to discontinue the Global Lounger chair.

41.     Because Global Pool has not ceased its infringing activities and is harming Ledge Lounger, and because Global Pool's infringing activities continue to grow and further harm Ledge Lounger, Ledge Lounger has been forced to seek relief in this Court, as more fully described below.

### Count I: Trade Dress Infringement Under § 32 of the Lanham Act, 15 U.S.C. § 1114

42.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

43.     The '905 Mark is federally registered with the U.S. Patent and Trademark Office, as set forth above.

44.     Ledge's registration constitutes prima facie evidence of the trade dress's validity (i.e., the trade dress is distinctive and nonfunctional) and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a).

45.     The actions of Global Pool described above including, without limitation, its unauthorized use of the '905 Mark, and confusingly similar variations thereof, in commerce to sell, distribute, advertise, or promote Global Pool's Infringing Products throughout the United States constitutes trade dress infringement in violation of 15 U.S.C. § 1114. *See* ¶¶ 31-41.

46.     Ledge Lounger has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law as a result of Global Pool's continuing infringing activities.

47.     The actions of Global Pool, if not enjoined, will continue. Ledge Lounger is entitled

to injunctive relief under at least 15 U.S.C. § 1116.

48.     Ledge Lounger is also entitled to recover damages in an amount to be proven at trial, including, at least, Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. § 1117. Ledge Lounger believes the actions of Global Pool were taken willfully and with the intention of violating the trade dress rights of Ledge Lounger, making this an exceptional case entitling Ledge Lounger to recover treble damages and attorneys' fees.

**Count II: Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

49.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 1-48 as though fully set forth herein.

50.     Ledge Lounger's has protectable trade dress in its Signature Chaise™ and Signature Chair™ Deep chairs because the trade dress are distinctive (having acquired secondary meaning) and are primarily nonfunctional. *See* ¶¶ 7-30.

51.     Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Ledge Lounger's trade dress in its Signature Chaise™ and Signature Chair™ Deep chairs. Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Global Pool with Ledge Lounger as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. *See* ¶¶ 31-41.

52.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury

to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

53.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

54.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count III: Trade Dress Dilution under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

55.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 54 as though fully set forth herein.

56.     Based on the activities described above, including, for example, Global Pool's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Infringing Products, Global Pool is likely to dilute, has diluted, and continues to dilute Ledge Lounger's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Specifically, Global Pool's Infringing Products are likely to dilute, have diluted, and continue to dilute, at least, Ledge Lounger's famous trade dress rights in the Signature Chaise™ chair and Signature Chaise™ Deep chairs. Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Ledge Lounger's famous trade dress at least by eroding the public's exclusive identification of Ledge Lounger's famous trade dress with Ledge Lounger and Ledge Lounger's products, by lessening the capacity of Ledge Lounger's famous trade dress to identify and distinguish Ledge Lounger's products, and

by impairing the distinctiveness of Ledge Lounger's famous trade dress.

57.     Ledge Lounger's trade dress is famous and is entitled to protection under the Lanham Act. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger's trade dress has acquired distinctiveness, as acknowledged by the U.S. Patent and Trademark Office, through Ledge Lounger's extensive and continuous promotion and use of Ledge Lounger's trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a famous, well-known indicator of the origin and quality of Ledge Lounger's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of Ledge Lounger and Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress became famous and acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with the Infringing Products.

58.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

59.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

60.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to

recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced profits and damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

### Count IV: Unfair Competition and False Designation of Origin Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

61.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 60 as though fully set forth herein.

62.     Global Pool's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Global Pool has obtained an unfair advantage as compared to Ledge Lounger through Global Pool's use of Ledge Lounger's trade dress, and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Global Pool's Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chaise™ Deep chairs.

63.     Ledge Lounger's trade dress is entitled to protection under the Lanham Act. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge

Lounger's trade dress in connection with the Infringing Products.

64.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

65.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## Count V: Common Law Trade Dress Infringement

66.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 65 as though fully set forth herein.

67.     Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law trade dress infringement, at least because Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chaise™ Deep chairs.

68.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States. Through that

extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

69.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

70.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

71.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

## Count VI: Common Law Unfair Competition

72.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 71 as though fully set forth herein.

73.     Global Pool's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law unfair competition, at least by palming off/passing off of Global Pool's goods, by simulating Ledge Lounger's trade dress in an intentional and calculated

manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Global Pool's Infringing Products, and by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chair™ Deep chairs.

74.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

75.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

76.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

77.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

## Count VII: Common Law Misappropriation

78.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 77 as though fully set forth herein.

79.     Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law misappropriation.

