# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

LEDGE LOUNGER, INC.,

Plaintiff/Counterclaim Defendant,

v.

GLOBAL LIFT CORP. d/b/a
GLOBAL POOL PRODUCTS,

Defendant/Counterclaim Plaintiff

Case No. 24-cv-11267

Hon. Thomas L. Ludington

Magistrate Judge Patricia T. Morris

---

BANNER & WITCOFF, LTD.
By: Scott A. Burow
    Matthew P. Becker
    Christian T. Wolfgram
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001
sburow@bannerwitcoff.com
mbecker@bannerwitcoff.com
cwolfgram@bannerwitcoff.com

*Attorneys for Plaintiff/Counterclaim
Defendant*

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
By:  Joseph E. Viviano (P60378)
     Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 972-7760
jviviano@khvpf.com
tdavis@khvpf.com

BEJIN BIENEMAN PLC
By:  Thomas E. Bejin (P56854)
2000 Town Center, Suite 800
Southfield, MI 48075
(313) 528-4882
bejin@b2iplaw.com

*Attorneys for Defendant/Counterclaim
Plaintiff*

---

# ANSWER TO AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

## ANSWER TO AMENDED COMPLAINT

Defendant/Counterclaim Plaintiff Global Lift Corp. d/b/a Global Pool Products, through its undersigned counsel, answers Plaintiff's Complaint as follows:

## PARTIES

1.      Ledge Lounger is a company organized and existing under the laws of the State of Texas with a principal place of business at 616 Cane Island Parkway, Suite 100, Katy, Texas 77494.

**ANSWER:** Admitted.

2.      Upon information and belief, Global Lift Corp. is a company organized and existing under the laws of the State of Michigan with a principal place of business at 1330 Pigeon Road, Bad Axe, Michigan 48413. Upon information and belief, Global Lift Corp. does business under the name Global Pool Products.

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

3.  This is a complaint for damages and injunctive relief and includes multiple grounds for relief including trade dress infringement, trade dress dilution, unfair competition and false designation of origin, misappropriation, and unjust enrichment. This complaint arises under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq. ("the Lanham Act"); federal common law; and state common law, including the law of Michigan.

**ANSWER:** Admitted that the Complaint purports to bring these claims; otherwise denied, including a denial that Defendant/Counterclaim Plaintiff is liable to Plaintiff/Counterclaim Defendant on any of the grounds alleged.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, and 1367(a).

**ANSWER:** Admitted.

5. This Court has personal jurisdiction over Global Pool, *inter alia*, because Global Pool is a company organized and existing under the laws of the State of Michigan with a principal place of business in Michigan. Global Pool's business activities and contacts with Michigan and this district are extensive, continuous and systematic.

**ANSWER:** Admitted that there is personal jurisdiction over Global in the State of Michigan.

6.      Venue is proper in this District pursuant to at least 28 U.S.C. §§ 1391(a)-(d).

**ANSWER:** Admitted that the Eastern District of Michigan, Northern Division is the proper venue for this matter.

## FACTUAL BACKGROUND

### Ledger Lounge's Intellectual Property

7.     Since 2011, Ledge Lounger, out of its headquarters in Katy, Texas, has continuously engaged in and is at the forefront of the design, development, manufacture, promotion, and sale of outdoor furniture, including its Signature Chaise™ chair ("Signature Chaise™") and Signature Chaise™ Deep chair (collectively, "Ledge Lounger's Furniture"). Ledge Lounger created the unique, distinctive, and non-functional designs of Ledge Lounger's Furniture at its headquarters in Katy, Texas. Out of its Katy headquarters, Ledge Lounger designed, developed, manufactured, advertised, and marketed Ledge Lounger's Furniture.

**ANSWER:** Admitted only that Ledge Lounger sells outdoor furniture including chairs called the "Signature Chaise" and "Signature Chaise Deep" and that its headquarters is in Katy, Texas. Otherwise denied.

8.     Ledge Lounger has extensively and continuously promoted and used the designs reflected in Ledge Lounger's Furniture in the United States. For example, Ledge Lounger's 2015 product catalog prominently featured the Signature Chaise™ chair on its cover and Ledge Lounger has distributed over 250,000 copies of the catalog and over 1,000,000 copies of direct message flyers and similar direct consumer product materials. Ledge Lounger regularly attends tradeshows to market and promote its Signature Chaise™ chair and Signature Chaise Deep™ chair,

including at the 2023 Southwest Pool & Spa tradeshow show in Houston, Texas and at the 2024 Southwest Pool & Spa in San Antonio, Texas.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

9.    Ledge Lounger extensively promotes its Signature Chaise™ chair and Signature Chaise Deep™ chair using social media, and has over 33,000 followers on its Facebook account and over 51,000 followers on its Instagram account. As result of its extensive and continuous promotion and use, Ledge Lounger's designs have become well-known indicators of the origin and quality of Ledge Lounger's Furniture. Ledge Lounger's designs also have acquired substantial secondary meaning in the marketplace and have become famous, including in the United States.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding its social media followers, and on that basis denies. Otherwise denied, including specifically denied that Ledge Lounger's products are famous or have acquired secondary meaning.

10.    Ledge Lounger began selling its Signature Chaise™ chair in 2011 and it has been Ledge Lounger's best-selling product, with sales exceeding $79 million and over 138,000 units. Sales of the Signature Chaise Deep™ chair have exceeded $24 million since 2019. Ledge Lounger has also invested tremendous resources in

the design, development, manufacture, advertising, and marketing of Ledge Lounger's Furniture, with expenses exceeding $7,500,000 since 2014.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

11.    The designs of Ledge Lounger's Furniture have received widespread and unsolicited public attention. For example, Ledge Lounger's Furniture has been featured in numerous newspapers, magazines, and Internet articles and posts and in numerous television programs throughout the United States.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

12.    As another example, numerous television programs shown throughout the United States have featured Ledge Lounger's Furniture including, for example, Cool Pools (HGTV, DIY), Insane Pools (Animal Planet), Pool Kings (HGTV, DIY), Desert Flippers (HGTV), Big Brother (CBS), and WAGS Miami (E! Network).

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

13.    As yet another example, numerous magazines throughout the United States have featured Ledge Lounger's Furniture, including, for example, Luxury Pools magazine and Luxury Home magazine:



Stellar Magazine featured the Signature Chaise chair in a May 31, 2022 article. A July 14, 2022 article in Tampa Magazine also prominently featured the Signature Chaise chair.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

14.    In addition, numerous celebrities throughout the United States have been photographed or have shared photographs of Ledge Lounger's Furniture on social media, including Kendall Jenner, Ellen DeGeneres, Kourtney Kardashian, Christina Hall (fka Christina El Mousa-Anstead), Kim Kardashian, J.J. Watt, Steve

Aoki, and other such celebrities and professional athletes that have hundreds of millions of social media followers.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

