UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Ledge Lounger, Inc.,

                Plaintiff,

    v.

Global Lift Corp.
   d/b/a Global Pool Products,

                Defendant.

Case No.  1:24-cv-11267-TLL-PTM

Hon. Thomas L. Ludington

Magistrate Judge Patricia T. Morris

### PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS
### FOR FAILURE TO STATE A CLAIM FOR RELIEF

Plaintiff Ledge Lounger Inc. ("Ledge Lounger" or "Ledge") brought this suit to stop Defendant Global Lift Corp.'s ("Global") unfair actions, including infringement of Ledge Lounger's registered and common law trade dress rights in its Signature Chaise™ lounge chair.

In its Amended Answer, Affirmative Defenses and Counterclaims (ECF# 20), Global lodges disfavored allegations of fraud in the U.S. Patent and Trademark Office ("PTO") and seeks to cancel Ledge's registered trade dress, which are largely Global's disagreement with the PTO's decision to issue Ledge Lounger's trade dress registration. Global also alleges tortious interference, abuse of process, and antitrust counterclaims based on Ledge Lounger's permitted enforcement of its registered trade dress. More specifically, Global alleged seven counterclaims: (1) tortious interference with business relationship and expectancies, (2) abuse of process, (3) trademark cancellation based on the trademark being generic, (4) trademark cancellation based on

the trade dress being functional, (5) trademark cancellation based on fraud, (6) civil liability for false or fraudulent registration under 15 U.S.C. § 1120, and (7) attempted monopolization. ECF #20, ¶¶ 110-169.

As explained in Ledge Lounger's brief filed contemporaneously herewith, Global's counterclaims should be dismissed under Fed. R. Civ. P. 12(b)(6) because they fail to allege sufficient facts to state a claim for relief that is plausible on their face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Pursuant to LR 7.1(a), Ledge Lounger explained the nature of the motion and requested relief and its legal basis in correspondence to Global. Thereafter, the parties held a telephonic conference regarding Ledge Lounger's motion in which Ledge Lounger requested but did not obtain concurrence in the relief sought.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Ledge Lounger, Inc.,

               Plaintiff,

    v.

Global Lift Corp.
   d/b/a Global Pool Products,

               Defendant.

Case No.  1:24-cv-11267-TLL-PTM

Hon. Thomas L. Ludington

Magistrate Judge Patricia T. Morris

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS <u>COUNTERCLAIMS
FOR FAILURE TO STATE A CLAIM FOR RELIEF</u>**

## TABLE OF CONTENTS

I.     STATEMENT OF ISSUES PRESENTED ................................................. xi

II.    CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. xii

III.   INTRODUCTION .................................................................1

IV.    FACTUAL BACKGROUND ......................................................1

    A.   Ledge's Federal Trademark Registration for its Signature Chaise$^{TM}$ Trade Dress ...........................................................................2

    B.   Ledge Enforcement of Trade Dress Rights is a Legitimate Business Activity.3

V.     ARGUMENT ....................................................................5

    A.   First Counterclaim - Tortious Interference with Business Relationships........6

        1.   Applicable Law ....................................................6

        2.   Notifying the Shared Customer of Trade Dress Rights Is a Legitimate Business Activity and Cannot Constitute Improper Interference ........7

        3.   Global Failed to Plead Sufficient Facts to Show that Notifying the Shared Customer of Ledge's Intellectual Property Rights was Objectively Baseless ..............................................7

        4.   Ledge's Infringement Report to Amazon is Not the Proximate Cause of Global's Alleged Injury ........................................9

    B.   Second Counterclaim – Abuse of Process .......................................10

    C.   Third Counterclaim - Cancellation Based on Genericness............................12

    D.   Fourth Counterclaim - Cancellation Based on Functionality.........................14

    E.   Fifth and Sixth Counterclaims - Cancellation and Civil Liability Based on Fraud ..........................................................................16

        1.   Applicable Law ....................................................17

        2.   Global Failed to Allege Facts to Plausibly Establish that Anderson's Statements Were Knowingly False or Fraudulent .............................18

        3.   The Counterclaims Fail to Plausibly Allege Material Misrepresentations .................................................21

        4.   Global Failed to Plead Consequential Damages from the Registration ..................................................................22

    F.   Seventh Counterclaim – Attempted Monopolization......................................23

VI.    CONCLUSION ...................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abercrombie & Fitch v. American Eagle Outfitters,*
    280 F.3d 619 (6th Cir. 2002) ...................................................................... 13, 14

*Alar v Mercy Mem Hosp,*
    208 Mich. App. 518 (1995) ................................................................................ 7

*American Council of Cert. Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.,*
    185 F.3d 606 (6th Cir.1999) ............................................................................ 23

*Anheuser-Busch, Inc. v. Bavarian Brewing Co.,*
    264 F.2d 88 (6th Cir.1959) .............................................................................. 17

*Ass'n of Cleveland Fire Fighters v. City of Cleveland,*
    502 F.3d 545 (6th Cir. 2007) ................................................................... 5, 8, 21

*B & B Hardware, Inc. v. Hargis Industries, Inc.,*
    575 U.S. 138 (2015) ......................................................................................... 12

*Bayer Co. v. United Drug Co.,*
    272 F.505 (S.D.N.Y. 1921) .............................................................................. 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... ii, 5

Belling v. Ennis, Inc.,
    613 F.App'x 924 (Fed. Cir. 2015) .................................................................... 17

*Benton Production Enters., Inc. v. Motion Media,*
    125 F.3d 855 (6th Cir. Sept. 30, 1997) ...................................................... 18, 19

*California Motor Transp. Co. v. Trucking Unlimited,*
    404 U.S. 508 (1972) ........................................................................................... 7

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.,*
    78 F.3d 1111 (6th Cir.1996) ............................................................................ 13

*DayCab Co., Inc. v. Prarie Tech., LLC,*
    67 F.4th 837 (6th Cir. 2023) ............................................................................ 15

*DIRECTV, Inc. v. Rayborn,*
    No. 03-CV-59, 2003 WL 23200248 (W.D. Mich. Oct. 20, 2003) ..................... 8

*Dougherty v. Esperion Therapeutics, Inc.,*
    905 F.3d 971 (6th Cir. 2018) ............................................................................. 5

*Dudnikov v. MGA Entm't, Inc.,*
    410 F.Supp.2d 1010 (D. Colo. 2005) ................................................................ 7

*DuPont Cellophane Co. v. Waxed Products Co.,*
    85 F.2d 75 (2d. Cir. 1936) ............................................................................... 13

*Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC*,
   Case No. 22-CV-242, 2023 WL 1070235 (S.D. Ohio Jan. 27, 2023) ........................ 21, 22, 23

*ETS Express, Inc. v. Can't Live Without It, LLC*,
   Cancellation No. 92066213, TTABVUE 17 (TTAB Jan. 4, 2019) ...................................x, 12

*Ferrari S.P.A. v. Roberts*,
   944 F.2d 1235 (6th Cir. 1991) ...............................................................................16

*Friedman v. Dozorc*,
   412 Mich. 1, 30 (1981)...............................................................................xii, 10, 11

*General Motors Corp. v. Lanard Toys, Inc.*,
   468 F.3d 405 (6th Cir. 2006) ...........................................................................12, 16

*GFR, Ltd. v. Farner*,
   18-CV-238, 2019 WL 1198538 (W.D. Mich. Mar. 14, 2019) ...............................................18

*Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.*,
   989 F.2d 985 (8th Cir. 1993) .................................................................................21

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
   362 F.3d 1367 (Fed. Cir. 2004) ...............................................................................8

*GMA Accessories, Inc. v. Idea Nuova, Inc.*,
   157 F.Supp. 2d 234 (S.D.N.Y. 2000) ..........................................................................5

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*,
   268 Mich.App. 83 (2005) .....................................................................................6

*Heckler & Koch, Inc. v. German Sport Guns GmbH*,
   71 F.Supp.3d 866 (S.D. Ind. 2014) ...........................................................................21

*High Voltage Beverages, LLC v. The Coca–Cola Co.*,
   No. 08-CV-367, 2011 WL 831523 (W.D.N.C. Mar. 3, 2011) ...............................................22

*Icon Health & Fitness, Inc. v. Kelley*,
   1:17-CV-356-LY, 2018 WL 4323950 (W.D. Tex. Sept. 7, 2018)...........................................12

