# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

LEDGE LOUNGER, INC.,

Plaintiff/Counterclaim Defendant,

v.

GLOBAL LIFT CORP. d/b/a
GLOBAL POOL PRODUCTS,

Defendant/Counterclaim Plaintiff.

Case No. 24-cv-11267

Hon. Thomas L. Ludington

Magistrate Judge Patricia T. Morris

---

BANNER & WITCOFF, LTD.
By: Scott A. Burow
      Matthew P. Becker
      Christian T. Wolfgram
71 S. Wacker Dr., Ste. 3600
Chicago, IL 60606
(312) 463-5000
sburow@bannerwitcoff.com
mbecker@bannerwitcoff.com
cwolfgram@bannerwitcoff.com


Attorneys for Plaintiff/
Counterclaim Defendant

KIENBAUM HARDY
VIVIANO PELTON & FORREST,
P.L.C.
By:  Thomas J. Davis (P78626)
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com

BEJIN BIENEMAN PLC
By:  Thomas E. Bejin (P56854)
2000 Town Center, Ste. 800
Southfield, MI 48075
(313) 528-4882
bejin@b2iplaw.com

Attorneys for Defendant/
Counterclaim Plaintiff

---

**Global Lift Corp.'s Brief in Opposition to Ledge Lounger's Motion to Dismiss Global's Counterclaims and Request for Fees Under 28 U.S.C. § 1927**

# Table of Contents

Table of Authorities ................................................................................ ii

Introduction ........................................................................................... 1

Background ............................................................................................. 2

Argument................................................................................................ 5

I.      Ledge's challenge to the invalidity counterclaims
        (Counterclaims III, IV, and V) are moot, and Global exceeds
        the low bar for stating a claim. ..................................................... 6

        A.      Not only has Global plausibly alleged that Ledge's trade
                dress is generic (Count III), but Ledge's response also
                effectively confirms that a wave-shaped lounge chair is a
                generic product design. ...................................................... 6

        B.      Global plausibly alleges that Ledge's purported trade
                dress is functional (Count IV) and thus not protectible. .....10

        C.      Global plausibly alleges invalidity based on fraud (Count
                V)......................................................................................12

II.     Global's damages counterclaims (Counts I, II, VI, and VII) all
        state plausible claims for relief. ....................................................15

        A.      Global states a claim for tortious interference (Count I). ..................15

        B.      Global adequately pleads an abuse of process claim
                (Count II)..........................................................................18

        C.      Global adequately pleads a false or fraudulent
                registration claim under 15 U.S.C. § 1120 (Count VI) ......................20

        D.      Global adequately pleads attempted monopolization
                (Count VII). ......................................................................22

III.    Ledge's effort to dismiss Global's invalidity counterclaims is a
        vexatious litigation tactic that warrants sanctions. ........................24

Conclusion ............................................................................................25

# Table of Authorities

## Cases

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
  280 F.3d 619 (6th Cir. 2002) ..............................................................................7, 9

*Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*,
  205 F.3d 137 (4th Cir. 2000) ...................................................................................7

*Antioch Co. v. W. Trimming Corp.*,
  347 F.3d 150 (6th Cir. 2003) ..............................................................................9, 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................5

*Bath & Body Works, Inc. v. Luzier Personalized Cosms., Inc.*,
  76 F.3d 743 (6th Cir. 1996) .....................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................5

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
  326 F.3d 1226 (Fed. Cir. 2003) .............................................................................15

*Cedroni Ass'n, Inc. v. Tomblinson*,
  492 Mich. 40 (2012) ...............................................................................................15

*Dassault Systemes, SA v. Childress*,
  828 F. App'x 229 (6th Cir. 2020) ..........................................................................19

*DayCab Co. v. Prairie Tech., LLC*,
  67 F.4th 837 (6th Cir. 2023) ..................................................................................12

*DeMert & Dougherty, Inc. v. Chesebrough-Pond's, Inc.*,
  348 F. Supp. 1194 (N.D. Ill. 1972)........................................................................20

*Estep v. Combs*,
  366 F. Supp. 3d 863 (E.D. Ky. 2018)............................................................. 12, 22

*Heritage Guitar, Inc. v. Gibson Brands, Inc.*,
  2022 WL 1954361 (W.D. Mich. June 6, 2022)......................................................16

*In re Bose Corp.*,
    580 F.3d 1240 (Fed. Cir. 2009) ............................................................................12

*In Re Larian, LLC*, No. 87522459,
    2022 WL 374410 (T.T.A.B, Jan. 19, 2022) .........................................................7

*Ind. State Dist. Council of Labs. v. Omnicare, Inc.*,
    583 F.3d 935 (6th Cir. 2009) ...............................................................................6

*Inline Packaging, LLC v. Graphic Packaging Int'l*,
    164 F. Supp. 3d 1117 (D. Minn. 2016) ..............................................................17

*In-N-Out Burgers v. Doll n' Burgers LLC*, No. 20-11911,
    2022 WL 791924 (E.D. Mich. Mar. 14, 2022)...................................................25

*Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co.*,
    240 F. Supp. 3d 299 (D.N.J. 2017).....................................................................17

*Int'l Leisure Prod., Inc. v. FUNBOY LLC*,
    747 F. App'x 23 (2d Cir. 2018)............................................................................7

*Kaszuba v. Iancu*,
    823 F. App'x 973 (Fed. Cir. 2020).....................................................................12