80.     Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money. Global Pool has wrongfully used Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger and gained a special advantage because Global Pool was not burdened with the expenses incurred by Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chair™ Deep chairs. Global Pool has commercially damaged Ledge Lounger, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of Global Pool's Infringing Products, by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger, and by taking away sales that Ledge Lounger would have made.

81.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge

Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

82.      Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Moreover, as a result of its misappropriation, Global Pool has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Ledge Lounger invested in establishing the reputation and goodwill associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

83.      Global Pool's misappropriation of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

84.      Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

## Count VIII: Unjust Enrichment

85.      Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 84 as though fully set forth herein.

86.      Global Pool's advertisements, promotions, offers to sell, sales, distribution,

manufacture, and/or importing of its Infringing Products, in direct competition with Ledge Lounger, constitute unjust enrichment, at least because Global Pool has wrongfully obtained benefits at Ledge Lounger's expense. Global Pool has also, *inter alia*, operated with an undue advantage.

87.     Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money. Global Pool has wrongfully used and is wrongfully using Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger, and has gained and is gaining a wrongful benefit by undue advantage through such use. Global Pool has not been burdened with the expenses incurred by Ledge Lounger, yet Global Pool is obtaining the resulting benefits for its own business and products.

88.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

89.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality

associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Ledge Lounger accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Global Pool has wrongfully obtained and is wrongfully obtaining a benefit at Ledge Lounger's expense by taking undue advantage and free-riding on Ledge Lounger's efforts and investments, and enjoying the benefits of Ledge Lounger's hard-earned goodwill and reputation.

90.     Global Pool's unjust enrichment at Ledge Lounger's expense has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

91.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits.

## Demand for Jury Trial

Ledge Lounger hereby demands a jury trial on all issues so triable.

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1. Judgment that Global Pool has willfully (i) infringed Ledge Lounger's trade dress registration in violation of § 1114 of Title 15 in the United States Code; (ii) infringed Ledge Lounger's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) diluted Ledge Lounger's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iv) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (v) violated Ledge Lounger's common law rights in Ledge Lounger's trade dress; (vi) engaged in common law unfair competition; (vii) engaged in common law misappropriation; and (viii) been

unjustly enriched at Ledge Lounger's expense; and that all of these wrongful activities by Global Pool were willful;

2. A preliminary and permanent injunction against further infringement and dilution of Ledge Lounger's trade dress by Global Pool and each of Global Pool's agents, employees, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, pursuant to at least 15 U.S.C. § 1116;

3. An Order directing Global Pool to recall all Infringing Products sold and/or distributed and to provide a full refund for all recalled Infringing Products;

4. An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products, (ii) any other products that use a copy, reproduction, or colorable imitation of Ledge Lounger's trade dress in Global Pool's possession or control, (iii) all plates, molds, and other means of making the Infringing Products in Global Pool's possession, custody, or control, or under its direction, and (iv) all advertising materials related to the Infringing Products in Global Pool's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5. An Order directing Global Pool to publish a public notice providing proper attribution of Ledge Lounger's trade dress rights, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6. An Order barring importation of the Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7. An award of Global Pool's profits, Ledge Lounger's actual damages, enhanced

damages, exemplary damages, costs, prejudgment and post judgment interest, and

reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116; and

8.  Such other and further relief as this Court deems just and proper.

Dated:  June 7, 2024                    Respectfully submitted,

                                        BANNER & WITCOFF, LTD.

                                        By:  */s/ Matthew P. Becker*

                                             Scott A. Burow
                                             Attorney-In-Charge
                                             Illinois Bar No. 6242616
                                             sburow@bannerwitcoff.com
                                             BANNER & WITCOFF, LTD.
                                             71 South Wacker Drive, Suite 3600
                                             Chicago, IL 60606
                                             Telephone: (312) 463-5000
                                             Facsimile: (312) 463-5001

                                             Matthew P. Becker
                                             Illinois Bar No. 6255614
                                             mbecker@bannerwitcoff.com
                                             Christian T. Wolfgram
                                             Illinois Bar No. 6333565
                                             cwolfgram@bannerwitcoff.com
                                             BANNER & WITCOFF, LTD.
                                             71 S. Wacker Drive, Suite 3600
                                             Chicago, IL 60606
                                             Telephone: (312) 463-5000
                                             Facsimile: (312) 463-5001

                                             ATTORNEYS FOR PLAINTIFF
                                             LEDGE LOUNGER, INC.

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 7, 2024, a true and accurate copy of PLAINTIFF'S FIRST AMENDED COMPLAINT was filed with the court through its ECF filing system, thereby providing notice to all counsel of record.


<u>/s/ Matthew P. Becker</u>
Matthew P. Becker
Attorney for Plaintiff