15.     As another example, numerous resort-type and commercial properties throughout the United States own and use Ledge Lounger's Furniture, including the Marriot Marquis in Houston, Texas, the Post Oak Hotel in Houston, Texas, the Hotel Zaza in Houston, Texas, the Embassy Suites in The Woodlands, Texas, the Hilton Garden Inn in Dallas, Texas, the La Cantera in San Antonio, Texas, the Fairmont in Austin, Texas, the Golden Nugget in Lake Charles, Louisiana, the Golden Nugget in Biloxi, Mississippi, the Cosmopolitan in Las Vegas, Nevada, the MGM Grand in Las Vegas, Nevada, the Raleigh Hotel in Miami, Florida, the Laylow Hotel in Waikiki, Hawaii, Royal Caribbean Cruise Lines throughout the world, and Top Golf throughout the country, to name a few.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

16.     Ledge Lounger's Signature Chaise™ product has distinctive and nonfunctional features that identify to consumers that the origin of the furniture product is Ledge Lounger, including the wave form of the chair where the back of the chair slopes down and the lower half of the chair curves up and down towards

the right. The design of Ledge Lounger's Signature Chaise™ product and its configuration of the nonfunctional features as a whole is not essential to the use or purpose of a chaise lounge chair. The design of Ledge Lounger's Signature Chaise™ product and its wave-form configuration of the nonfunctional features as a whole does not affect the cost or quality of the article. There are also numerous other alternative designs for chaise lounge chairs, as demonstrated by the wide variety of lounge chairs in the market that do not use Ledge Lounger's trade dress. There is no competitive need for the trade dress of Ledge Lounger's Signature Chaise™ as applied to outdoor furniture because other competitors and consumers alike have diverse choices for the appearance of a chaise.

**__ANSWER:__** Denied.

17.    As a result of at least Ledge Lounger's continuous and exclusive use of the design of the Ledge Lounger's Signature Chaise™ product for over twelve years, Ledge Lounger's marketing, advertising, and sales of Ledge Lounger's Signature Chaise™ product, the large number of customers for Ledge Lounger's Signature Chaise™ product and its established place in the market as a high-quality in-pool product, and intentional copying by Global Pool and others, the design of Ledge Lounger's Signature Chaise™ product has acquired highly valuable goodwill, secondary meaning, and fame. As a result, Ledge Lounger owns protectable trade

dress rights in the distinctive design of Ledge Lounger's Signature Chaise™ product, which consumers have come to uniquely associate with Ledge Lounger.

**ANSWER:** Denied.

18.    Ledge Lounger owns trade dress rights relating to the source identifying features of Ledge Lounger's Furniture designs. Ledge Lounger has extensively and continuously promoted and used its designs for years in the United States. Through that extensive and continuous promotion and use, Ledge Lounger's designs have become well-known indicators of the origin and quality of Ledge Lounger's Furniture. Ledge Lounger's designs have also acquired substantial secondary meaning in the marketplace and have become famous.

**ANSWER:** Denied.

19.    Ledge Lounger owns U.S. Trademark Registration No. 6,932,905 (the "'905 Mark"), a federal trade dress registration relating to Ledge Lounger's Signature Chaise™ product.

**ANSWER:** Admitted that Ledge Lounger obtained the mark; otherwise denied, including a denial that the registration is valid as it was procured by fraud.

20.    Ledge Lounger's registration constitutes prima facie evidence of the trade dress's validity (i.e., the trade dress is distinctive and nonfunctional) and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a).

**ANSWER:** Denied.

21.     On December 27, 2022, the '905 Mark was duly and legally registered in the U.S. Patent and Trademark Office by Ledge Lounger. A copy of the '905 Mark Registration Certificate is attached as Exhibit 1. Ledge Lounger owns the entire right, title, and interest in and to the '905 Mark. An exemplary image of the '905 Mark is shown below:



Illustration 2: Drawing of the '905 Mark (Ex. 1)

**ANSWER:** Admitted only that Ledge Lounger obtained the mark; otherwise denied, including a denial that the registration is valid.

22.     The '905 Mark consists of a three-dimensional configuration of a chair curved like a wave where the back of the chair slopes down and the lower half of the

chair curves up and down towards the right. The bottom side of the chair and the horizontal line at the base of the curve to the right side appear in broken lines and are not claimed as features of the mark. *See* Ex.1.

**ANSWER:** Admitted only that Ledge Lounger obtained the mark; otherwise denied, including a denial that the registration is valid.

23.     An exemplary image of Ledge Lounger's Signature Chaise™ is shown below:



**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

24.    As a result of Ledge Lounger's exclusive, continuous twelve-plus year use, the extensive advertising and publicity and attention of the Signature Chaise™ product, the substantial amount of sales of products bearing the '905 Mark, including the Signature Chaise™ product, to a large number of customers, the established place of the Signature Chaise™ product in the high- quality in-pool furniture market, and intentional copying of its distinctive design, Ledge Lounger's trade dress in the Signature Chaise™ and trade dress registered in the '905 Mark have become famous and have acquired valuable goodwill and secondary meaning in the marketplace. Indeed, the '905 Mark confirms the source identifying property of the Signature Chaise™.

**ANSWER:** Denied.

25.    The trade dress of the Signature Chaise™ chair and/or Signature Chaise™ Deep chair has been intentionally copied by others. For example, Luxury Lounger Inc. has copied Ledge Lounger's trade dress. *See Ledge Lounger Inc. v. Luxury Lounger, Inc.*, 4:23-cv-00727 (S.D. Tex.), Doc#1 at ¶¶ 32-34. So too has Aqua Chairs, LLC. *See Ledge Lounger Inc. v. Aqua Chairs, LLC.*, 4:19-cv-3995 (S.D. Tex.), Doc#1 at ¶¶ 18-25. And also The Step2 Company. See *The Step2 Company LLC v. Ledge Lounger, Inc.*, 5:24-cv-00807 (N.D. Ohio), Doc#1 at 11.

Ledge Lounger is actively addressing others who have copied the Signature Chaise™ and/or Signature Chaise™ Deep trade dress.

**ANSWER:** Admitted only that Ledge Lounger has brought meritless litigation against other companies based on purported trade dress infringement. Otherwise denied, including specifically denied that Ledge Lounger took "active" steps to sue The Step2 Company; instead, Step2 affirmatively filed an action against Ledge Lounger that—as Global does here in its counterclaims—seeks to cancel Ledge Lounger's fraudulently-obtained and invalid trademark registration and seeks damages for Ledge Lounger's misconduct.

26.     Ledge Lounger also owns common law trade dress rights in the overall look, design, and appearance of its Signature Chaise™ Deep chair, which mirrors the trade dress of the Signature Chaise™ chair, and adds a distinctive base. The Signature Chaise™ Deep chair includes the design and appearance of the curves and slopes in the Signature Chaise™ Deep chair; the design and appearance of the profile of the Signature Chaise™ Deep chair; the design and appearance of the curves and slopes of the upper portion of the Signature Chaise™ Deep chair; the design and appearance of the curves and slopes of the middle portion of the Signature Chaise™ Deep chair; the design and appearance of the base, curves, and slopes of the lower portion of the Signature Chaise™ Deep chair; the design and appearance of the arch

of the Signature Chaise™ Deep chair; and the relationship of these features to each other and to other features.

**ANSWER:** Denied.

27. An exemplary image of Ledge Lounger's Signature Chaise™ Deep is shown below:



Illustration 4: Image of Ledge Lounger's Signature Chaise™ Deep chair

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of these allegations, and on that basis denies.