*In re Bose*,
   580 F.3d 1240 (Fed. Cir. 2009) .......................................................................17, 19, 20

*In re Cardizem CD Antitrust Litig.*,
   105 F.Supp. 2d 618 (E.D. Mich. 2000) .........................................................................8

*In-N-Out Burgers v. Doll n' Burgers LLC*,
   Case No. 20-11911, 2022 WL 791924 (E.D. Mich. Mar. 14, 2022) .........................................9

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
   456 U.S. 844 (1982) .........................................................................................15

*J.M. Smucker Co. v. Hormel Food Corp.*,
   526 F.Supp.3d 294 (N.D. Ohio 2021).........................................................................8, 9

*Jackson v. City of Columbus*,
   194 F.3d 737 (6th Cir. 1999) ..................................................................................3

*Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*,
  Case No. 16-CV-13386, 2017 WL 2472851 (E.D. Mich. June 8, 2017) ..................... 5, 17, 22

*King-Seeley Thermos Co. v. Aladdin Industries, Inc.*,
   321 F.2d 577(2d Cir. 1963) ................................................................................13

*League of United Latin Am. Citizens v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) ................................................................................5

*Leapers, Inc. v. SMTS, LLC*,
  879 F.3d 731 (6th Cir. 2018) ..............................................................................15

*Ledge Lounger Inc. v. Luxury Lounger, Inc.*,
  Case No. 23-CV-00727 (S.D. Tex.) .......................................................................4

*Leopold v. Henry I. Siegel Co.*,
  No. 86 Civ. 0063, 1987 WL 5373 (S.D.N.Y. Jan. 5, 1987) ......................................7

*Letica Corp. v. Sweetheart Cup Co., Inc.*,
  790 F.Supp. 702 (E.D. Mich. 1992) ...................................................................7, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................................21

*Lucien Lelong, Inc. v. Dana Perfumes, Inc.*,
  138 F.Supp. 575 (N.D. Ill. 1955) ...........................................................................7

*Magna Int'l, Inc. v. Deco Plas, Inc.*,
  2010 WL 2044873 (N.D. Ohio May 10, 2010) .......................................................20

*MercAsia USA Ltd. v. 3BTech Inc.*,
  Case No. 17-CV-718, 2020 WL 3549894 (N.D. Ind. June 30, 2020) .....................10

*Nartron Corp. v. STMicroelectronics, Inc.*,
  305 F.3d 397 (6th Cir. 2002) ..............................................................................13

*NOCO Co. v. OJ Commerce, LLC*,
  35 F.4th 475 (6th Cir. 2022) ...............................................................................10

*Northwestern Corp. v. Gabriel Mfg. Co., Inc.*,
  No. 95 C 2004, 1996 WL 251433 (N.D. Ill. May 8, 1996) .....................................17

*Noveshen v. Bridgewater Associates, LP*,
  47 F.Supp.3d 1367 (S.D. Fla. 2014) .....................................................................12

*Oatly AB v. D's Naturals LLC*,
  Case No. 17-CV-840, 2018 WL 349638 (S.D. Ohio July 20, 2018) .........................5

*Oil Conservation Eng'g Co. v. Brooks Eng'g Co.*,
  52 F.2d 783 (6th Cir. 1931) ..................................................................................7

*Partrich v. Farber*,
  2009 WL 4947913 (E.D. Mich. Dec. 14, 2009) .....................................................12

*Peisner v. Detroit Free Press*,
  68 Mich. App. 360 (1976) ...................................................................................11

*Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*,
   221 F.3d 913 (6th Cir. 2000) ...........................................................................xii, 6

*Perkins v. Trek Bicycle Corp.*,
   2021 WL 5925909 (W.D. Mich. Oct. 5, 2021)....................................................7

*Prof'l Real Estate Inv's, Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) ................................................................................................8

*Qualitex Co. v. Jacobson Products Co.*,
   514 US 159 (1995) ...............................................................................................15

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
   124 F.3d 430 (6th Cir. 1997) ..............................................................................25

*Re/Max Int'l., Inc. v. Realty One, Inc.*,
   173 F.3d 995 (6th Cir.1999) ...............................................................................24

*Saab Auto. AB v. Gen. Motors Co.*,
   953 F. Supp. 2d 782 (E.D. Mich. 2013), aff'd, 770 F.3d 436 (6th Cir. 2014) ...........................6

*Sage Int'l, Ltd.  v. Cadillac Gage Co.*,
   556 F. Supp. 381 (E.D. Mich. 1982) ..................................................................11

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
   344 F.Supp.3d. 1147 (S.D. Cal. 2018) ...............................................................22

*San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*,
   849 F.2d 468 (10th Cir.1988) .............................................................................20

*Solo Cup Operating Corporation v. Lollicup USA, Inc.*,
   Case No. 16 C 8041, 2017 WL 3581182 (N.D. Ill. Aug. 8, 2017) ...................20

*Spectrum Sports, Inc v. McQuillan*,
   506 U.S. 447 (1993) .......................................................................................23, 24

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
   784 F.3d 311 (6th Cir. 2015) ..............................................................................24

*Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*,
   12 F.3d 609 (6th Cir.1993) ...........................................................................xii, 24

*Techmatic Inc. v. Plating Specialsists, Inc.*,
   Case No. 3:20-cv-01078, 2022 WL 16542106 (M.D. Tenn. Oct. 28, 2022)............................25

*Texas Pig Stands, Inc. v. Hard Rock Café Int'l*,
   951 F.2d 684 (5th Cir. 1992) ..............................................................................18

*The Step2 Company, LLC. v. Ledge Lounger Inc.*,
   24-CV-00807 ..........................................................................................................4

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) ..........................................................................20

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
   532 US 23 (2001) .................................................................................................15

*Trarms, Inc. v. Leapers, Inc.,*
  Case No. 16-14229, 2017 WL 1908787 (E.D. Mich. May 10, 2017)...............................24, 25

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 US 763, 768 (1992)...................................................12

*Whirlpool Properties, Inc. v. LG Elecs. U.S.A., Inc.*,
  No. 03-CV-414, 2005 WL 3088339 (W.D. Mich. Nov. 17, 2005)........................................17

*Young v. Motor City Apartments Ltd.,*
  133 Mich. App. 671 (1984) ...................................................................................................11

**Statutes**

15 U.S.C. § 1057..................................................................................................................................3

15 U.S.C. § 1057(b)............................................................................................................................9

15 U.S.C. § 1120...................................................................................................................ii, xi, 5, 16

15 U.S.C. § 2........................................................................................................................xi, 23

35 U.S.C. § 112(b)...............................................................................................................................2

**Other Authorities**

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.85 (4th Ed.) ...22

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................................................................6

Fed. R. Civ. P. 9(b) ............................................................................................................................5

**TABLE OF EXHIBITS**

| Exhibit Number | Description |
|---|---|
| 1 | *Report Infringement*, Amazon, https://www.amazon.com/report/infringement/signin |
| 2 | Exhibits 127-152 to Anderson Declaration |
| 3 | Letter of Protest Submitted in U.S. Application No. 86600425 |
| 4 | April 11, 2024 Amazon Report Infringement Report for ASIN B0CTB7ZGYX (Global Products) |
| 5 | April 17, 2024 email from Amazon "Your Report of Rights Infringement on Amazon.com" for ASIN B0CTB7ZGYX (Global Products) |
| 6 | *ETS Express, Inc. v. Can't Live Without It, LLC*, Cancellation No. 92066213, TTABVUE 17 (TTAB Jan. 4, 2019) |

**I.      STATEMENT OF ISSUES PRESENTED**

1. Whether Global plead a plausible claim of tortious interference with business relationship and expectancies;

2. Whether Global plead a plausible claim of abuse of process;

3. Whether Global plead a plausible claim for trademark cancellation based on Ledge's trade dress being (i) generic, or (ii) functional, (iii) or obtained by fraud;

4. Whether Global plead a plausible claim for civil liability based on false or fraudulent registration under 15 U.S.C. § 1120; and

5. Whether Global plead a plausible claim for attempted monopolization under 15 U.S.C. § 2.

II.     **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

1.     **Statutes and Federal Rules:** Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 8; Fed. R. Civ. P.