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir.2007) .................................................................................5

*Leapers, Inc. v. SMTS, LLC*,
    879 F.3d 731 (6th Cir. 2018) ..............................................................................10

*New World Sols., Inc. v. NameMedia Inc.*,
    150 F. Supp. 3d 287 (S.D.N.Y. 2015)................................................................21

*Picante, Inc. v. Jimenez Food Prod., Inc.*,
    1982 WL 1891(W.D. Tex. Aug. 15, 1982) ........................................................23

*Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*,
    573 F. App'x 547 (6th Cir. 2014).........................................................................7

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) .............................................................................................16

*Procter & Gamble Co. v. CAO Grp., Inc.*,
  2013 WL 5353281 (S.D. Ohio Sept. 24, 2013)....................................................24

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*,
  465 F.3d 642 (6th Cir. 2006)....................................................24

*Regeneron Pharms., Inc. v. Novartis Pharma AG*,
  96 F.4th 327 (2d Cir. 2024)............................................ 12, 24

*Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*,
  339 F. Supp. 973 (M.D. Tenn. 1971) ....................................................14

*Smith v. Gen. Motors LLC*,
  988 F.3d 873 (6th Cir. 2021)....................................................6

*Solo Cup Operating Corp. v. Lollicup USA, Inc.*,
  2017 WL 3581182 (N.D. Ill. Aug. 18, 2017)....................................................14

*Specialized Seating, Inc. v. Greenwich Indus.*,
  616 F.3d 722 (7th Cir. 2010)....................................................10

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ....................................................22

*Steuben Foods, Inc. v. Nestle USA, Inc.*,
  2015 WL 13545911 (W.D.N.Y. July 24, 2015)....................................................6

*Three Lakes Ass'n v. Whiting*,
  255 N.W.2d 686 (Mich. App. 1977) ....................................................19

*Timken Roller Bearing Co. v. United States*,
  341 U.S. 593 (1951) ....................................................23

*Tokidoki, LLC v. Fortune Dynamic, Inc.*,
  2009 WL 2366439 (C.D. Cal. July 28, 2009) ....................................................21

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23 (2001) ............................................ 10, 11

*TransWeb, LLC v. 3M Innovative Properties Co.*,
  812 F.3d 1295 (Fed. Cir. 2016)....................................................17

*Truck-Lite Co., LLC v. Grote Indus.,*
   2021 WL 8322467 (W.D.N.Y. Sept. 17, 2021) ....................................................23

*TRW Fin. Sys. v. Unisys Corp.,*
   835 F. Supp. 994 (E.D. Mich. 1993) ....................................................................17

*Ultraclear Epoxy, LLC v. Epodex USA Corp.,*
   2024 WL 966876 (M.D. Tenn., Mar. 6, 2024)............................................. 17, 18

*Wal-Mart Stores, Inc. v. Samara Bros.,*
   529 U.S. 205 (2000) ..............................................................................................1

**Statutes**

15 U.S.C. § 1064 ..............................................................................................................2

**Rules**

Fed. R. Civ. P. 9(b) ..........................................................................................................6

**Other Sources**

5 Callmann on Unfair Comp. § 26:69 (4th ed.)......................................................15

## Introduction

"Trade dress" is species of trademark that reflects not a wordmark or logo, but rather the design of a product that has itself acquired "secondary meaning" sufficient to identify the product's manufacturer—a classic example being the distinctive shape of a Coca-Cola bottle. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213 (2000). But generic, well-known designs, or designs that serve a functional purpose, cannot be trade dress as a matter of law. Trademark law does not allow one market competitor to claim ownership of basic or useful designs.

But that is what occurred here. In 2022, Plaintiff Ledge Lounger managed to obtain trade dress registration in a ubiquitous, decades-old, and functional design: the curved "wave" shape of a chaise lounge chair. The USPTO initially refused Ledge's registration on functionality grounds, but reversed course after its CEO submitted an affidavit claiming (1) that no feature of the mark was part of a patent application and (2) that the design at issue was developed separately from the functionality of the chair. Both statements were false; Ledge's earlier patent application identified the wave shape as "well-known in the art," and Ledge and its CEO had repeatedly asserted that the wave shape was designed for functionality.

The affidavit worked, and the USPTO granted Ledge's application in an uncontested proceeding. Since then, Ledge has used its fraudulently obtained trade dress registration as a cudgel against its competitors, while doing everything it can

to avoid judicial or administrative review of the validity of its registration during the five-year window that such challenges may be raised. *See* 15 U.S.C. § 1064. Its motion to dismiss is part of that scheme. While Global has adequately stated all its claims for relief, Ledge's motion to dismiss the invalidity counterclaims is effectively pointless as it did *not* challenge Global's affirmative defenses raising identical invalidity issues, and because Ledge must establish validity as an element of its own claims anyway. Ledge's motion should be denied, and Global awarded fees for Ledge's vexatious multiplication of proceedings under 28 U.S.C. § 1927.

## Background

Counterclaim Plaintiff Global Lift Corp. is a Michigan corporation with its principal place of business in Bad Axe, Michigan. *Id.* Global sells pool products, and recently designed a (non-infringing) lounge chair for use in in-ground swimming pools. *See* PageID.599, ¶ 3. The Global Lounger has a curved shape designed to hold the human body in a reclined position, a ubiquitous feature of lounger chairs, including pool chairs, for decades. PageID.603-607. Such a design is also highly functional for use as a pool chair because it allows the human body to be partially submerged in water and partially out of the water. PageID.610-613, 632.