28. As a result of Ledge Lounger's exclusive, continuous and substantial use of its Signature Chaise™ Deep chair, extensive advertising, and substantial sales of its Signature Chaise™ Deep chair bearing Ledge Lounger's trade dress to numerous customers, and the publicity and attention that has been paid to Ledge Lounger's trade dress in the Signature Chaise™ Deep chair, its established place in the market as a high-quality in-pool product, and intentional copying of its design, Ledge Lounger's trade dress in the Signature Chaise™ Deep chair has become famous and has acquired valuable goodwill and secondary meaning in the

marketplace, as consumers have come to uniquely associate Ledge Lounger's trade dress in the Signature Chaise™ Deep chair as a source identifier of Ledge Lounger, in part, because it mirrors the design and federally protected trade dress of Ledge Lounger's Signature Chaise™ chair.

**ANSWER:** Denied.

29.    The design of the Signature Chaise™ Deep and its wave-form configuration of nonfunctional features, as a whole, is not essential to the use or purpose of a chaise lounge chair. The design of Ledge Lounger's Signature Chaise™ Deep and its configuration of the nonfunctional features as a whole does not affect the cost or quality of the article. There are numerous other alternative designs for chaise lounges, as demonstrated by the wide variety of lounge chairs in the market that do not use Ledge Lounger's trade dress. There is no competitive need for the trade dress of Ledge Lounger's Signature Chaise™ Deep as applied to outdoor furniture because other competitors and consumers alike have diverse choices for the appearance of a chaise.

**ANSWER:** Denied.

30.    Ledge Lounger's Furniture is made in the United States using high-quality components and processes, resulting in a durable, sleek, and attractive final product. For example, Ledge Lounger's Furniture is roto molded, which is a process that is generally more complicated and expensive compared to other methods of

manufacturing. As a result of using these high-quality components and processes, Ledge Lounger is well known among consumers and industry professionals for making the highest quality outdoor and lounge furniture.

**ANSWER:** Global lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding where Ledge Lounger's furniture is made, and about Ledge's subjectively-stated beliefs as to the quality of specified manufacturing processes, and on that basis denies. Otherwise denied.

### Global Pool's Willful and Unlawful Activities

31.     After Ledge Lounger's Furniture became extremely popular in the marketplace, in particular its Signature Chaise™ and Signature Chaise™ Deep chairs, Global Pool entered the market by selling the infringing products described below.

**ANSWER:** Admitted only that Global Pool has sold non-infringing products. Otherwise denied.

32.     Without Ledge Lounger's authorization or consent, Global Pool began advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products that violate Ledge Lounger's rights, including the rights protected by Ledge Lounger's intellectual property.

**ANSWER:** Denied.

33.     Global Pool's infringing product include, at least, its Global Lounger and Global Lounger with deep water kit (the "Infringing Products"). Exemplary images of Global Pool's Infringing Products from its website, https://global-poolproducts.com/global-lounger/, are shown below in Illustration 5:

**Illustration 5: Images of Global Pool's
Infringing Global Lounger Products (https://global-poolproducts.com/global-lounger/)**





**ANSWER:** Admitted only that these are images of Global's non-infringing products from its website. Otherwise denied.

34.     The Global Lounge chair and Ledge Lounger's trade dress are confusingly similar, with both having a wave form configuration. It is evident that Global Pool copied Ledge Lounger's extremely popular furniture designs, as illustrated below:



**ANSWER:** Denied.

35.     As a result of Global Pool's activities related to the Infringing Products,

there is a likelihood of confusion between Global Pool and its Infringing Products

on the one hand, and Ledge Lounger and its trade dress protected products on the other hand.

**ANSWER:** Denied.

36.     Ledge Lounger used its trade dress and trademarks extensively and continuously before Global Pool began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing into the United States its Infringing Products. Moreover, Ledge Lounger's trade dress and trademarks became famous and acquired secondary meaning in the United States before Global Pool commenced its infringing activities.

**ANSWER:** Denied.

37.     Global Pool promotes and sells, through its dealers, distributors and sales and manufacturing representatives, its Infringing Products to the same types of consumers as those to whom Ledge Lounger promotes and sells its furniture. The Infringing Products Global Pool sells are the same types of products Ledge Lounger sells. The channels of trade through which Global Pool have marketed and sold the Infringing Products are the same as those used by Ledge Lounger, including direct to consumer on-line sales over the internet, including on amazon.com, and at trade shows, including at the 2023 Southwest Pool & Spa tradeshow show in Houston, Texas and at the 2024 Southwest Pool & Spa in San Antonio, Texas. And both parties ultimately target the same end purchaser—those whose property includes a

pool. But, while Ledge Lounger produces and sells high-quality, American-made products, Global Pool sells lower-quality, lower-priced imitations of Ledge Lounger's Furniture.

**ANSWER:** Admitted only that Global sells non-infringing products in the same market as Ledge Lounger. Otherwise denied.

38.    Global Pool's actions have been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's Furniture and Global Pool's continuing disregard for Ledge Lounger's rights.

**ANSWER:** Denied.

39.    Ledge Lounger's correspondence with Global Pool evidences Global Pool's intentional, willful, and malicious disregard for Ledge Lounger's rights. For example, on August 28, 2023, Ledge Lounger sent a letter to Global Pool requesting that Global Pool cease manufacturing, importing, offering for sale, selling, and distributing its Global Lounger chair. See Exhibit 2.

**ANSWER:** Admitted only that Ledge Lounger sent the referenced letter. Otherwise denied.

40.    On October 4, 2023, Global Pool responded and claimed that it believed that it is not infringing any intellectual property of Ledge Lounger and refused to discontinue the Global Lounger chair.

**ANSWER:** Admitted.

41.     Because Global Pool has not ceased its infringing activities and is harming Ledge Lounger, and because Global Pool's infringing activities continue to grow and further harm Ledge Lounger, Ledge Lounger has been forced to seek relief in this Court, as more fully described below.

**ANSWER:** Denied, including specifically denied that "Ledge Lounger has been forced to seek relief *in this Court*." Instead, Ledge Lounger originally filed this case in an improper jurisdiction (the Southern District of Texas) and that Court transferred the case over Ledge Lounger's objection to this forum.

<u>**Count I: Trade Dress Infringement Under § 32 of**</u>
<u>**the Lanham Act, 15 U.S.C. § 1114**</u>

42.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 41 as though fully set forth herein.

**ANSWER:** Global incorporates by reference its answers to Paragraphs 1 through 41 of Ledge's Amended Complaint as though fully set forth herein.

43.     The '905 Mark is federally registered with the U.S. Patent and Trademark Office, as set forth above.

**ANSWER:** Admitted only that Ledge Lounger obtained the mark, but otherwise denied, including specifically denied that the mark is valid.

44.     Ledge's registration constitutes prima facie evidence of the trade dress's validity (i.e., the trade dress is distinctive and nonfunctional) and the

registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services. 15 U.S.C. §§ 1057(b), 1115(a).

**ANSWER:** Denied.

45.     The actions of Global Pool described above including, without limitation, its unauthorized use of the '905 Mark, and confusingly similar variations thereof, in commerce to sell, distribute, advertise, or promote Global Pool's Infringing Products throughout the United States constitutes trade dress infringement in violation of 15 U.S.C. § 1114.