9(b); 15 U.S.C. § 2 (attempted monopolization); 15 U.S.C. § 1057 (presumption of validity

of registered trademark); 15 U.S.C. § 1120 (civil liability for fraud in PTO),

2.     **Case Law:**  *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913 (6th Cir. 2000)

(tortious interference); *Letica Corp. v. Sweetheart Cup Co., Inc.*, 790 F.Supp. 702 (E.D.

Mich. 1992) (tortious interference); *NOCO Co. v. OJ Commerce, LLC*, 35 F.4th 475 (6th

Cir. 2022) (proximate cause of injury for toritous interference); *Friedman v. Dozorc*, 412

Mich. 1 (1981) (abuse of process); *Abercrombie & Fitch v. American Eagle Outfitters*, 280

F.3d 619 (6th Cir. 2002) (trade dress genericness); *Inwood Labs., Inc. v. Ives Labs., Inc.*,

456 U.S. 844 (1982) (trade dress functionality); *General Motors Corp. v. Lanard Toys,

Inc.*, 468 F.3d 405 (6th Cir. 2006) (trade dress functionality); *Benton Production Enters.,

Inc. v. Motion Media*, 125 F.3d 855 (6th Cir. Sept. 30, 1997) (15 U.S.C. § 1120); *Spectrum

Sports, Inc v. McQuillan*, 506 U.S. 447 (1993) (attempted monopolization); *Tarrant Serv.

Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 615 (6th Cir.1993) (attempted

monopolization).

## III.   INTRODUCTION

Plaintiff, Ledge Lounger Inc.'s ("Ledge") Signature Chaise™ lounge chair's distinctive wave-form configuration became a marketplace success. Ledge obtained a federal trade dress registration from the U.S. Patent and Trademark Office ("PTO") for its distinctive configuration. Ledge's marketplace success led others to copy the Signature Chaise™ chair's configuration and infringe on Ledge's trade dress rights, including Defendant, Global Lift Products ("Global"). Ledge has protected its trade dress rights by informing others of its rights, submitting takedown requests with on-line marketplaces, and, when necessary, enforcing those trade dress rights in federal court. The law is clear—trade dress owners may advise others that a product infringes its own trade dress; this is fair, legitimate competition.

Global lodges disfavored allegations of fraud in the PTO and seeks to cancel Ledge's registration, which are largely Global's disagreement with the PTO's decision to issue Ledge's trade dress registration. Global's tortious interference, abuse of process and attempted monopolization claims all relate to Ledge's efforts to enforce its trade dress rights. As discussed below, Global's counterclaims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to plead a plausible claim for relief.

## IV.   FACTUAL BACKGROUND

Ledge is a Texas corporation headquartered in Texas. Ledge manufactures and sells outdoor products, including chaise lounge chairs which became hugely successful in the marketplace. ECF #8, ¶¶ 7, 10. Global is a Michigan corporation with a principal place of business in Bad Axe, Michigan. Ledge brought this action to stop Global's infringement of Ledge's trade dress rights by its sale of the Global Lounger lounge chair. *Id.*, ¶¶ 31-41.

**A.  Ledge's Federal Trademark Registration for its Signature Chaise<sup>TM</sup> Trade Dress**

On August 30, 2019, Ledge filed a federal trademark application for the distinctive wave-form configuration trade dress of its Signature Chaise<sup>TM</sup> lounge chair. *See* ECF #8, ¶ 16; *id.* Ex. 1. During the application process, the Founder and CEO of Ledge, Christopher Anderson, submitted a declaration providing evidence that the applied-for trade dress was non-functional and had acquired secondary meaning. ECF #20, ("Counterclaims"), Ex. I. The declaration stated: "Neither the applied-for mark, nor any features thereof, is or has been the subject matter of a design or utility patent application …" Counterclaim, ¶ 31 citing Ex. I, ¶ 29. The declaration also stated "The design at issue was developed separate from the function of lounge and outdoor furniture." Counterclaim, ¶ 36 (citing Ex. I, ¶ 35). Mr. Anderson believed the statements were true by "declar[ing] that the facts set forth in this application and declaration are true; all statements made of his knowledge are true; and all statements made on information and belief are true." Ex. I, at 9.

Prior to executing the declaration, Ledge had obtained U.S. Patent No. 10,104,975 (the "'975 Patent") titled "Threaded Plugs in Furniture Being Partially Submerged." ECF #20, Ex. J. As the title states, the subject matter of the patent is a threaded plug used with submergible furniture (e.g., a chair or a table). *See id.*, Claims 1-16, 1:35 ("Likewise, said threaded plugs are designed to overcome a shortcoming of the prior art …"), and 4:27-28. Global concedes that "the threaded plug system [] is the *subject of Ledge's patent*." Counterclaims, ¶ 70 (emphasis added). A patent's claims, which are the numbered paragraphs found at the end of the patent, define the subject matter of a patent. 35 U.S.C. § 112(b) ("The specification shall conclude with one or more *claims* particularly pointing out and distinctly *claiming the subject matter* which the inventor … *regards as the invention*.") (emphasis added). The subject matter of the '975 Patent is not a chair having a wave form because none of the claims of the '975 Patent recite a chair with a wave-form configuration. Ex. J, Cols. 9-10. Indeed, the furniture configuration is not important to the '975

Patent invention, as "[d]esigns for said chair 100*b* … may comprise variations on the shape and dimensions …". *Id.*, 4:52-54.

While Ledge's trade dress application was pending, the PTO accepted a third party protest letter containing evidence of the alleged functionality of Ledge's trade dress, which the examining attorney was ordered to consider. Ex. 3.[1] The evidence included an annotated copy of the '975 Patent highlighting portions of the specification in yellow, including Col. 1, Lines 62-63; Col. 4, Lines 54-57; Col. 5, Lines 27-29; and Col. 6, Line 60 – Col. 7, Line 10. Ex. 3, at 3-17. These are the same portions of the '975 Patent identified in Paragraph 35 of Global's Counterclaims. The protest letter evidence also included annotated copies of Ledge advertisements and statements, referring to "Fine contours to support the body," "Stacks easily for storage," submerging in "6-8 inches of water," and "countered for comfort", Ex. 3, at 19, 24 which mirror the allegations of Counterclaim, ¶ 39(a)-(c).

After considering the '975 Patent and Ledge's statements, the PTO found Ledge's trade dress was not functional and issued a federal registration (U.S. Trademark Registration No. 6,932,905). ECF #8, Ex. 1. Ledge's federal trademark registration is prima facie evidence of the validity of the mark, including that it is non-functional. *See* 15 U.S.C. § 1057.

## B. Ledge Enforcement of Trade Dress Rights is a Legitimate Business Activity

Infringement of Ledge's federally registered and common law trade dress has been rampant in the marketplace. To protect its trade dress rights, Ledge has notified others of its trade dress rights through cease-and-desist letters and enforced its rights in federal court. ECF #8 at ¶ 39; *id.*

---

[1] The counterclaims refer to Ledge's cease and desist letter and the Amazon takedown communications, but did not attach copies of these documents or the complete records relating to its trade dress registration. These documents are properly considered part of the pleadings. *See Jackson v. City of Columbus*, 194 F.3d 737, 745-46 (6th Cir. 1999) ("[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.").

Ex. 2; *Ledge Lounger, Inc. v. Luxury Lounger, Inc.*, Case No. 23-CV-00727 (S.D. Tex.), ECF #1-4 (June 2, 2022 Letter from Burow to Nolte); *The Step2 Company, LLC v. Ledge Lounger, Inc.*, Case No. 24-CV-00807 (N.D. Ohio), ECF #1, ¶ 47.