Although wave-shaped lounge chairs, including pool chairs—are ubiquitous and in the public domain, Ledge has misused the trademark system to prevent legitimate competition. PageID.607-08. It has been selling its Signature Chaise since

2011 but has not secured a design patent for this well-known design. PageID.608. Indeed, when obtaining a utility patent on a threaded plug used in the Signature Chaise, Ledge admitted to the USPTO that the wave shape of its chair was "well-known in the art" and a functional feature. PageID.610, ¶¶ 35, 38. Thus, when Ledge tried to obtain trade dress registration for the wave-shaped curve of its chair in 2019, the USPTO refused registration on functionality grounds. PageID.609.

Undeterred, Ledge's CEO Chris Anderson (the Signature Chaise's inventor) submitted an affidavit to the USPTO to overcome the functionality refusal. PageID.609-610. In the affidavit, Anderson swore that "Neither the applied-for mark, nor any features thereof, is or has been the subject of a design or utility patent or patent application." PageID.609. He also swore that the "design at issue was developed separate from the function of lounge and outdoor furniture." PageID.610. Both statements were knowingly false; Anderson was a listed inventor on the patent that referenced the wave shape and its well-known, functional design. *Id.* The affidavit also contradicted Ledge's own advertising material regarding functionality, and Anderson's own public interviews in which he repeatedly stated that he designed the chair with functionality in mind. PageID.610-614. In reliance on Anderson's false affidavit, the USPTO issued registration for the "trade dress." PageID.614.

Since fraudulently obtaining its trade dress registration, Ledge has used it to sue or threaten suit against several competitors selling curved pool loungers.

PageID.617-618. One of its targets has been Global. In August 2023, Ledge's counsel sent a threat letter to Global's owner claiming that the Global Lounger violated Ledge's trade dress. PageID.615-616. Global denied infringement and told Ledge that its trademark was invalid. *Id.* With its threat unsuccessful, Ledge decided to directly target Global's business relationships. In October 2023, Ledge's counsel falsely told a shared customer that Global's product violated Ledge's *patent* rights—even though Global does not use the feature that Ledge holds a patent on—along with its purported trade dress rights. PageID.618-620. The customer responded to Ledge's threat by cancelling its orders of Global's lounger. PageID.620-621.

Given Ledge's misuse of its fraudulently-obtained trade dress registration, Global filed a cancellation action with the USPTO. PageID.622. Days later, Ledge sued Global seeking damages for alleged trade dress infringement in the Southern District of Texas, and then sought to suspend the USPTO cancellation proceedings based on that pending lawsuit. *Id.* Ledge then proposed that it would dismiss its lawsuit and seek no damages for the purported infringement if Global ended its challenge to Ledge's trade dress validity. PageID.623. Global did not accept, PageID.623-624, so Ledge decided to resume interfering with Global's business relationships, PageID.626. It issued a takedown demand to Amazon.com targeting a seller of Global's product—which Amazon took down based solely on Ledge's claim of a valid trademark, without independent investigation. PageID.624-625. But

Ledge failed to tell Amazon the entire story: that there was a trademark cancellation action pending before the USPTO and a lawsuit raising the same issues. *Id.* Because of this conduct, this seller ended its business relationship with Global. *Id.*

Upon transfer to this forum, Global filed affirmative defenses addressing the invalidity of Ledge's trade dress. PageID.598. It also counterclaimed, both on invalidity grounds and for damages. Ledge then moved to dismiss all counterclaims, but did *not* seek to strike any of Global's affirmative defenses.

## Argument

Federal Rule of Civil Procedure 8(a) requires only the pleading of a "short and plain statement" that the party "is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claims must be "plausible on [their] face," meaning the party has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged "need not be detailed." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). And a court "must… construe the complaint in a light most favorable to [the non-moving party] and accept all [its] factual allegations as true." *Id.*

Per Rule 9(b), fraud claims must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ind.*

*State Dist. Council of Labs. v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009). However, [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Otherwise, the same plausibility standard applies. *Smith v. Gen. Motors LLC*, 988 F.3d 873, 883 (6th Cir. 2021).

## I.     Ledge's challenge to the invalidity counterclaims (Counterclaims III, IV, and V) are moot, and Global exceeds the low bar for stating a claim.

The Court should deny Ledge's motion to dismiss the invalidity counterclaims because it is pointless. It will be ineffective in eliminating validity issues from this case. That is so for a simple reason: Global *also* asserted each of its invalidity claims as affirmative defenses (*see* PageID.598), but Ledge did not move to strike those defenses. As Global "has also asserted affirmative defenses of invalidity, the pleading of which [Ledge] does not challenge," the "question of invalidity will be at issue in any event" and the Court "need not decide… whether a counterclaim for invalidity has been properly alleged." *Steuben Foods, Inc. v. Nestle USA, Inc.*, 2015 WL 13545911, at *2 (W.D.N.Y. July 24, 2015) (addressing the same circumstances). But even if the Court entertained Ledge's motion, its arguments are meritless.

### A.     Not only has Global plausibly alleged that Ledge's trade dress is generic (Count III), but Ledge's response also effectively confirms that a wave-shaped lounge chair is a generic product design.