**ANSWER:** Denied.

46.     Ledge Lounger has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law as a result of Global Pool's continuing infringing activities.

**ANSWER:** Denied.

47.     The actions of Global Pool, if not enjoined, will continue. Ledge Lounger is entitled to injunctive relief under at least 15 U.S.C. § 1116.

**ANSWER:** Denied.

48.     Ledge Lounger is also entitled to recover damages in an amount to be proven at trial, including, at least, Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. § 1117. Ledge Lounger believes the actions of Global Pool were taken

willfully and with the intention of violating the trade dress rights of Ledge Lounger, making this an exceptional case entitling Ledge Lounger to recover treble damages and attorneys' fees.

**ANSWER:** Denied.

### Count II: Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

49.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 1-48 as though fully set forth herein.

**ANSWER:** Global incorporates by reference its answers to Paragraphs 1 through 48 of Ledge's Amended Complaint as though fully set forth herein.

50.     Ledge Lounger's has protectable trade dress in its Signature Chaise™ and Signature Chair™ Deep chairs because the trade dress are distinctive (having acquired secondary meaning) and are primarily nonfunctional. See ¶¶ 7-30.

**ANSWER:** Denied.

51.     Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Ledge Lounger's trade dress in its Signature Chaise™ and Signature Chair™ Deep chairs. Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Global Pool with Ledge Lounger as to the origin, sponsorship, and/or approval of

the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. See ¶¶ 31-41.

**ANSWER:** Denied.

52.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

**ANSWER:** Denied.

53.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

**ANSWER:** Denied.

54.    Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**ANSWER:** Denied.

## Count III: Trade Dress Dilution under § 43(c) of
## the Lanham Act, 15 U.S.C. § 1125(c)

55.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 54 as though fully set forth herein.

**ANSWER:** Global incorporates by reference its answers to Paragraphs 1 through 46 of Ledge's Amended Complaint as though fully set forth herein.

56.     Based on the activities described above, including, for example, Global Pool's advertising, marketing, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Infringing Products, Global Pool is likely to dilute, has diluted, and continues to dilute Ledge Lounger's famous trade dress in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Specifically, Global Pool's Infringing Products are likely to dilute, have diluted, and continue to dilute, at least, Ledge Lounger's famous trade dress rights in the Signature Chaise™ chair and Signature Chaise™ Deep chairs. Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause, and has caused, dilution of Ledge Lounger's famous trade dress at least by eroding the public's exclusive identification of Ledge Lounger's famous trade dress with Ledge Lounger and Ledge Lounger's products, by lessening the capacity of Ledge Lounger's famous trade dress to identify and distinguish Ledge Lounger's products, and by impairing the distinctiveness of Ledge Lounger's famous trade dress.

**ANSWER:** Denied.

57.     Ledge Lounger's trade dress is famous and is entitled to protection under the Lanham Act. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger's trade dress has acquired distinctiveness, as acknowledged by the U.S. Patent and Trademark Office, through Ledge Lounger's extensive and continuous promotion and use of Ledge Lounger's trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a famous, well-known indicator of the origin and quality of Ledge Lounger's products throughout the United States, and is widely recognized by the general consuming public as a designation of the source of Ledge Lounger and Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress became famous and acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with the Infringing Products.

**ANSWER:** Denied.

58.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to

28

the goodwill and reputation for quality associated with Ledge Lounger's trade dress,

Ledge Lounger's products, and Ledge Lounger.

**ANSWER:** Denied.

59.   Global Pool's use of Ledge Lounger's trade dress and/or colorable

imitations thereof has been intentional, willful, and malicious. Global Pool's bad

faith is evidenced at least by Global Pool's copying of Ledge Lounger's products

and Global Pool's continuing disregard for Ledge Lounger's rights.

**ANSWER:** Denied.

60.   Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is

also entitled to recover at least Global Pool's profits, Ledge Lounger's actual

damages, enhanced profits and damages, costs, and reasonable attorney fees under

at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

**ANSWER:** Denied.

## Count IV: Unfair Competition and False Designation of Origin Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

61.   Ledge Lounger realleges and incorporates the allegations set forth in

paragraphs 1 through 60 as though fully set forth herein.

**ANSWER:** Global incorporates by reference its answers to Paragraphs 1

through 60 of Ledge's Amended Complaint as though fully set forth herein.

62.   Global Pool's advertisements, marketing, promotions, offers to sell,

sales, distribution, manufacture, and/or importing of the Infringing Products, in

direct competition with Ledge Lounger, violate § 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), and constitute unfair competition and false designation of origin,

at least because Global Pool has obtained an unfair advantage as compared to Ledge

Lounger through Global Pool's use of Ledge Lounger's trade dress, and because

such uses are likely to cause consumer confusion as to the origin and/or

sponsorship/affiliation of Global Pool's Infringing Products, at least by creating the

false and misleading impression that its Infringing Products are manufactured by,

authorized by, or otherwise associated with Ledge Lounger. Specifically, Global

Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in

the Signature Chaise™ and Signature Chaise™ Deep chairs.

**ANSWER:** Denied.

63.     Ledge Lounger's trade dress is entitled to protection under the Lanham

Act. Ledge Lounger's trade dress includes unique, distinctive, and non-functional

designs. Ledge Lounger has extensively and continuously promoted and used its

trade dress in the United States. Through that extensive and continuous use, Ledge

Lounger's trade dress has become a well-known indicator of the origin and quality

of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired

substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade

dress acquired this secondary meaning before Global Pool commenced its unlawful

use of Ledge Lounger's trade dress in connection with the Infringing Products.

**ANSWER**: Denied.

64.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

**ANSWER**: Denied.

65.    Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

**ANSWER**: Denied.

### Count V: Common Law Trade Dress Infringement

66.    Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 65 as though fully set forth herein.

**ANSWER**: Global incorporates by reference its answers to Paragraphs 1 through 66 of Ledge's Amended Complaint as though fully set forth herein.

67.    Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct

31

competition with Ledge Lounger, constitute common law trade dress infringement, at least because Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of its Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chaise™ Deep chairs.

**ANSWER:** Denied.

68.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used its trade dress in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

**ANSWER:** Denied.

69.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

**ANSWER:** Denied.

70.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

**ANSWER:** Denied.

71.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

**ANSWER:** Denied.

### Count VI: Common Law Unfair Competition

72.     Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 71 as though fully set forth herein.

**ANSWER:** Global incorporates by reference its answers to Paragraphs 1 through 69 of Ledge's Amended Complaint as though fully set forth herein.

73.     Global Pool's advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law unfair competition, at least by palming off/passing off of Global Pool's goods, by simulating Ledge Lounger's trade dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Global Pool's Infringing Products, and by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chair™ Deep chairs.

**ANSWER:** Denied.

74.     Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has

also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

**ANSWER:** Denied.

75.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

**ANSWER:** Denied.

76.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

**ANSWER:** Denied.

77.    Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

**ANSWER:** Denied.

### Count VII: Common Law Misappropriation

78.    Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1through 77 as though fully set forth herein.