On August 28, 2023, Ledge sent Global correspondence identifying Ledge's intellectual property rights, including its federally registered trade dress, and informing Global that its Global Lounger infringes Ledge's registered and common law trade dress. ECF #8 at ¶ 39; *id.* Ex. 2. On October 3, 2023, Ledge's counsel sent an email to Pool Corp. advising them of Ledge's intellectual property and that "Ledge has put Global [] on notice of its infringement of Ledge's intellectual property." *See* ECF #20, ¶ 71. The email to Pool Corp. did not assert patent infringement. *Id.*

Based on good faith belief that it possessed legally protectable trade dress (including its federal registration which is presumed valid) and that others infringed those rights, Ledge has taken legal action to enforce its rights in federal court. *Id.*; *see also* ECF #20, ¶¶ 65-66. In addition, Ledge has reported infringements to Amazon, including infringements by sellers of Global's Global Lounger lounge chair. *See* ECF #20, ¶ 98; Ex. 4. Amazon's Report Infringement form "is intended for use by intellectual property rights owners and their agents to notify Amazon of alleged intellectual property infringements such as copyright and trademark concerns." Ex. 1. The Amazon form requires the submitting party to confirm that "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law." *See* Ex. 4. Amazon does not request information regarding pending PTO trademark cancellation proceedings or district court litigation. *Id.* Amazon investigated Ledge's infringement claim, determined that the Global Lounger chair infringed Ledge's trade dress, and removed the product listing. Ex. 5 ("The results of our investigations are below. … Decision: Actioned.")

On July 24, 2024, Global filed its Amended Counterclaims which alleged seven counterclaims: (1) tortious interference with business relationship and expectancies, (2) abuse of process, (3) trademark cancellation based on the trademark being generic, (4) trademark cancellation based on the trademark being functional, (5) trademark cancellation based on fraud, (6) civil liability for false or fraudulent registration under 15 U.S.C. § 1120, and (7) attempted monopolization under § 2 of the Sherman Act. ECF #20, ¶¶ 110-169.

## V.   ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). Showing entitlement to relief "'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*).

The heightened pleading standard of Fed. R. Civ. P. 9(b) applies to allegations of fraudulent registration of trademarks under 15 U.S.C. § 1120 and cancellation claims based on fraud. *Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*, Case No. 16-CV-13386, 2017 WL 2472851, at *1 (E.D. Mich. June 8, 2017). "The heightened pleading requirements apply to each element of the fraud claim." *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F.Supp.2d 234, 243 (S.D.N.Y. 2000). The heightened pleading standard requires that a claim 1) "specify the statements that the [pleader] contends were fraudulent," 2) "identify the speaker," 3) "state where and when the statements were made," and 4) "explain why the statements were fraudulent." *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018).

As discussed below, Global's counterclaims fail to state plausible claims for relief and Ledge moves that the counterclaims be dismissed under Fed. R. Civ. P. 12(b)(6).

### A. First Counterclaim - Tortious Interference with Business Relationships

Global's first counterclaim alleges that Ledge tortiously interfered with two relationships: "(1) the shared customer, and (2) the Amazon seller described herein." Counterclaim, ¶ 115. As to the shared customer, Global alleges that Ledge's communications advising the customer of Ledge's trade dress rights and that Ledge had notified Global of infringement caused termination of a business relationship. Counterclaim, ¶¶ 69-76. As to the Amazon seller, Global alleges that Ledge's submission of a takedown notice to Amazon caused the seller to terminate its relationship with Global. Counterclaim ¶¶ 98-101. Global failed to state a plausible claim of tortious interference with either relationship.

#### 1. Applicable Law

To plead tortious interference under Michigan law, a party must allege "(1) the existence of a valid business relation or expectancy; (2) that the defendant knew of the relationship or expectancy; (3) that the defendant intentionally interfered by improperly inducing or causing a breach or termination of the relationship or expectancy; and (4) that defendant's improper or unjustified interference resulted in injury to the plaintiff." *Perceptron, Inc. v. Sensor Adaptive Machs., Inc.*, 221 F.3d 913, 921 n.7 (6th Cir. 2000). To establish the "intentional interference," the interference must be "per se wrongful" or "a lawful act with malice and that is unjustified in law." *Saab Auto. AB v. Gen. Motors Co.,* 953 F. Supp. 2d 782, 790 (E.D. Mich. 2013), aff'd, 770 F.3d 436 (6th Cir. 2014). Actions motivated by legitimate business reasons do not constitute improper motive or interference. *Id.* A competitor's enforcement of trade dress rights is a legitimate business action and cannot support a claim for unfair competition. *Letica Corp. v. Sweetheart Cup Co., Inc.*,

790 F.Supp. 702, 707 (E.D. Mich. 1992); *Perkins v. Trek Bicycle Corp.*, 2021 WL 5925909, at *4 (W.D. Mich. Oct. 5, 2021) ("Protecting the value of one's trademark is certainly a legitimate act.").

Global must also prove that Ledge is the proximate cause of its alleged injury. *Alar v. Mercy Mem. Hosp.,* 208 Mich. App. 518, 530 (1995) (explaining that with regard to "all purportedly tortious conduct," an actionable claim requires proof of proximate causation).

### 2. Notifying the Shared Customer of Trade Dress Rights Is a Legitimate Business Activity and Cannot Constitute Improper Interference

The law is clear that a "trademark owner is entitled to advise others of his trademark rights, to warn others that they or others are or may be infringing his rights, to inform others that he is seeking to enforce his rights through legal proceedings, and to threaten accused infringers and their customers with suit." *Leopold v. Henry I. Siegel Co.*, No. 86 Civ. 0063, 1987 WL 5373, at *4 (S.D.N.Y. Jan. 5, 1987); *see also Oil Conservation Eng'g Co. v. Brooks Eng'g Co.,* 52 F.2d 783, 785 (6th Cir. 1931) ("Notices to the competitor that he is infringing … and to a limited number of his chief customers, are the normal procedure and not to be condemned"). Thus, a trademark holder advising a competitor or its customers of its trade dress rights and alleged infringement are legitimate business actions and not improper. *See Letica,* 790 F. Supp. at 707.

Here, Global has not alleged that Ledge did anything more than protect its legitimate trade dress rights, which cannot, as a matter of law, be improper interference. *See Dudnikov v. MGA Entm't, Inc.*, 410 F.Supp.2d 1010, 1019 (D. Colo. 2005) (copyright holder who submitted notice of infringement to eBay's takedown program "could not, as a matter of law, be improper interference" and granting summary judgment on tortious interference claims).

### 3. Global Failed to Plead Sufficient Facts to Show that Notifying the Shared Customer of Ledge's Intellectual Property Rights was Objectively Baseless

Additionally, the litigation activity (including pre-litigation cease-and-desist letters) cannot form the basis of liability unless the activities are a sham under the *Noerr-Pennington* doctrine.

- 7 -

*See In re Cardizem CD Antitrust Litig.*, 105 F.Supp.2d 618, 637 (E.D. Mich. 2000); *see also Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374-75 (Fed. Cir. 2004) (state law claims relating to assertions of patent infringement are preempted by federal law absent a showing of bad faith). As long as there is an "objectively reasonable" basis to litigate, a lawsuit or prelitigation activities "cannot be a sham regardless of subjective intent." *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57 (1993). Pre-litigation activity is objectively baseless when "no reasonable litigant could realistically expect success on the merits." *Id.* at 60-62. Whether a lawsuit is objectively baseless is a question of law for the Court and may be decided on a motion to dismiss. *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F.Supp.3d 294, 308 (N.D. Ohio 2021) (dismissing tortious interference claims because cease and desist letter alleging trade dress infringement was not objectively baseless).

Global has failed to allege sufficient facts to show that Ledge's notification of intellectual property rights was objectively baseless. As to the shared customer, Global alleges that Ledge's communications were in "bad faith" because Ledge allegedly knew (i) its trade dress rights were invalid as functional, and (ii) that the shared customer did not infringe any Ledge patent. Counterclaims, ¶¶ 68, 72, 73. Simply labeling Ledge's communications as "bad faith" is insufficient to show entitlement to relief. *Ass'n of Cleveland Fire Fighters,* 502 F.3d at 548; *cf. DIRECTV, Inc. v. Rayborn*, No. 03-CV-59, 2003 WL 23200248, at *6 (W.D. Mich. Oct. 20, 2003) ("[I]f a bare allegation of bad faith litigation were sufficient to defeat the *Noerr-Pennington* bar, every claimant would be able to avoid the intent of the Supreme Court merely by alleging bad faith on the part of the party seeking to enforce [its rights]")(alterations in original).