Global's first invalidity counterclaim—Count III—rests on the generic nature of Ledge's "Signature Chaise" lounger. PageID.630-631. As the Sixth Circuit has held, "generic product configurations are not protectable as trade dress" under the

Lanham Act. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002). A generic product configuration is one regarded as a "basic form of a particular item." *Id.* Thus, a "relatively broad and vague characterization of one's trade dress might render such dress generic or otherwise ineligible for protection." *Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, 573 F. App'x 547, 553 (6th Cir. 2014). Thus, a party that manufactures a swan-shaped pool float may not define its trade dress in a way that covers "any bird-shaped pool float with even a passing resemblance" to its product; the broad category of an animal-shaped pool toy is generic. *Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018). A restaurant likewise cannot claim as trade dress a rectangular bar decorated with wood and brass, surrounded by televisions; that is a "common basic shape or design." *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 142 (4th Cir. 2000). Even an unusual design—like a bamboo handbag—may be generic if there is evidence that "consumers have seen identical or nearly identical handbags emanating from parties other than Applicant" for decades before. *In Re Larian, LLC*, No. 87522459, 2022 WL 374410, at *7 (T.T.A.B, Jan. 19, 2022).

Here, Global has alleged—with photographic evidence—that wave-shaped chaise lounge chairs are a commonplace design going back decades:

-7-





**1951 GMG Chaise Lounge**          **2003 SENSE Lounge Chair**

PageID.603-607 (illustrating further examples). The design has even been used for

chaise lounges intended for use in pools well before Ledge's 2022 registration:



**2008 Floatland Wave Chaise**

*Id.* Ledge's registration defines its trade dress in a way that is indistinguishable from

this well-known design: "a three-dimensional configuration of a chair curved like a

wave where the back of the chair slopes down and the lower half of the chair curves

up and down towards the right." PageID.607. This definition covers *every chair*

illustrated in Global's counterclaims, reflecting Ledge's attempt to monopolize

ownership of this well-known, generic shape of a chaise lounge, whether for pool

use or not. PageID.607-608. Global states a claim for "genericness" invalidity.

Ledge's motion to dismiss still not only lacks merit, it effectively confirms

that Global is entitled to judgment on its invalidity claim. Ledge argues Global

cannot prevail because it has not proven that the "public associates lounge chairs

*only* with a wave or curved form, as opposed to other designs which lack curves," citing *Abercrombie*. PageID.904 (emphasis in original). It then claims that there are "infinite" varieties of non-wave-shaped lounge chairs, citing its CEO's affidavit[1] referencing mostly photos of "chaise lounges" with a flat extension for the user's legs. PageID.905; Resp. Ex. A (illustrative excerpts). Even taking Ledge's argument at face value, Ledge is merely asserting a dispute of fact as to the public's perception of what a "chaise lounge" is, which implicates the ordinary rule that genericness is a question of fact not suitable to a Rule 12(b)(6) motion. *See Bath & Body Works, Inc. v. Luzier Personalized Cosms., Inc.*, 76 F.3d 743, 748 (6th Cir. 1996).

But Ledge's argument misstates the law, and in so doing gives away its game. It argues that nothing can be generic unless there is only a single conceivable product design. But *Abercrombie* says no such thing, which is inconsistent with the case law cited above. *See Antioch Co. v. W. Trimming Corp.*, 347 F.3d 150, 159 (6th Cir. 2003) (rejecting argument that a party can avoid trade dress invalidity by pointing to the possibility of an alternative configuration). Nor does Ledge's interpretation of *Abercrombie* make any sense. *Abercrombie* notes that a "shirt" is a generic design, but it does not follow that there can be only one generic configuration of a shirt. Ledge does not deny that wave-shaped chaise lounges are a well-known design; it

---

[1] Ledge, notably, omitted the Anderson exhibits its brief cites—likely because they do not show "infinite" base configurations, but only two (straight-legged or curved).

merely argues that another well-known design exists too. But Ledge cannot monopolize the market for wave-shaped loungers because straight-legged loungers exist any more than Abercrombie could assert trade dress rights in all button-down shirts because polo shirts exist. Ledge cannot assert trade dress rights in the entire, well-known category of wave-shaped curved lounge chairs.

### B.   Global plausibly alleges that Ledge's purported trade dress is functional (Count IV) and thus not protectible.

"[T]rade dress protection may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). A product feature that "augment[s] the usefulness of the" product or affects the cost or quality of the article renders it functional. *Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 736 (6th Cir. 2018). There is some overlap with the concept of genericness, as "[s]ometimes the function of the functionality doctrine is to prevent firms from appropriating basic forms… that go into many designs." *Specialized Seating, Inc. v. Greenwich Indus.,* 616 F.3d 722, 727 (7th Cir. 2010). If a design feature if functional, that is the end of the inquiry; "even if there are alternative designs available in the marketplace, they cannot turn a feature that is functional under the traditional definition into a non-functional feature which is the exclusive trade dress property of one seller." *Antioch*, 347 F.3d at 155 (cleaned up).

Global has plausibly pled that Ledge's trade dress is functional. The wave form lets a person be partially submerged in and partially out of the water:



PageID.566; PageID.610. Global alleges the USPTO at first found Ledge's trade dress functional for this very reason. PageID.609. Global also cites Ledge's advertisements and public statements touting the functionality of the wave-form design, including body support, stackability, and the ability to have the user be partially in and partially out of the water while using it. PageID.611-614. Global plausibly alleges that the wave-form design "augments the usefulness" of the product and, as discussed, that Ledge is appropriating a basic design form.