**ANSWER:** Global incorporates by reference its answers to Paragraphs 1 through 77 of Ledge's Complaint as though fully set forth herein.

79.    Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in direct competition with Ledge Lounger, constitute common law misappropriation.

**ANSWER:** Denied.

80.    Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money. Global Pool has wrongfully used Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger and gained a special advantage because Global Pool was not burdened with the expenses incurred by Ledge Lounger. Specifically, Global Pool's Infringing Products infringe, at least, Ledge Lounger's trade dress rights in the Signature Chaise™ and Signature Chair™ Deep chairs. Global Pool has commercially damaged Ledge Lounger, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of Global Pool's Infringing Products, by creating the false and misleading impression that its Infringing Products are

manufactured by, authorized by, or otherwise associated with Ledge Lounger, and by taking away sales that Ledge Lounger would have made.

**ANSWER:** Denied.

81.    Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

**ANSWER:** Denied.

82.    Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Moreover, as a result of its

misappropriation, Global Pool has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that Ledge Lounger invested in establishing the reputation and goodwill associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger.

**ANSWER:** Denied.

83. Global Pool's misappropriation of Ledge Lounger's trade dress and/or colorable imitations thereof has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

**ANSWER:** Denied.

84. Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Ledge Lounger's damages, Global Pool's profits, punitive damages, costs, and reasonable attorney fees.

**ANSWER:** Denied.

## Count VIII: Unjust Enrichment

85. Ledge Lounger realleges and incorporates the allegations set forth in paragraphs 1 through 84 as though fully set forth herein.

**ANSWER:** Global incorporates by reference its answers to Paragraphs 1 through 84 of Ledge's Amended Complaint as though fully set forth herein.

86.    Global Pool's advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its Infringing Products, in direct competition with Ledge Lounger, constitute unjust enrichment, at least because Global Pool has wrongfully obtained benefits at Ledge Lounger's expense. Global Pool has also, *inter alia*, operated with an undue advantage.

**ANSWER:** Denied.

87.    Ledge Lounger created the products covered by Ledge Lounger's trade dress through extensive time, labor, effort, skill, and money. Global Pool has wrongfully used and is wrongfully using Ledge Lounger's trade dress and/or colorable imitations thereof in competition with Ledge Lounger, and has gained and is gaining a wrongful benefit by undue advantage through such use. Global Pool has not been burdened with the expenses incurred by Ledge Lounger, yet Global Pool is obtaining the resulting benefits for its own business and products.

**ANSWER:** Denied.

88.    Ledge Lounger's trade dress is entitled to protection under the common law. Ledge Lounger's trade dress includes unique, distinctive, and non-functional designs. Ledge Lounger has extensively and continuously promoted and used Ledge Lounger's trade dress for years in the United States. Through that extensive and continuous use, Ledge Lounger's trade dress has become a well-known indicator of the origin and quality of Ledge Lounger's products. Ledge Lounger's trade dress has

also acquired substantial secondary meaning in the marketplace. Moreover, Ledge Lounger's trade dress acquired this secondary meaning before Global Pool commenced its unlawful use of Ledge Lounger's trade dress in connection with its Infringing Products.

**ANSWER:** Denied.

89.     Global Pool's use of Ledge Lounger's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Ledge Lounger for which Ledge Lounger has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Ledge Lounger's trade dress, Ledge Lounger's products, and Ledge Lounger. Ledge Lounger accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Global Pool has wrongfully obtained and is wrongfully obtaining a benefit at Ledge Lounger's expense by taking undue advantage and free-riding on Ledge Lounger's efforts and investments, and enjoying the benefits of Ledge Lounger's hard-earned goodwill and reputation.

**ANSWER:** Denied.

90.     Global Pool's unjust enrichment at Ledge Lounger's expense has been intentional, willful, and malicious. Global Pool's bad faith is evidenced at least by

Global Pool's copying of Ledge Lounger's products and Global Pool's continuing disregard for Ledge Lounger's rights.

**ANSWER:** Denied.

91.     Ledge Lounger is entitled to injunctive relief, and Ledge Lounger is also entitled to recover at least Global Pool's profits.

**ANSWER:** Denied.

## Relief Sought

WHEREFORE, Plaintiff respectfully prays for:

1.     Judgment that Global Pool has willfully (i) infringed Ledge Lounger's trade dress registration in violation of § 1114 of Title 15 in the United States Code; (ii) infringed Ledge Lounger's trade dress in violation of § 1125(a) of Title 15 in the United States Code; (iii) diluted Ledge Lounger's trade dress in violation of § 1125(c) of Title 15 in the United States Code; (iv) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (v) violated Ledge Lounger's common law rights in Ledge Lounger's trade dress; (vi) engaged in common law unfair competition; (vii) engaged in common law misappropriation; and (viii) been unjustly enriched at Ledge Lounger's expense; and that all of these wrongful activities by Global Pool were willful;

2.     A preliminary and permanent injunction against further infringement and dilution of Ledge Lounger's trade dress by Global Pool and each of Global

Pool's agents, employees, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, pursuant to at least 15 U.S.C. § 1116;

3.      An Order directing Global Pool to recall all Infringing Products sold and/or distributed and to provide a full refund for all recalled Infringing Products;

4.      An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products, (ii) any other products that use a copy, reproduction, or colorable imitation of Ledge Lounger's trade dress in Global Pool's possession or control, (iii) all plates, molds, and other means of making the Infringing Products in Global Pool's possession, custody, or control, or under its direction, and (iv) all advertising materials related to the Infringing Products in Global Pool's possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.      An Order directing Global Pool to publish a public notice providing proper attribution of Ledge Lounger's trade dress rights, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6.      An Order barring importation of the Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.      An award of Global Pool's profits, Ledge Lounger's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1125(a), 1125(c), 1116; and

8.      Such other and further relief as this Court deems just and proper.

**Answer:** Denied that Ledge Lounger is entitled to any relief, including the relief specified. Moreover, Global requests that judgment be entered for a no cause of action with costs and attorney's fees to Global.

## <u>AFFIRMATIVE DEFENSES</u>

Defendant/Counterclaim Plaintiff Global Lift Corp. d/b/a Global Pool Products, through its undersigned counsel, for its affirmative defenses, states as follows:

1.      Plaintiff's asserted marks are generic and thus not protectable.

2.      Plaintiff's asserted marks are functional, and thus not protectable.

3.      Plaintiff's asserted marks are not distinctive, and thus not protectable.

4.      Plaintiff's mark is not famous, and there is no likelihood of confusion between Plaintiff's products and Defendant's products.

5.      Plaintiff's asserted marks were obtained via fraud and are invalid.

6.      Plaintiff's claims are barred by the doctrine of unclean hands.

## COUNTERCLAIMS

Counterclaim Plaintiff Global Lift Corp. d/b/a Global Pool Products ("Global") states for its Counterclaims against Counterclaim Defendant Ledge Lounger, Inc. as follows:

## INTRODUCTION

1.     This case involves Ledge Lounger's abuse of the federal trademark system and its attempts to undermine legitimate free-market competition—including against Counterclaim Plaintiff Global. This is one of nearly a half-dozen lawsuits by Ledge Lounger, all following the same script, through which it has attempted to use bogus, fraudulently-obtained trade dress mark related to the seating area of a curved chair—a design that has existed for decades before Ledge even existed.