Without question, Ledge had a good-faith belief that its registered trade dress is valid and enforceable because it owns a federal registration, which carries a presumption that the registered

trade dress is valid and non-functional. *See* 15 U.S.C. § 1057(b); *In-N-Out Burgers v. Doll n' Burgers LLC*, Case No. 20-CV-11911, 2022 WL 791924, at \*17 (E.D. Mich. Mar. 14, 2022) (federal registration creates presumption that trade dress is non-functional). Furthermore, the PTO considered the '975 Patent and Ledge's advertising and marketing materials—the very evidence Global relies on in its counterclaim as demonstrating functionality—and concluded that the trade dress was not functional before issuing the registration. Thus, Ledge succeeded on the merits in the PTO over the very evidence Global relies on in its counterclaim. Global's disagreement with the PTO's decision that Ledge's trade dress is non-functional does not render Ledge's position objectively baseless. *J.M. Smucker*, 526 F.Supp.3d at 309.

Global's counterclaim also fails to allege a plausible claim of assertion of bad faith patent infringement. Indeed, the counterclaim does not allege that Ledge *asserted patent infringement*. *See* Counterclaim ¶¶ 69-72, 75. The counterclaim alludes to "the threaded plug system that is the subject of Ledge's patent," but the communication to the customer does not mention a threaded plug system or patent infringement. *See* ¶ 71. Nor does the allegation as to the customer's "*belief*" support a claim that *Ledge* actually *asserted* patent infringement. *Id.*, ¶ 71 ("Ledge led at least one shared customer *to believe that Global Lounger infringed* upon Ledge's patent rights …"). Because Global does not allege the Ledge *actually asserted patent infringement*, the counterclaim as to the shared customer necessarily fails.

### 4. Ledge's Infringement Report to Amazon is Not the Proximate Cause of Global's Alleged Injury

Global's tortious interference claim as to the Amazon seller also fails to state a plausible claim because Ledge was not the proximate cause of Global's injury. In *NOCO*, the Sixth Circuit addressed, under Ohio law, whether a party submitting takedown requests that resulted in Amazon removing products from its platform could be liable for defamation and tortious interference.

*NOCO Co. v. OJ Commerce, LLC*, 35 F.4th 475, 476 (6th Cir. 2022). The district court granted summary judgment on the claims, finding that the plaintiff failed to show that the filer of the Amazon complaint was the proximate cause of its injury. *Id.* at 480. The Sixth Circuit affirmed reasoning in relevant part:

> Here, Amazon conducted its own independent investigation. And it made the decision to deactivate OJC's account based on that investigation. Amazon's anti-counterfeiting policy tells us just as much. In its policy, Amazon explicitly states that it takes actions based on its own review. And Amazon sent multiple warning emails to OJC before deactivating OJC's account. This shows that Amazon did, in fact, investigate the claims and that NOCO had no role in the investigation or the ultimate decision. OJC provided no evidence to the contrary. Thus, even if NOCO's complaint alone set off Amazon's investigation, Amazon had the chance to "eliminate the hazard" and didn't. So Amazon's independent investigation was an intervening cause that relieves NOCO of any responsibility.

*Id.* at 487; *see also MercAsia USA Ltd. v. 3BTech Inc.*, Case No. 17-CV-718, 2020 WL 3549894 (N.D. Ind. June 30, 2020) (tortious interference claim based on patent infringement reports to Amazon that resulted in product takedown had "no chance of success on the merits").

As in *NOCO*, Amazon's independent investigation of Global's trade dress infringement was an intervening cause that relieves Ledge of any responsibility. *See* ECF #20, Counterclaim ¶ 100 ("Amazon, in response to the takedown notice, removed the product listings ..."). Amazon's report to Ledge made clear that Amazon reviewed and investigated Ledge's infringement claim before removing Global's Global Lounger chair from its platform. Ex. 5.

**B.  Second Counterclaim – Abuse of Process**

Global's second counterclaim alleges a number of disparate acts, none of which plead a plausible claim of abuse of process. To recover upon a theory of abuse of process, Global must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981) (affirming dismissal for failure to state a claim). The misconduct cannot be the "wrongful initiation of

criminal or civil proceedings." *Id.; Peisner v. Detroit Free Press,* 68 Mich. App. 360, 366 (1976). Instead, Global must plead an irregular act during the process for a purpose collateral to the intended purpose of the process, such as to extort or otherwise oppress another party. *Peisner*, 68 Mich. App. at 366; *Sage Int'l, Ltd.   v. Cadillac Gage Co.*, 556 F. Supp. 381, 389 (E.D. Mich. 1982); *Young v. Motor City Apartments Ltd.,* 133 Mich. App. 671, 681 (1984).

Global's counterclaim primarily relies on Ledge's act of *filing* this suit. ECF #20, ¶ 117 ("Ledge hastily filed a lawsuit against Global   … to block Global's pending administrative challenge [in the PTO],"), ¶ 120 ("Ledge … used the filing of this … lawsuit in order to attempt to coerce Global into abandoning its administrative challenge [in the PTO]"). But the filing of this lawsuit cannot form the basis of an abuse of process claim. *Friedman*, 412 Mich. at 30.

Global also alleges acts in other cases *prior* to the filing of this case, ECF No. 20, Counterclaims, ¶ 121, which are irrelevant to its abuse of process claim. *Peisner*, 68 Mich. App. at 367 ("The acts of the plaintiff occurring prior to December 10, 1973, are irrelevant on [the improper act] element since prior to that date there was no process to misuse."). Similarly, alleged actions outside of the litigation (issuing Amazon take down notices),  ECF No. 20,  ¶¶ 106, 123, are also not actionable "act[s] in the use of process." *See Sage,* 556 F. Supp. at 388 ("Plaintiffs also allege various other improper acts committed by defendants, most of which are outside the process of litigation."). Indeed, no pending litigation was needed for Ledge to submit takedown notices to Amazon.

That leaves Global's allegations (which are untrue) that Ledge offered to resolve the lawsuit without payment of damages if Global would drop its cancellation proceeding. Counterclaims, ¶¶ 10, 94, 120. Setting aside the falsity of the allegations, having settlement discussions is not abuse of process. *Partrich v. Farber*, 2009 WL 4947913, *7 (E.D. Mich. Dec.

14, 2009). "It is only abuse of process where legal process is used to obtain an improper objective that is outside the purpose of the litigation." *Id.* Ledge's efforts to settle the dispute is not collateral to the litigation, but consistent with it. *See Patrich*, 2009 WL 4947913, *7-8 (settlement demand not collateral to the process because demand was consistent with favorable probate court ruling). If Ledge prevails on its trade dress infringement claims, it will have established that its trade dress is not functional and distinctive (i.e., not generic). *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 414-15 (6th Cir. 2006). Those findings will have preclusive effect in the cancellation proceeding and cause the cancellation proceeding to be dismissed. *See B & B Hardware, Inc. v. Hargis Industries, Inc.,* 575 U.S. 138 (2015) (applying collateral estoppel/issue preclusion in TTAB and subsequent district court action); *ETS Express, Inc. v. Can't Live Without It, LLC*, Cancellation No. 92066213, TTABVUE 17 (TTAB Jan. 4, 2019) (dismissing cancellation petition based on claim preclusion stemming from judgment in district court litigation) (Ex. 6).

### C. Third Counterclaim - Cancellation Based on Genericness

Global's third counterclaim seeks to cancel Ledge's registered trade dress alleging it is generic. Counterclaims, ¶¶ 126-134. Global's central theme is that Ledge's wave-form trade dress is a "common, category-defining configuration of a chair incapable of indicating the source of a chair." Counterclaims, ¶ 133. Global's third counterclaim fails to state a plausible claim for cancellation based on genericness. *Noveshen v. Bridgewater Associates, LP*, 47 F.Supp.3d 1367, 1373 (S.D. Fla. 2014) (granting motion to dismiss trademark cancellation counterclaim based on genericness); *Icon Health & Fitness, Inc. v. Kelley,* 1:17-CV-356-LY, 2018 WL 4323950, *3-4 (W.D. Tex. Sept. 7, 2018) (same).

"Generic marks—those that ``refe[r] to the genus of which the particular product is a species'—are not registrable as trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 US 763, 768 (1992); *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117

(6th Cir.1996) ("A generic term … is a term used to commonly describe the relevant type of goods or services"). Trademarks for products that evolved to describe a genus of products have become generic and are no longer protectable as trademarks. "Examples of unprotectible generic names are 'aspirin,' 'escalator,' and 'light beer.'" *Id.*; *see also Bayer Co. v. United Drug Co.,* 272 F.505 (S.D.N.Y. 1921) ("Aspirin" became a generic name for a drug known as 'acetyl salicylic acid'); *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75, 80 (2d Cir. 1936) ("cellophane" generic term for cellulose transparent sheets); *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577 (2d Cir. 1963) ("Thermos" generic term for vacuum insulated containers).