Ledge's motion to dismiss ignores these facts, incorrectly claiming that Global's argument hinges on the fact that Ledge's chair "supports a person." PageID.906-907. And it misstates the law, claiming that functionality requires Global to show that Ledge's trade dress "would put [it] at a significant non-reputation-related disadvantage." PageID.906 (citing *TrafFix Devices*, 532 U.S. at 32). In fact, *TrafFix* explicitly rejected such a requirement, and adopted the "usefulness" test discussed above. *Id.* at 32-33. Given Ledge has failed to even address the facts as pled—let alone under the proper standard—the Court should

reject the motion to dismiss. *See Estep v. Combs*, 366 F. Supp. 3d 863, 881–82 (E.D. Ky. 2018) (denying motion to dismiss where moving party made "little (or no)" effort to specifically address facts alleged). In any event, functionality is a fact issue. *See DayCab Co. v. Prairie Tech., LLC,* 67 F.4th 837, 848 (6th Cir. 2023). Ledge's arguments for non-functionality are inappropriate for a 12(b)(6) motion.

### C.   Global plausibly alleges invalidity based on fraud (Count V).

A party's trademark can also be cancelled based on fraud "when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (cleaned up). At the pleading stage, a party need not "prove its allegations of fraud and intent to deceive on the merits," but only whether it "has pled its fraud claim with particularity." *Kaszuba v. Iancu*, 823 F. App'x 973, 980 (Fed. Cir. 2020).

In the fraud-on-the-USPTO context, allegations that (1) specifically identify the fraudulent statements; but (2) allege "on information and belief" that the statements were made with intent to deceive and material to the USPTO are sufficient to state a claim. *Id.* (so holding in case of trademark fraud); *cf. also, e.g.*, *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 342–43 (2d Cir. 2024) (party adequately pled fraud by alleging specified material art withheld from the USPTO with "intent to deceive" and that patent "would not have been granted had the patent examiner been aware of this undisclosed material art.")

Under this standard, Global has stated a fraud claim. Ledge does not dispute that Global identified the Rule 9(b) "particularity" elements of who, what, when, where, and how of the fraud; *i.e.*, Anderson submitted a June 10, 2020 declaration to the USPTO falsely stating (1) no features of the trade dress were "the subject of a design or utility patent or patent application," when the wave form had been disclosed and discussed in a 2018 utility patent application; and (2) that the trade dress "design at issue was developed separate from the function of lounge and outdoor furniture." PageID.609-614. And Global alleges why these statements were false and material: Anderson was an inventor on the patent and had made many prior public statements at odds with his sworn statements, and the USPTO reversed its functionality decision after receiving the false affidavit. PageID.609-614.

Ledge offers a hodgepodge of reasons why Global has not stated a claim, but none are meritorious. It first makes a bare claim that "functionality is not a proper basis for a claim of fraud on the PTO," citing *Northwestern v. Gabriel*, a 28-year-old unpublished decision from N.D. Illinois. *See* PageID.908. But *Northwestern* merely held that "functionality" itself is not a fact that can be withheld from the USPTO, but a party may still "commit fraud on the PTO with respect to the functionality of a mark" if it "withhold[s] from the examiner information or facts that are material to the determination of whether the mark is functional" or "present[s] false or misleading information that is material to the functionality

determination." *Solo Cup Operating Corp. v. Lollicup USA, Inc.*, 2017 WL 3581182, at *2-3 (N.D. Ill. Aug. 18, 2017) (citing cases). The same distinction exists in this circuit. *See Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*, 339 F. Supp. 973, 984 (M.D. Tenn. 1971) (requiring "intentionally misleading statements" regarding functionality to satisfy a fraud on the PTO claim), *aff'd,* 470 F.2d 975 (6th Cir. 1972). That is what Ledge did here: make knowing false statements on functionality material to the USPTO's refusal of registration on functionality grounds.

Ledge's next arguments either ignoring the actual pleadings or offer Ledge's spin on the facts, both inappropriate at the 12(b)(6) stage:

- Ledge self-servingly parses the accuracy of Anderson's statement regarding preexisting patents, while omitting his explicit reference in his earlier patent to the functional element of the wave-form design. (PageID.909-910). This is a factual dispute, not a 12(b)(6) issue.

- Ledge claims Global has not alleged facts showing that his statement about the wave-form design being "developed separate from [its] function" is false. (PageID.910). That is wrong; Global explained the falsity of that statement in detail. *Supra* at 3.

- Ledge argues that Anderson's statements were not knowingly false or deceptive because he stated in his affidavit that he was telling the truth. (PageID.910-911). To be blunt: so what? Global has pled facts showing that Anderson lied despite his oath. Again, this is a factual dispute.

Finally, Ledge claims that Anderson's misrepresentations were not material, asserting that materiality is a question of law. PageID.912-13. Ledge is wrong; in the context of fraud on the USPTO, "materiality and intent to mislead are questions of fact…." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226,

1234 (Fed. Cir. 2003); *accord* 5 Callmann on Unfair Comp. § 26:69 (4th ed.) ("The test of materiality is whether the U.S.P.T.O. would have granted the same rights without the misrepresentation. Materiality is a question of fact.") Global plausibly alleges materiality: the USPTO *refused* registration on functionality grounds, and reversed course only after Anderson falsely said he did not design the lounger with functionality in mind.[2] *Supra* at 3. If Anderson had told the USPTO the truth—that he did indeed design the chair for functionality—that would have only reinforced the USPTO's functionality refusal. His misrepresentation was material.