2.     This case had its genesis in a lawsuit filed by Ledge Lounger in the Southern District of Texas, a Court that lacked personal jurisdiction over Global, in what appears to have been an attempt to bully a smaller competitor into submission with the threat of litigation in a far-flung forum. Global filed a motion to dismiss for lack of jurisdiction, to transfer to the Eastern District of Michigan, and to dismiss Ledge Lounger's claims under Rule 12(b)(6).

3.     While the motion to dismiss remained pending, Ledge Lounger's lawyers sent takedown notices to Amazon.com targeting one of Global's online distributors, omitting from its notice that there was a pending trademark cancellation

action in the United States Patent and Trademark Office, and a pending lawsuit against Ledge Lounger in which the validity of the purported trade dress was at issue.

4.     On April 26, 2024, Global brought Ledge's extrajudicial conduct to the attention of the Southern District of Texas, indicating that Ledge's conduct appeared calculated to force Global to acquiesce to jurisdiction in the Southern District of Texas in order to seek affirmative relief against Ledge's misconduct.

5.     The Southern District of Texas held a status conference. In response to a court inquiry, Ledge's counsel indicated that it was just trying to protect its marks. The Court asked Ledge's counsel why, if that was true, it did not provide Amazon with all the relevant information regarding the purported trade dress. Ledge's answer, in effect, was "we didn't have to." The court then indicated that it would expedite its ruling on the transfer portion of Global's motion.

6.     On May 13, 2024, the Southern District of Texas—while indicating that "the merits of the jurisdictional dispute appear to overwhelmingly favor Global"— instead exercised its discretion to transfer this matter to the Eastern District of Michigan, Northern Division. It did not rule on the 12(b)(2) or 12(b)(6) portions of Global's motion.

7.     Global now files these counterclaims to address Ledge's misconduct.

## **BACKGROUND**

8.     Global manufactures a wide range of pool products, furniture, and equipment, including the GLOBAL LOUNGER at issue in this case.

9.     Ledge also manufactures a wide range of pool products, furniture, and equipment, including the Signature Chaise and Signature Chaise Loungers (the "Chaise Loungers") at issue in this case.

10.     The GLOBAL LOUNGER is superior to the Chaise Loungers in many ways, including but not limited to comfort, ease of use, and accessories.

11.     Ledge is aware that the GLOBAL LOUNGER is superior and preferred by customers.

12.     On August 28, 2023, legal counsel for Ledge sent a letter to Joshua Steinman, President of Global, in Bad Axe, Michigan.

13.     In the letter, Ledge advised that it had marketed the Chaise Loungers through "extensive commercial activities in the United States, and around the world, including over the Internet." The specific Global Pool Product accused in the letter is the GLOBAL LOUNGER.

14.     In the letter, Ledge cited its U.S. Trademark Registration No. 6,932,905. *Id.*

15.     In the letter, Ledge cited various patents on its threaded plug system for submergible furniture, though it did not allege that Global had infringed its patents. *Id.*

16.     The GLOBAL LOUNGER does not utilize the threaded plug system.

17.     Ledge is fully aware that the GLOBAL LOUNGER does not utilize the threaded plug system.

18.     The GLOBAL LOUNGER does not violate any Ledge patent.

19.     Ledge does not contend that the GLOBAL LOUNGER violates any Ledge patent.

20.     In the letter, Ledge accused Global of "distributing chair products [namely the GLOBAL LOUNGER] that are infringing Ledge's intellectual property, are confusingly similar to Ledge's trademark and trade dress, and are infringing and diluting Ledge's trade dress." *Id.* at p. 2.

21.     Ledge knew all of these allegations were false, were made in bad faith, and were insupportable at the time they were made.

22.     In the letter, Ledge demanded that Global cease selling the GLOBAL LOUNGER. *Id.*

23.     On October 4, 2023, counsel for Global sent a letter to Ledge counsel in response to Ledge's August 28, 2023 letter. **Exhibit A**.

24.    In the response letter, Global advised that it was not infringing on any intellectual property right of Ledge and that "Ledge's U.S. Trademark Registration No. 6,932,905 provides no basis for any valid trademark or trade dress rights relative to Global Pool's accused product, as any similarities are limited to wholly functional design features, as characterized by Ledge itself…" *Id.*

25.    Ledge is aware that their alleged trademark and trade dress rights are invalid if these designs shown therein are functional.

26.    In the response letter, Global identified Ledge's own comments admitting functionality.  Specifically Global stated:

> Ledge's marketplace statements confirm the functionality of any arguably similar features. Ledge's webpage… currently states: "Q. Are chaise lounge chairs comfortable? A: The chaise lounge is a long chair with an angled back, offering full support for the whole body. Our chaise lounges were designed with your perfect poolside moments in mind. Contoured curves fit your most relaxed position in the pool ledge, so you can just lay back and let go." Ledge distinguishes its own chaises based on function. At Ledge's webpage…Ledge encourages customers to "[c]ompare the best in-pool chaises and find one that suits your lounging style." On that same page, a pop-up window expressly characterizes the chaise's shape as functional: "due to differences in back heights, some activities are better suited for one product than the other. We recommend taking this into account when selecting your chaise." These current statements follow on an apparently long history of such marketplace representations catalogued in the Notice filed in Opposition No. 91274876 against the application that resulted in the '905 Registration.

27.    Ledge has a history of making anti-competitive and insupportable allegations in the past against other companies, including with respect to lounge chairs sold by Advantus, Corp. ("Advantus"). Advantus responded with a detailed Notice of Opposition before the United States Patent and Trademark Office, *In the Matter of Application Serial No.* 88/600,425, Opposition No. 91274876 (Filed August 30, 2019).

28.    In the Notice of Opposition, Advantus spelled out Ledge's bad faith in considerable detail. A copy of the Advantus Notice of Opposition is attached as **Exhibit B.**

29.    Upon information, the matter was confidentially settled, and Advantus continues selling its lounge chairs to the present day.

30.    In February 2023 (before it sued Global) Ledge Lounger sued another competitor named Luxury Lounger, Inc. in the Southern District of Texas, Case No. 4:23-cv-00727. The complaint in that lawsuit is, in large part, nearly verbatim to the lawsuit that would later be filed against Global. On June 6, 2024, the case was voluntarily dismissed. On information, the matter was confidentially settled. Luxury Lounger continues selling its lounge chairs to the present day.

31.    In April 2024, Ledge issued a cease-and-desist letter to The Step2 Company, LLC, based in Ohio. Apparently aware of Ledge's well-worn playbook, The Step2 Company did not wait for Ledge Lounger to file a lawsuit in the Southern

District of Texas, but instead responded to Ledge's cease-and-desist letter with a lawsuit seeking to invalidate Ledge's trademark. That case is pending as Case No. 5:24-cv-00807-DAR in the Northern District of Ohio.

32.     As outlined in Advantus's Notice of Opposition, Ledge procured the trademark rights at issue through fraud.

33.     Specifically, to secure the trademark rights, Ledge's Chief Executive Officer, Chris Anderson, filed a declaration stating, among other things, that: "Neither the applied-for mark, nor any features thereof, is or has been the subject of a design or utility patent or patent application, including expired patents and abandoned patent applications." **Exhibit C,** *Declaration of Chris Anderson* dated June 10, 2020 at ¶29.