Trade dress product designs are generic only if the design would be the most basic form of a given genus of products, i.e., the image that appears in a person's head when he hears the product category, such as "shirt" or "baseball cap." *Abercrombie & Fitch v. American Eagle Outfitters*, 280 F.3d 619, 638-39 (6th Cir. 2002); *Nartron Corp. v. STMicroelectronics, Inc.,* 305 F.3d 397, 404 (6th Cir. 2002) ("If a mark is primarily associated with a type of product rather than with the producer, it is generic.").

Global has failed to plead facts to plausibly show that the public associates Ledge's trade dress with the basic form of a chair, lounge furniture, or outdoor furniture. Ledge's trade dress "consists of a three-dimensional configuration of a chair …" and is registered in Class 20 for lounge furniture and outdoor furniture. ECF #8, Ex. 1. Global alleges that Ledge's trade dress is a "common design of lounge chairs" and "ubiquitous in furniture design for at least a century," Counterclaims, ¶¶ 129-130. Even if true, these allegations that a design is "common" or "ubiquitous" do not demonstrate that the public associates lounge chairs *only* with a wave or curved form, as opposed to other designs which lack curves. *See AirWair International Ltd. v. Schultz*, 84 F.Supp.3d 943 (2015) (merely alleging that "hundreds of third parties [were] using the

[Marks]" does not plausibly allege a mark is generic). Thus, Global fails to plead that Ledge's trade dress is the "most basic incarnation" or form of a chair. *Abercrombie,* 280 F.3d at 638.

The Sixth Circuit's *Abercrombie* is instructive. 280 F.3d at 633. The district court found the clothing designs and catalogs trade dress generic, but the Sixth Circuit reversed:

> The label of "generic" is a severe condemnation and … the label is not justified. . . . Clothing bearing images of athletic paraphernalia are not a basic incarnation of certain types of apparel. The genus is athletic (or suggestively athletic) apparel; the species is shirts bearing lacrosse sticks. With respect to the Quarterly, the genus is "mail-order clothing catalogs"; the species is mail order clothing catalogs containing lifestyle editorial content and depicting the goods in the "clothesline" style with color bars to present color options. … While producers have little choice but to call a shirt a shirt, they can place upon a shirt an infinite variety of images and depict that shirt on paper in an infinite variety of ways. That certain of these ways are particularly effective at generating sales does not make them generic.

*Id.* at 639. As in *Abercrombie*, there are infinite varieties of lounge chair designs that do not use Ledge's registered trade dress. *See* ECF #10, Ex. C, ¶ 30, citing Exhibits 127-151 (Ex. 2). In other words, Ledge does not have a monopoly on the basic form of lounge chairs such that others are precluded from making lounge chairs. *See Abercrombie*, 280 F.3d at 638.

Thus, Global fails to set forth a plausible claim for cancellation based on genericness.

**D. Fourth Counterclaim - Cancellation Based on Functionality**

Global's fourth counterclaim fails to plead a plausible claim for cancellation of Ledge's registration based on functionality. Here, Global alleges Ledge's trade dress is functional because the registered production configuration: is "shaped to support a full adult body," Counterclaims, ¶ 137;  is "shaped to allow the chair and a user be partially submerged in water," Counterclaims, ¶ 138; "essential to the use or purpose of a chair … , as the configuration accommodates a user and thus enables the chair to be used at all," Counterclaims, ¶ 140); and "essential to the use or purpose of a chair … as … the configuration allows the chair and a user to be partially submerged." Counterclaims, ¶ 141.

"The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Products Co.,* 514 US 159, 164 (1995). "In general terms, a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 10 (1982); *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 US 23, 35 (2001). A design is also functional where, without its use, "'competitors [are] at a significant nonreputation-related disadvantage.'" *Id.* at 32, 121 S.Ct. 1255 (quoting *Qualitex*, 514 U.S. at 165, 115 S.Ct. 1300); *Leapers, Inc. v. SMTS, LLC,* 879 F.3d 731, 737 (6th Cir. 2018). A design may have incidental functionality if it turns out to have functional value despite an original aesthetic intent. *DayCab Co., Inc. v. Prarie Tech., LLC,* 67 F.4th 837, 847 (6th Cir. 2023) (citing *Inwood*, 456 U.S. at 850 n.10). And there are few "aesthetic designs that are so fundamental to an industry that competitors cannot fairly compete without free use of [the designs]." *Id.* (quoting *Leapers*, 879 F.3d at 737); *see also Fuji Kogyo Co., Ltd. v. Pacific Bay Intern., Inc.,* 461 F.3d 675, 685 (6th Cir. 2006) (explaining types of functionality that do not defeat trade mark registration). Courts must examine trade dress as a whole to determine its functionality. *See Abercrombie*, 280 F.3d at 644.

Here, Global's allegations improperly focus on de facto features of any lounge chair. All lounge chairs are designed to support a person, just like "a bottle of any design holds fluid." *Fuji*, 461 F.3d at 685. The appropriate question for functionality is whether the particular configuration of a lounge chair (i.e., the trade dress) is essential or necessary for the use or purpose of a lounge chair and, without its use, "'competitors [are] at a significant nonreputation-related disadvantage.'" *TrafFix*, 532 U.S. at 32; *see DayCab*, 467 F.4th at 848 (conversion kit panel "serves the general

function of covering the opening in a truck cab" but "whether the specific design of the panel constitutes protectable trade dress [in dispute], as that design is not the only design available."); *see Ferrari S.P.A. v. Roberts,* 944 F.2d 1235 (6th Cir. 1991) (affirming non-functionality of the exterior shapes and features of the Daytona Spyder and Testarossa cars); *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 417 (6th Cir. 2006) (affirming that Humvee trade dress including "the exterior appearance and styling of the vehicle design which includes the grille, slanted and raised hood, split windshield, rectangular doors, squared edges, etc." was non-functional).

In this case, Global fails to allege plausible facts that Ledge's trade dress is essential or necessary for a lounge chair. Counterclaim paragraphs 140 and 141 use the magic "essential or necessary" language, but are legal conclusions devoid of factual support which the Court must reject. *Cleveland Fire Fighters,* 502 F.3d at 548; *Northwestern,* 1996 WL 251433, *6. Indeed, numerous lounge chairs have a flat seat portion and flat back portion, *see* Ex. 2, at 5, 14, which means the wave form configuration is ***not essential*** to a lounge chair. Global also makes no allegations concerning specific advantages in Ledge's design or how these advantages will adversely impact Global's ability to compete in the lounge chair market. *Northwestern,* 1996 WL 251433, *6. Nor does Global allege how producing a distinct chair would raise production and market costs. *Id.*

For at least these reasons, Global's Fourth Counterclaim fails to state a claim for relief and should be dismissed.

### E. Fifth and Sixth Counterclaims - Cancellation and Civil Liability Based on Fraud

Global's Fifth (cancellation) and Sixth Counterclaims (civil liability under 15 U.S.C. § 1120) are based on allegations of fraud in the PTO. Courts "have decried the routine allegation of fraud in trademark cases" because "most allegations of fraud in this area" are "weak and ill-founded." *Whirlpool Properties, Inc. v. LG Elecs. U.S.A., Inc.*, No. 03-CV-414, 2005 WL

3088339, at *27 (W.D. Mich. Nov. 17, 2005) (citations omitted). Thus, fraud defenses are disfavored, and carries a heavy burden of proof and "requires that [allegations] be proven 'to the hilt.'" *In re Bose*, 580 F.3d 1240, 1243 (Fed. Cir. 2009); *Anheuser-Busch, Inc. v. Bavarian Brewing Co.*, 264 F.2d 88, 92 (6th Cir. 1959).

Global alleges fraud based on two statements in the Anderson Declaration:

- "Neither the applied-for-mark, nor any features thereof, is or has been the subject matter of a design or utility patent or patent application, including expired patents and abandoned patent applications." Counterclaim, ¶ 148.