## II. Global's damages counterclaims (Counts I, II, VI, and VII) all state plausible claims for relief.

### A. Global states a claim for tortious interference (Count I).

The elements of tortious interference are: (1) "a valid business relationship," (2) "knowledge of the relationship" by the defendant; (3) "an intentional interference by the defendant inducing or causing a breach or termination of the relationship," and (4) damages. *Cedroni Ass'n, Inc. v. Tomblinson*, 492 Mich. 40, 45 (2012). Ledge does not dispute Global pled basic facts meeting these elements, and its arguments for dismissal—primarily that it is immune from liability for asserting trademark rights under the *Noerr-Pennington* doctrine—are meritless.

---

[2]Ledge also cites extra-record materials to argue that the examiner was aware of the utility patent but issued the registration anyway. PageID.912-913. Notably, it does *not* claim that the examiner was aware of Anderson's repeated statements that he designed the Lounger for functionality. Again, at best, Ledge raises a factual dispute.

*First*, there is a "sham" exception to *Noerr-Pennington* for objectively baseless litigation and prelitigation threats. *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993); *Heritage Guitar, Inc. v. Gibson Brands, Inc.*, 2022 WL 1954361, at *5 (W.D. Mich. June 6, 2022). The exception applies if (1) litigation is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and (2) the threat reflects "an attempt to interfere *directly* with the business relationships of a competitor." *Columbia Pictures*, 508 U.S. at 60-61 (emphasis in original).

But Global has alleged precisely that: Ledge is asserting objectively unreasonable trade dress claims to interfere with its competitors' business relationships, causing Global to lose business. PageID.616-622, 624-625 ¶¶ 59-61, 62-66, 68-69, 72-84, 97-103. Global also alleges that Ledge's infringement claims are conclusory and invalid; that Global filed a 12(b)(6) motion in Texas that was mooted given the transfer; and that Global plans to re-file its own motion to dismiss once the pleadings close. PageID.623-626 ¶¶ 90-92, 104-105. Global states a claim.

Despite the procedural posture, Ledge demands the Court rule on the merits *now*. But its demand is premature until the Court hears Global's forthcoming Rule 12(c) motion; if Ledge cannot state a claim for relief, the *Noerr-Pennington* sham exception would be satisfied. *See Heritage Guitar,* 2022 WL 1954361, at *5 (noting earlier refusal to address *Noerr-Pennington* before all relevant, germane legal

arguments were before the court); *Inserra Supermarkets, Inc. v. Stop & Shop Supermarket Co.*, 240 F. Supp. 3d 299, 308 (D.N.J. 2017) ("unsuccessful" civil actions supported sham exception). And if anything, Ledge's concessions on genericness, *supra* at 7-10, confirm Global has plausibly alleged Ledge's lack of an objectively meritorious claim. *Ultraclear Epoxy, LLC v. Epodex USA Corp.*, 2024 WL 966876, at *11 (M.D. Tenn., Mar. 6, 2024) (applying sham exception when trademark was alleged to be a "a widely used descriptive term" in "the industry.")

**Second**, Global also alleges that Ledge obtained its trade dress via fraud and is using it for anticompetitive purposes, *infra* at Part II.D. That itself gives rise to a second, distinct exception to *Noerr-Pennington*. *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1311 (Fed. Cir. 2016) (holding "sham" litigation and USPTO fraud are "distinct avenues by which a party can lose *Noerr–Pennington* immunity."); *TRW Fin. Sys. v. Unisys Corp.*, 835 F. Supp. 994, 1014 (E.D. Mich. 1993) (same). The fraudulently-obtained trade dress registration was used against both the shared customer and the Amazon seller; there is thus no "immunity" here.

**Third,** as to the shared customer, Global alleges that Ledge claimed Global's product violated Ledge's *patent* rights as well as its trademark rights. *See* PageID.618-619 ¶¶ 70-72. And "threatened enforcement of patents that were… inapplicable" would "be clearly baseless and an abuse of process." *Inline Packaging, LLC v. Graphic Packaging Int'l,* 164 F. Supp. 3d 1117, 1134 (D. Minn. 2016)

-17-

(finding *Noerr-Pennington* sham exception met based on such a pleading). Ledge does not deny that such a baseless threat would state a claim; instead, it just ignores that Global specifically pled that such a threat occurred. *See* PageID.900.

**Fourth**, as to the Amazon seller, several courts have held that "takedown notices fall outside the scope of *Noerr-Pennington* protection, at least for the purposes of intentional interference… claims on behalf of the alleged primary infringer." *Ultraclear Epoxy,* 2024 WL 966876, at *10-11 (citing cases). Unlike prelitigation threats, "the notice-and-takedown process… is specifically designed to be simple and quick, which makes it both particularly susceptible to abuse and plainly distinguishable from the demanding process of preparation for litigation." *Id.* Thus, in *Ultraclear*, the Court denied a motion to dismiss a tortious interference counterclaim premised on an Amazon takedown notice just like the one alleged to have occurred here. *Id.* at *2, *11. For this reason, too, dismissal is unwarranted.[3]