34.     This statement was false, known by Mr. Anderson to be false, material, and relied upon by the USPTO in granting Ledge the trademark rights at issue.

35.     Ledge had in fact secured U.S. Patent No. 10,104,975 (the '975 Patent") on October 23, 2018.

36.     Anderson is a named inventor on the '975 Patent.

37.     The '975 Patent, including Figures 2, 4A, and 8; specification Column 1, Lines 62-63; Column 4, Lines 54-57; Column 5, Lines 27-29; and Column 6, Line 60 – Column 7, Line 10, disclose and describe the functionality of Ledge's design. *Id*. at ¶¶ 199-22.

38.    To secure the trademark rights, Mr. Anderson further stated in his Declaration that "The design at issue was developed separate from the function of lounge and outdoor furniture." *Id.* at ¶35.

39.    This statement contradicted numerous previous statements of Mr. Anderson and Ledge, including without limitation:

a.  Statements in Ledge's patent application about the utilitarian advantages of its design.

b.  Ledge's own advertisements and public statements, which focus on functional advantages like "Fine contours to support the body," "Stacks easily for storage," and "body support and comfort."

c.  Mr. Anderson's public statements on various podcasts, where he explained and emphasized that Ledge's design was dictated by functionality, including without limitation his statements on the "Outside the Box Casual Living" podcast on September 3, 2019; his statements on the "Pool Chasers" podcast in December 2018; his interview in November 2019 at the Internal Pool Spa & Patio Expo (Episode 7); and his interview on April 24, 2020 on the "Stellarzone" podcast.

40.    Mr. Anderson's statements to the Trademark Office were known to be false and material, and Ledge knew that the statements would be relied upon by the USPTO in granting Ledge the trademark rights at issue.

41.    Ledge and Global share customers for pool chairs where the GLOBAL LOUNGER competes against the Ledge Lounger Chaise.

42.    Ledge became aware that Global would be receiving orders from at least one shared customer for the GLOBAL LOUNGER.

43.    With full knowledge that its Trademark and Trade Dress rights were void for functionality, Ledge went ahead in bad faith and asserted to at least one shared customers that the Global Lounger violated its intellectual property rights.

44.    In or about early October, 2023, Ledge reached out to at least one shared customer with the intent to disrupt and interfere with Global' business relationships and expectancies and preserve its own sales.

45.    In addition to its bad faith assertion of Trademark and Trade Dress, Ledge Lounger led at least one shared customer to believe that Global Lounger infringed upon Ledge's patent rights even though Ledge had not accused Global of such infringement in its letter of August 28, 2023 and even though Ledge is fully aware that the GLOBAL LOUNGER does not incorporate the threaded plug system that is the subject of Ledge's patent.

46.     Further, in order to persuade at least one shared customer to reject orders for the GLOBAL LOUNGER, Ledge led the shared customers to believe that the customer would be either a witness to or a party in any enforcement action for its intellectual property rights.

47.     Ledge's statements that led at least one shared customer to believe that Global was infringing Ledge's patents and other intellectual property rights were made in bad faith with the intent to interfere with Global Pool's business expectancies.

48.     As further proof of Ledge's bad faith and malice, it strategically timed its communications with shared customers with the beginning of the early buying season.

49.     In the pool products business, the early buying season is critical for manufacturers like Global and Ledge.

50.     Prior to Ledge's tortious conduct, at least one shared customer had entered the GLOBAL LOUNGER into their respective systems and was prepared to accept orders for the GLOBAL LOUNGER.

51.     Upon information and belief, Ledge was aware of the success of the GLOBAL LOUNGER and that such success was based on independent innovation by Global.

52.   As a result of Ledge's bad faith communications, one of the shared customers has rejected and is rejecting myriad orders for the GLOBAL LOUNGER and turned that product off in its system, just as the early buying season began.

53.   As a result of Ledge's bad faith communications, one of the shared customers has stopped the sale of the GLOBAL LOUNGER, including through its Michigan locations and channels of distribution.

54.   As a result of Ledge's bad faith communications, Global has also lost sales of other products in addition to the GLOBAL LOUNGER.

55.   Through its tortious conduct, Ledge has essentially eliminated Global as a competitor for the chaise loungers in the Michigan market and elsewhere.

56.   Ledge controls a substantial portion of the lounge chair market, including within the State of Michigan, and has engaged in the foregoing tortious conduct for monopolistic and anti-competitive reasons.

57.   On November 6, 2023, Global filed a Complaint to cancel Ledge's trademark with the United States Patent and Trademark Office.

58.   Within days—and with the intention of obtaining a stay of the USPTO cancellation action—Ledge filed a jurisdictionally-deficient lawsuit against Global Pool in the Southern District of Texas. The lawsuit had the intended effect, as the USPTO *sua sponte* suspended the proceeding in light of the federal lawsuit.

59.     As discussed above, Global filed a motion to dismiss for lack of jurisdiction under Rule 12(b)(2), a motion to transfer, and a motion to dismiss under Rule 12(b)(6).

60.     Ledge was offered an opportunity by the Court to amend its pleading with respect to the 12(b)(6) claims, but admitted at a status conference with the magistrate judge that it could not plead any additional facts.

61.     Ledge never filed for preliminary injunctive relief in the Southern District of Texas despite that case being pending for nearly six months.

62.     Instead, in April 2024, Ledge engaged in further tortious misconduct.

63.     In April 2024, Ledge's counsel contacted Amazon.com to complain about a seller of Global Pool's product, demanding that Amazon take down the listing for Global's product.

64.     In its demand to Amazon, Ledge's counsel omitted the fact that Ledge's purported trade dress is subject to a trademark cancellation action, and a federal lawsuit that (once transferred to the appropriate forum) would likewise involve a challenge to the validity of the purported trade dress.

65.     Amazon, in response to the takedown notice, removed the product listings, along with the product reviews left by existing customers.

66.     As a result of Ledge's conduct, the seller of Global's product ended its contractual and business relationship with Global with respect to Global's chaise

lounger, informing Global that it would be returning all of the product to Global and would no longer sell it.

67.     Ledge's extrajudicial self-help was intended to, and did, wrongfully cause harm to Global, a competitor in the marketplace with a non-infringing product.

68.     Upon information and belief, Ledge's further intention in submitting its takedown demand, rather than seeking preliminary court relief, was its desire to take advantage of the procedural posture its inappropriate lawsuit caused, and either force Global to submit to jurisdiction in an inappropriate forum or else face financial harm without respite. This was an abuse of the federal judicial process—and one that motivated the Southern District of Texas to expedite its ruling on Global's transfer motion, which it granted.

69.     Upon information and belief, Ledge is also behind other unnamed takedown notices sent to yet other sellers of Global's products.

70.     Global has been damaged, and will continue to be damaged, by Ledge's wrongful and tortious conduct in the form of loss of investment, lost sales, reputational harm, and confusion in the marketplace.