- "The design at issue was developed separate from the function of lounge and outdoor furniture." Counterclaim, ¶ 151.

At the core, these statements relate to the alleged functionality of the registered trade dress, *see* Counterclaim, ¶ 45, but functionality is not a proper basis for a claim of fraud on the PTO. *Northwestern Corp. v. Gabriel Mfg. Co., Inc.*, No. 95 C 2004, 1996 WL 251433, *5 (N.D. Ill. May 8, 1996).

Additionally, Global's fraud-based counterclaims fail to state a plausible claim for relief because Global failed to allege facts demonstrating (i) that Anderson knew either statement was false and that he had specific intent to deceive the PTO, (ii) that either statement was material (iii) that the PTO relied on either statement, and (iv) Global's damages of its §1120 claim were proximately caused by Ledge's alleged misrepresentation.

### 1. Applicable Law

To establish fraud, Global "must prove with clear and convincing evidence that the applicant knowingly made a false, material representation, with the intent to deceive the PTO. It is not enough that the applicant should have known the statement was misleading." *Jaguar Land Lover Ltd. v. Bombardier Recreational Prods., Inc.*, 2018 WL 11352593, at *8 (E.D. Mich. Nov. 5, 2018), quoting *Belling v. Ennis, Inc.*, 613 F.App'x 924, 925–26 (Fed. Cir. 2015). To sustain a

claim for damages under § 1120, Global must show that Ledge (1) made a false or fraudulent representation of a material fact in securing the mark; (2) that Ledge knew or believed that this representation was false; (3) that Ledge intended to induce the PTO to rely on this misrepresentation; (4) that there was reasonable reliance on the misrepresentation; and (5) that Global's damages were proximately caused by Ledge's alleged misrepresentation. *Benton Production Enters., Inc. v. Motion Media*, 125 F.3d 855, at *3 (6th Cir. Sept. 30, 1997); *Jaguar*, 2018 WL 11352593, at *2; *GFR, Ltd. v. Farner,* 18-CV-238, 2019 WL 1198538, at *3 (W.D. Mich. Mar. 14, 2019). Mistakes resulting from inadvertence do not give rise to liability for fraud. *Benton*, 125 F.3d 855, at *3.

### 2. Global Failed to Allege Facts to Plausibly Establish that Anderson's Statements Were Knowingly False or Fraudulent

Global's fraud-based counterclaims fail to set forth facts sufficient to show a plausible claim that Anderson's declaration contained false statements or knowingly false statements.

### i. Anderson Truthfully Stated that the Wave Form Trade Dress is Not the Subject Matter of the '975 Patent

Anderson's first alleged misrepresentation relates to whether "the applied-for-mark has been the subject matter of a design or utility patent." Counterclaim, ¶ 148. Global's counterclaim alleges that this statement is false because portions of the '975 Patent specification "disclose and describe the functionality of Ledge's design." *Id.*, ¶¶ 32-36.

The cited passages do not demonstrate a plausible claim that Anderson's statement is false because the applied-for-mark was ***not*** the subject matter of the '975 Patent. The subject matter of the '975 Patent is a threaded plug system, which is consistent with its title. Indeed, Global conceded that "the threaded plug system [] is the *subject of Ledge's patent*." Counterclaim, ¶ 70 (emphasis added). This is consistent with the title and claims of the '975 Patent. None of the claims of the '975 Patent recite or refer to a wave form for a chair. Ex. J, Columns 9-10; *see* 35 U.S.C. §

112(b) (claims state subject matter of the invention). Rather, as the title states, the subject matter of the patent is a threaded plug used with submergible furniture, *see* Ex. J at Claims 1-16, 1:35, which may be a chair or a table. *Id.,* 4:27-28. The submergible furniture includes an "outer shell and internal cavity" but provide no further details regarding its shape is claimed. Ex. J, Claim 1. In fact, the shape is not important to the invention, as "[d]esigns for said chair 100*b* … may comprise variations on the shape and dimensions …". Thus, Mr. Anderson's statement was true.

### ii. Global Failed to Explain Why a Statement Relating to the Design of the Trade Dress was False or Fraudulent

Global alleges that Anderson made a false or fraudulent statement relating to whether the design of the trade dress "was developed separate from the function of lounge and outdoor furniture." Counterclaims, ¶ 102. Global fails to explain why this statement is fraudulent or false. *Doughterty,* 905 F.3d at 978. Instead, the counterclaim merely avers that the statement is "contradicted" "by previous statements of Mr. Anderson and Ledge," Counterclaims, ¶ 37. Global's pleading also ignores that "functionality" for purposes of trade dress considers whether "a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 851 n. 10. Global's pleading fails to plead facts explaining why Mr. Anderson's statement is false under the correct legal standard for functionality, especially in light of other statements in the declaration stating the design is not essential and increased costs. ECF #20, Ex. I, ¶¶ 30-34. This deficiency requires dismissing Global's fraud based counterclaim.

### iii. Global Fails to Allege that Anderson Knowingly Made a False Misrepresentations With Intent to Deceive the PTO

Global failed to plead sufficient facts to plausibly show Mr. Anderson *knew* that the two alleged representation were false and intended to deceive the PTO. *Benton*, 125 F.3d 855, at *3; *see also In re Bose*, 580 F.3d at 1244-45 (holding "that a trademark is obtained fraudulently under

the Lanham Act only if the applicant … knowingly makes a false, material representation …"). Furthermore, "[i]ntent to deceive" must be "the single most reasonable inference to be drawn from the evidence," but here there is no allegations supporting specific intent. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). There is no room for speculation, inference or surmise, however, when assessing trade mark fraud claims, which is all Global has plead. *In re Bose* Corp., 580 F.3d at 1243.

Mr. Anderson submitted his declaration believing the statements were true by "declar[ing] that the facts set forth in this application and declaration are true; all statements made of his knowledge are true …." Ex. I, at 9. Because declarations submitted in connection with trademark registration are "phrased in terms of subjective belief," it is "extremely difficult to prove fraud so long as the signer has an honestly held, good faith belief" in the position. *Magna Int'l, Inc. v. Deco Plas, Inc.*, 2010 WL 2044873, at *10 (N.D. Ohio May 10, 2010); *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 472 (10th Cir.1988); 6 McCarthy, *supra*, § 31:77 ("If applicant has a good faith belief … then the oath cannot be fraudulent.").

The Counterclaim fails to set forth any facts to support the naked assertion that statements were "false, and upon information and belief made with an intent to deceive the USPTO." Counterclaims, ¶¶ 149, 152. In other words, Global pleads no facts that would undermine Mr. Anderson's good faith belief or show deceptive intent. Furthermore, the PTO had before it Ledge's '975 Patent and was in position to disagree with Mr. Anderson's statements. *Solo Cup Operating Corporation v. Lollicup USA, Inc.*, Case No. 16 C 8041, 2017 WL 3581182, *3 (N.D. Ill. Aug. 8, 2017) (granting motion to dismiss counterclaim for cancellation based on alleged fraud relating to functionality where PTO had before it alleged evidence of functionality).

### 3.   The Counterclaims Fail to Plausibly Allege Material Misrepresentations

Global's fraud-based counterclaims fail to allege facts to plausibly show that Ledge's registration would not have issued "but for" the alleged misrepresentations. "Material information" in the context of a fraud allegation is "information that a reasonable examiner would have considered important" when making her decision. *Gilbert/Robinson, Inc. v. Carrie Beverage-Mo., Inc.*, 989 F.2d 985, 992 (8th Cir. 1993) (applying the Federal Circuit's patent fraud "but for" materiality definition to the trademark context), abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 124-25 (2014). "As a general matter, a misrepresentation is material 'only if the registration would not have issued if the truth were known to the examiner." *Durnell's RV Sales, Inc. v. Jeff Couch's Campers, LLC*, Case No. 22-CV-242, 2023 WL 1070235, at *5 (S.D. Ohio Jan. 27, 2023); *see also Heckler & Koch, Inc. v. German Sport Guns GmbH,* 71 F.Supp.3d 866, 904 (S.D. Ind. 2014) (misrepresentation is material if "would have affected the PTO's action on the applications.") (citations omitted); *Gilbert/Robinson, Inc.*, 989 F.2d 985, 992 (8th Cir. 1993) ("but for" standard of materiality applies when the party claiming fraud seeks damages under 15 U.S.C. § 1120"). The materiality of a misrepresentation to the PTO, however, is a question of law for the Court. *Heckler*, 71 F.Supp.3d at 905 n. 35.