## B. Global adequately pleads an abuse of process claim (Count II).

Under Michigan law, a cause of action for abuse of process requires the plaintiff to show that the defendant "used a proper legal procedure for a purpose collateral to its intended use, and there must be some corroborating act that

---

[3]Ledge also seeks dismissal because Amazon did an "independent" investigation, citing a summary judgment case (*NOCO*) and a preliminary injunction case (*MercAsia*). PageID.900-901. Ledge ignores that this case is at the pleading stage, and Global pled that Amazon did *not* do an independent investigation but rather took down the product based on Ledge's say-so. PageID.624-625, ¶¶ 98-101.

demonstrates the ulterior purpose." *Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 236 (6th Cir. 2020). *Dassault*, in turn, relied on the seminal Michigan case defining this tort: *Three Lakes Ass'n v. Whiting*, 255 N.W.2d 686 (Mich. App. 1977). In *Whiting*, the plaintiffs—property owners near a proposed condominium—had filed a lawsuit to enjoin the project, citing pollution concerns. *Id.* at 688. The developer then filed a suit against the plaintiffs for $2.5 million in damages, but stated it would dismiss the lawsuit without seeking damages if the plaintiffs agreed not to oppose the condominium project. *Id.* at 689.

These allegations stated an abuse of process claim. *Id.* at 690. Although the developer had a right to sue for interference, once it filed that lawsuit, it used the lawsuit "as a club" to coerce plaintiffs to drop a separate lawsuit opposing the developer's project—an irregular use of process. *Id.* at 690-691. And the developer's assertion that it would forego damages entirely in exchange for the property owners dropping the separate suit met the "corroborating act" element of the tort. *Id.*

The allegations here are indistinguishable from those in *Three Lakes*. Global filed an administrative action before the USPTO seeking to challenge the validity of Ledge's trade dress registration. PageID.622. Ledge then hastily sued in an improper forum—far from Global's principal place of business—alleging infringement of a registered trademark as well as numerous common-law torts unrelated to the registered trade dress. *Id.* Ledge seeks damages for these alleged torts that it claims

caused it harm. PageID.578-579. Yet after filing that lawsuit, it offered to dismiss those significant damages claims—including claims that do not rise or fall based on the existence of a registered trademark—for no damages, in exchange for Global's withdrawal of the administrative challenge.[4] PageID.623 ¶ 94. This is a pattern of Ledge's, suing competitors to induce them to drop USPTO challenges—a tactic that may allow its invalid trade dress registration to become incontestable. PageID.617, 626 ¶ 107. Ledge filed this lawsuit not because it suffered damages, but to coerce Global into dropping a pending cancellation action. That is an abuse of process.

**C.  Global adequately pleads a false or fraudulent registration claim under 15 U.S.C. § 1120 (Count VI)**

Section 38 of the Lanham Act, 15 U.S.C. § 1120, states that:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

This statute allows recovery of "damages that result from the *use* of the mark while falsely registered." *DeMert & Dougherty, Inc. v. Chesebrough-Pond's, Inc.*, 348 F. Supp. 1194, 1198 (N.D. Ill. 1972) (emphasis in original); 5 Callmann on Unfair Comp. § 26:70 (4th ed.) (same; citing cases). This includes funds a party must

---

[4]Despite what Ledge says, PageID.902-903, Global does not have to prevail on invalidity (or even raise invalidity) to defend itself; it could simply have argued that, even assuming valid trade dress exists, Global does not infringe it.

"expend… to defend itself against [a] claim for trademark infringement." *Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 WL 2366439, at *12 (C.D. Cal. July 28, 2009), *aff'd*, 473 F. App'x 522 (9th Cir. 2011). When a "false registration was fraudulent obtained solely for the purpose of instituting completely vexatious litigation," § 1120 permits recovery of fees. *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 334 (S.D.N.Y. 2015) (citing cases).

Under this authority, Global has pled a claim for relief under § 1120. The basis for the fraud on the USPTO claim is discussed *supra* at 12-15. Global plausibly alleged that it suffered damages because of Ledge's use of the fraudulently-obtained registration, which it used to compel the shared customer to cancel its orders and to compel Amazon to take down Global's products—including economic harm and fees. PageID.619-620, 624-625. And Global has alleged facts supporting the theory that Ledge obtained its trade dress registration *expressly to help institute* vexatious litigation against its competitors. As Global explained, Ledge Lounger knew that wave-shaped chaise lounge chairs were well-known in the art and designed its chair with functionality in mind, but nonetheless obtained a fraudulent registration and immediately began using it to sue market competitors. PageID.609-610, 617-618.

Ledge offers no unique arguments related to § 1120, combining it with their opposition to Global's invalidity counterclaim based on fraud, except on the damages issue. But on damages, Ledge merely ignores Global's allegations

regarding economic damages, *see* PageID.914, which is enough to deny the motion to dismiss this claim. *See Estep*, *supra*, 366 F. Supp. 3d at 881–82. It also claims that attorney's fees are not available, PageID.913, citing some authority in out-of-circuit cases. But there is contrary authority, particularly in the special case of vexatious litigation. *See supra*. Given that Global has stated a § 1120 claim by identifying other, economic damages, the Court can defer the fees question until pre-trial.

### D. Global adequately pleads attempted monopolization (Count VII).

Finally, Ledge seeks dismissal of Global's attempted monopolization claim. It correctly identifies the elements of such a claim: (1) predatory or anticompetitive conduct; (2) specific intent to monopolize; and (3) dangerous probability of achieving monopoly power. *See* PageID.914 (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993)). But as with most of its arguments, Ledge disregards Global's actual allegations and the inferences therefrom.