## COUNT I: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP AND EXPECTANCIES

71.     Global incorporates the foregoing allegations.

72.     Global has contractual relationships and business relationships and expectancies with the shared customer.

73.    Global has a network of salespersons and distributors for its products and has invested substantial sums of money developing the Global Lounger, marketing it to the shared customer, and securing sales orders for submission to the shared customer.

74.    Ledge has knowledge of the business relationship and expectancies that Global has with the shared customer.

75.    Ledge also has knowledge of the business relationship and expectancies that Global has with customers selling Global products on Amazon.com and in other venues.

76.    Ledge has intentionally and wrongfully interfered with Global's business relationships and expectancies with, at a minimum, (1) the shared customer, and (2) the Amazon seller described herein, inducing and causing them to terminate their business relationships and expectancies with Global, as it pertains to the GLOBAL LOUNGER.

## COUNT II: TRADEMARK CANCELLATION BASED ON THE TRADEMARK BEING GENERIC

77.    Global incorporates the foregoing allegations.

78.    Under 15 U.S.C. § 1119, in "any action involving a registered trademark," the "court may… order the cancellation of registrations, in whole or in

part… and otherwise rectify the register with respect to the registrations of any party to the action."

79.   Curved or waved lounge chairs are a category of lounge chairs.

80.   Lounge chairs having a curved seating profile sized to support an entire adult body have been ubiquitous in furniture design for at least a century.

81.   Purchasers of chairs, including lounge chairs and, specifically, lounge chairs for use in pools, understand that a chair having a curved seating profile sized to support an entire adult body is a common design of lounge chairs.

82.   Ledge's '905 Registration claims a design of a chair with a generic curved or waved shape, characterizing the mark as: "a three-dimensional configuration of a chair curved like a wave where the back of the chair slopes down and the lower halve of the chair curves up and down towards the right."

83.   A curved seating profile sized to support an entire adult body, i.e. "a three dimensional configuration of a chair curved like a wave where the back of the chair slopes down and the lower halve of the chair curves up and down towards the right," is incapable of distinguishing Ledge's lounge chairs from lounge chairs manufactured or sold by others, including chairs that have been used in the United States for a century, long before Ledge's use of its claimed mark began.

84.   As Ledge's '905 Registration claims a common, category-defining configuration of a chair incapable of indicating the source of a chair, the '905

Registration should be cancelled as being generic per Trademark Act § 14(3), 15 U.S.C. § 1064(3).

85.     Accordingly, the '905 Registration should be cancelled.

## COUNT III: TRADEMARK CANCELLATION BASED ON THE TRADEMARK BEING FUNCTIONAL

86.     Global incorporates the foregoing allegations.

87.     Ledge's Signature Chaise product is in the configuration that is claimed to be the mark of the '905 Registration.

88.     The product configuration identified in the '905 Registration is shaped to support a full adult body.

89.     The product configuration identified in the '905 Registration is shaped to allow the chair and a user be partially submerged in water.

90.     Upon information and belief, Ledge has and continues to represent and advertise the product configuration identified in the '905 Registration as being functional.

91.     The product configuration identified in the '905 Registration is essential to the use or purpose of a chair in that configuration, as the configuration accommodates a user and thus enables the chair to be used at all.

92.     The product configuration identified in the '905 Registration is essential to the use or purpose of a chair in that configuration, as Ledge uses the

product configuration for chairs marketed to be partially submerged in water, and the configuration allows the chair and a user to be partially submerged in water.

93.     The product configuration that is the subject of the '905 Registration is unregistrable as being functional per Trademark Act § 2(e), 15 U.S.C. § 1052(e).

94.     Accordingly, the '905 Registration should be cancelled.

## COUNT IV: TRADEMARK CANCELLATION BASED ON FRAUD

95.     Global incorporates the foregoing allegations.

96.     Ledge's '975 Patent was filed on May 31, 2017, and issued on October 23, 2018, and Registrant's Founder and Chief Executive Officer Christopher Anderson is one of the inventors.

97.     On June 10, 2020, Mr. Anderson executed a declaration submitted in support of the '425 Application.

98.     The Anderson Declaration was submitted in response to an office action issued on December 11, 2019 refusing the '425 Application, in which the USPTO found the product configuration subject to the '425 Application for being functional.

99.     In Paragraph 29 of the Anderson Declaration, Registrant, through Anderson, stated: "Neither the applied-for-mark, nor any features thereof, is or has been the subject matter of a design or utility patent or patent application, including expired patents and abandoned patent applications."

100.   The statement in paragraph 29 of the Anderson Declaration was false and, upon information and belief, made with an intent to deceive the USPTO.

101.   Upon information and belief, the statement in paragraph 29 of the Anderson Declaration was material to the examiner's withdrawal of the refusal of the '425 Application and approval of the '425 Application for publication.

102.   In Paragraph 35 of the Anderson Declaration, Registrant, through Anderson, represented to the USPTO that: "The design at issue was developed separate from the function of lounge and outdoor furniture."

103.   The statement in paragraph 35 was false and, upon information and belief, was made with an intent to deceive the USPTO.

104.   Upon information and belief, the statement in paragraph 35 was material to the examiner's withdrawal of the refusal of the '425 Application and approval of the '425 Application for publication.

105.   Accordingly, the '905 Registration should be cancelled.

## COUNT V: CIVIL LIABILITY FOR FALSE OR FRAUDULENT REGISTRATION UNDER 15 U.S.C. § 1120

106.   Global incorporates the foregoing allegations.

107.   As set forth above, Christopher Anderson, the then-CEO of Ledge Lounger, procured registration of a mark through a false or fraudulent declaration on behalf of his employer Ledge.

108.   Under 15 U.S.C. § 1120, "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof."

109.   As set forth herein, Ledge (through Anderson) procured registration of a mark by a false or fraudulent declaration.

110.   As set forth herein, Ledge used a registered mark obtained by a false or fraudulent declaration to cause damage to Global.

111.   Ledge is liable for all damages that Global has sustained from its use of the registered mark obtained by false or fraudulent declaration, including attorney fees incurred in defending against that invalid and fraudulently-obtained mark.

**PRAYER FOR RELIEF**

Global has been damaged by the maintenance of the '905 Registration, and has sustained substantial damages in excess of $75,000 caused by Ledge's tortious conduct and violation of 15 U.S.C. § 1120, as described herein, including without limitation, loss of investment, lost sales, reputational harm, and confusion in the marketplace. Global therefore requests that the Court enter judgment in its favor and against Ledge in excess of $75,000, plus costs, interests, and attorney fees, and that the Court cancel Ledge's '905 Registration.

Respectfully submitted,

KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.

/s/*Thomas J. Davis*
By:    Joseph E. Viviano (P60378)
Thomas J. Davis (P78626)
280 N. Old Woodward Ave. Ste. 400
Birmingham, Michigan 48009
(248) 972-7760
jviviano@khvpf.com
tdavis@khvpf.com

BEJIN BIENEMAN PLC
By:  Thomas E. Bejin (P56854)
2000 Town Center, Suite 800
Southfield, MI 48075
(313) 528-4882
bejin@b2iplaw.com

*Attorneys for Defendant/Counterclaim
Plaintiff Global Lift, Inc.*

Dated: June 12, 2024

**Certificate of Service**

I hereby certify that on June 12, 2024, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com