Global's counterclaims assert that Anderson's statements are "material," *see* Counterclaims, ¶¶ 44, 45, 150, 154, but simply labeling them as "material" is insufficient to show entitlement to relief. *Ass'n of Cleveland Fire Fighters,* 502 F.3d at 548. Nowhere does the Counterclaim cite facts explaining why any statement was material.

Indeed, the PTO records evidence why neither of Anderson's statements were material such that the registration would not have issued but for the alleged misrepresentations. Anderson's first alleged statement related to whether "the applied-for-mark has been the subject matter of a design or utility patent." Counterclaim, ¶ 99. The examining attorney considered the '975 Patent

prior to issuing Ledge's trade dress registration, which was submitted in a letter of protest and the examining attorney was required to consider it. Ex. 3. As to the second alleged statement, the examining attorney also considered the Ledge publications with statements relating to "comfort," "body support," "submergible," and "contours" which were also submitted in the letter of protest. Ex. 3, at 25, 30. The examining attorney reviewed this evidence and found the trade dress non-functional and issued the registration. Thus, the registration would have issued regardless of the alleged misrepresentations (which there were none).

### 4. Global Failed to Plead Consequential Damages from the Registration

For a §1120 claim, "it is not enough … merely to establish fraud in the registration"; Global "must also show that it sustained some damage in consequence of the fraud." *Jaguar*, 2017 WL 2472851, at *2 (citations omitted). The injury asserted "must be a proximate result of the false or fraudulent registration." *Id.*, citing *San Juan Prod.,* 849 F.2d at 473. "The injury and damages arising from the fraud must be 'clearly articulated.'" *Id.*, (quoting 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.85 (4th Ed.)).

Global's § 1120 counterclaim fails to state a plausible claim of damages resulting from Ledge's trademark registration. Global alleges that "Ledge is liable for all damages that Global has sustained from its use of the registered mark obtained by false or fraudulent declaration, including attorney fees incurred in defending against that invalid and fraudulently-obtained mark." Counterclaims, ¶ 160. This allegation is deficient for a number of reasons. First, attorney fees are not recognizable damages for a § 1120 claim. *Jaguar*, 2017 WL 2472851, at *2 n.2; *Durnell's,* 2023 WL 1070235, at *7 (citing *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 344 F.Supp.3d. 1147, 1161-62 (S.D. Cal. 2018) (collecting cases finding attorney fees not damages under § 1120)); *see also High Voltage Beverages, LLC v. The Coca–Cola Co.*, No. 08-CV-367, 2011 WL 831523, at *6 (W.D.N.C. Mar. 3, 2011) ("virtually every modern court has held

that, as a matter of law, attorneys' fees do not qualify as recoverable "damages" under 15 U.S.C. §1120)

Second, Global failed to "clearly articulate" its injuries. The counterclaim simply states "Ledge is liable for all damages that Global has sustained …" which is a bare legal conclusion which the court must reject under *Iqbal*. *See Durnell's*, 2023 WL 1070235, at \*7 (counterclaim alleging "damage[]" due to registration was a "bare legal conclusion" and disregarded).

Finally, Global alleged that the proximate cause of its injuries were ***not*** caused by the allegedly fraudulent registration. *See* Counterclaims, ¶¶ 81-82 ("Ledge's bad faith communications" alleged proximate cause of its injury); ¶¶ 101-102 (Ledge's submission of a takedown request to Amazon alleged proximate cause of its injury).

For at least these reasons, Global failed to plead a plausible claim for relief for its fraud based counterclaims.

### F.  Seventh Counterclaim – Attempted Monopolization

Section 2 of the Sherman Act prohibits the attempt to monopolize. 15 U.S.C. § 2. For an attempted monopolization claim, a plaintiff must show: "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc v. McQuillan*, 506 U.S. 447, 456 (1993). "In order to determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to lessen or destroy competition in that market." *Id.* The relevant product market includes products that have reasonable interchangeability with Ledge's lounge chair. *See American Council of Cert. Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 622 (6th Cir.1999). The relevant geographic market consists of where sellers operate and where purchasers can predictably turn for supplies. *Re/Max Int'l., Inc. v. Realty One, Inc.*, 173 F.3d

995, 1016 (6th Cir.1999) (citation omitted). Market strength that approaches monopoly power (the ability to control prices and exclude competition) is a necessary element for showing a dangerous probability of achieving monopoly power. *See Tarrant Serv. Agency, Inc. v. Am. Standard, Inc.*, 12 F.3d 609, 615 (6th Cir.1993); *Trarms, Inc. v. Leapers, Inc.*, Case No. 16-14229, 2017 WL 1908787, *9 (E.D. Mich. May 10, 2017).

First, Ledge's enforcement of its registered trade dress rights is not predatory or anticompetitive conduct; it is conduct immune from antitrust liability under the *Noerr-Pennington* doctrine. *Letica*, 790 F. Supp. at 706. As explained in Section III(A)(3), Ledge's trade dress enforcement actions cannot be found, as a matter of law, objectively baseless.

Second, Global's counterclaim fails to plead a plausible relevant market or Ledge's market share in that market. These failures are also fatal to the § 2 claims. *See Spectrum Sports*, 506 U.S. at 459 ("[D]emonstrating the dangerous probability of monopolization in an attempt case also requires inquiry into the relevant product and geographic market."). To begin with, Global failed to plead a consistent product market or geographic market. As to the product market, Global first alleges "the lounger chair market," ECF # 20, ¶ 85, and then later the "market for curved lounge chairs." *Id.* ¶ 166. Which is the relevant market? All lounge chairs, or just curved lounge chairs, are there any other reasonably interchangeable products? As to the geographic market, Global alleges "the Michigan market and elsewhere." *Id.* ¶ That allegation begs the question—is the geographic market Michigan alone? Or Michigan and another geographic area? Global's failure to define a plausible market dooms its counterclaim. *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 318 (6th Cir. 2015) (Sherman "§2 claims [] requires an initial identification of the relevant markets."); *Queen City Pizza, Inc. v. Domino's Pizza*, *Inc.*, 124 F.3d

430, 436-37 (6th Cir. 1997) (failure to define its proposed relevant market with reference to the rule of interchangeability and cross-elasticity of demand is legally insufficient).

But even more problematic is Global's failure to adequately plead facts that Ledge has a dangerous probability of achieving monopoly power *in any* relevant market. Global's sole allegation regarding Ledge's market strength is: "Ledge controls a substantial portion of the lounge chair market, including within the State of Michigan …" ECF# 20, ¶ 85. Global's conclusory allegation is not sufficient to establish Ledge's market share for purposes of showing potential monopoly power. *Techmatic Inc. v. Plating Specialsists, Inc.*, Case No. 3:20-cv-01078, 2022 WL 16542106, *17 (M.D. Tenn. Oct. 28, 2022) (collecting cases finding conclusory allegations of market share insufficient to state plausible attempted monopolization claim); *Trarms,* 2017 WL 1908787, *10 (granting motion to dismiss finding allegation that the party is "the market leader in rifle scopes" insufficient to plead a dangerous probability of achieving monopoly power).

For these reasons, Global's antitrust counterclaim should be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, the Court should find that Global's Counterclaims fail to set forth plausible claims and should dismiss them.

Dated: August 12, 2024

ATTORNEYS FOR PLAINTIFF, LEDGE LOUNGER, INC.

By: */s/ Matthew P. Becker*

John S. Artz   (P48578)
DICKINSON WRIGHT LLC
350 S. Main  Street, Ste. 300
Ann Arbor, MI 48104
Telephone: (248) 433-7262
jsartz@dickinsonwright.com

Scott A. Burow
Illinois Bar No. 6242616
sburow@bannerwitcoff.com
Matthew P. Becker
Illinois Bar No. 6255614
mbecker@bannerwitcoff.com
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000

<u>CERTIFICATE OF SERVICE</u>

I certify that on August 12, 2024, a true and accurate copy of PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM FOR RELIEF was filed with the court through its ECF filing system, thereby providing notice to all counsel of record.

*/s/ Matthew P. Becker*
Attorney for Plaintiff