Ledge's motion fails to even mention, let alone address, the theory on which Global's claim explicitly rests: the *Walker Process* doctrine. *See* PageID.635-636 ¶¶ 163-164. Under *Walker Process*, a party's attempt to use fraudulently-obtained patent or trade dress rights[5] *is* the method of attempting to obtain a monopoly—by

---

[5] Ledge does not argue *Walker Process* is inapplicable to trademark cases, with good reason. As with a patent, a "trademark cannot be legally used as a device for Sherman Act violation." *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 599 (1951). So courts have held that *Walker Process* applies in trademark and patent cases—particularly for trade dress "covering the product itself rather than a classic

using the USPTO registration to effectively prevent competitors from using the covered design—and the relevant geographic market is the entire nation, which aligns with the "territorial scope of" the intellectual property rights at issue. *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 342–43 (2d Cir. 2024); *accord Transweb LLC v. 3M*, 812 F.3d 1295, 1308 (Fed. Cir. 2016) (affirming *Walker Process* finding where relevant market was the United States).

Here, Global has alleged that Ledge fraudulently obtained trade dress registration covering the well-known, ubiquitous wave-shaped design of a chaise lounge chair, and has systematically used that trade dress registration as a weapon against market competitors—including Global—that use this well-known, long-standing design, and one with a specific functional use in the pool lounger context. *See supra* at 7-12. It also alleges that Ledge has used this leverage to obtain apparent settlements from these competitors (and has attempted to do the same with Global). PageID.614-618, 623 ¶¶ 46-66, 94-95. Moreover, Ledge itself concedes that it sells its product throughout the United States. *See* PageID.558 ¶ 8; PageID.615 ¶ 48.

Global had plausibly pled that Ledge is attempting to use its fraudulently-obtained trade dress in an attempt to monopolize the market for wave-shaped pool lounge chairs. And while Ledge tries to nitpick with the precise market definition,

---

trademark" in "the nature of a patent." *Truck-Lite Co., LLC v. Grote Indus.,* 2021 WL 8322467, at *13 (W.D.N.Y. Sept. 17, 2021); *Picante, Inc. v. Jimenez Food Prod., Inc.*, 1982 WL 1891, at *1-2, 5 & n.4 (W.D. Tex. Aug. 15, 1982) (same).

"[m]arket definition is a highly fact-based analysis that generally requires discovery" and the "ultimate determination of the market determination need not be finalized at the pleading stage." *Procter & Gamble Co. v. CAO Grp., Inc.*, 2013 WL 5353281, at *7–8 (S.D. Ohio Sept. 24, 2013) (citing cases). At this stage, Global has cleared the low bar of Rule 8(a) in stating a claim. *See Regeneron*, 96 F.4th at 342-43 (holding party plausibly stated *Walker Process* attempted monopolization claim by alleging use of fraudulently-obtained patent to limit competitors' use of the product or obtain concessions to license the same).[6]

## III.  Ledge's effort to dismiss Global's invalidity counterclaims is a vexatious litigation tactic that warrants sanctions.

Under 28 U.S.C. § 1927, an attorney may be sanctioned for "unreasonable and vexatious multiplication of litigation," without a showing of subjective bad faith. *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Sanctions are available if the attorney "knowingly disregards the risk that his actions will needlessly multiply proceedings." *Id.* Such sanctions are warranted with respect to Ledge's attempt to dismiss the invalidity counterclaims.

As discussed, Ledge did not move to strike Global's affirmative defenses related to invalidity, meaning that those issues will remain in the case regardless of

---

[6]Ultimately, should the Court believe dismissal is warranted for *any* counterclaim, the dismissal should be without prejudice so that Global may allege further facts—particularly as Ledge did not seek dismissal with prejudice. *See Tomelleri v. SunFrog, LLC*, 2024 WL 940238, at *8 (E.D. Mich. Mar. 5, 2024) (Ludington, J.)

its motion. *Supra* at 6. Those issues will likewise remain in the case because Ledge alleges common-law trade dress rights, making validity an element of *its* prima facie case. *See In-N-Out Burgers v. Doll n' Burgers LLC*, No. 20-11911, 2022 WL 791924, at \*17 (E.D. Mich. Mar. 14, 2022). Worse, if the trade dress invalidity claims are not addressed in this forum, then the parties will need to litigate that issue in a collateral proceeding before the USPTO—where, notably, Ledge has *answered* Global's invalidity claims rather than move to dismiss. *See* Response Ex. B. Ledge will need to answer the invalidity issues one way or the other, and its motion to dismiss does nothing but waste Global's money and the Court's time.

## Conclusion

The Court should deny Ledge's motion and award Global the fees it incurred in having to respond to the motion to dismiss its invalidity counterclaims.

Respectfully submitted,

/s/*Thomas J. Davis*
Thomas J. Davis (P78626)
KIENBAUM HARDY
VIVIANO PELTON & FORREST, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
tdavis@khvpf.com
Dated: September 16, 2024       Attorney for Global Lift Corp.

**Certificate of Service**

I hereby certify that on September 16, 2024, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

*/s/Thomas J. Davis*
Thomas J. Davis (P78626)
Kienbaum Hardy
Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com

533816