UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| Ledge Lounger, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Global Lift Corp. <br> d/b/a Global Pool Products, <br><br> Defendant. | Case No. 1:24-cv-11267-TLL-PTM <br><br> Hon. Thomas L. Ludington <br><br> Magistrate Judge Patricia T. Morris |

**PLAINTIFF'S OPPOSITION TO COUNTERCLAIM PLAINTIFF GLOBAL LIFT CORP.'S MOTION TO COMPEL re: LEDGE LOUNGER's UNTIMELY RESPONSES <u>TO REQUESTS FOR ADMISSION</u>**

## I. STATEMENT OF THE ISSUES

1. Whether the Court should exercise its discretion and find that Global's requests for admissions are <u>not</u> deemed admitted when Ledge Lounger served its objections one day late.

2. Whether Ledge Lounger's Fed. R. Evid. 408 objections to Global's requests for admission should be upheld because the requests relate to alleged statements in settlement negotiations that Global intends to use to prove element(s) of its abuse of process counterclaim, which is inadmissible under Fed. R. Evid. 408.

3. Whether Ledge Lounger's relevancy objection to Global's requests for admission should be upheld because Ledge Lounger's alleged settlement of disputes with other parties relating to trade dress disputes is irrelevant to Global's abuse of process claim and do not constitute admissible evidence of other wrongs or acts under Fed. R. Evid. 404(b)(2).

**II.   CONTROLLING AUTHORITY**

1. Issue No. 1- Fed. R. Civ. P. 36(b); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153-54 (6th Cir. 1997); *Hoffman v.* Neves, 2019 WL 13323949, *2 (E.D. Mich. June 1, 2019).

2. Issue No. 2 – Fed. R. Evid. 408; *Ciolli v. Iravani*, 625 F.Supp.2d 276, 288 (E.D. Pa. 2009).

3. Issue No. 3 -  Fed. R. Evid. 404(b)(2); *Peisner v. Detroit Free Press*, 68 Mich. App. 360, 366 (1976); *United States v. Clay,* 667 F.3d 689, 693 (6th Cir. 2012).

### III.   INTRODUCTION

Global's narrative that Ledge Lounger filed this lawsuit to retaliate against Global for filing a cancellation petition in the PTO and to coerce Global to dismiss the cancellation petition is simply wrong. PageID.1396; *see also* PageID.628-629 (¶¶ 117, 120). In fact, Global's narrative is fatally flawed because Ledge Lounger did not know about Global's cancellation petition when Ledge Lounger filed its complaint. Global filed its petition to cancel Ledge Lounger's federal trademark registration on November 6, 2023. Ex. B (exhibits to petition omitted). Neither Ledge Lounger nor its counsel received notice of the November 6 filing due to an invalid email address associated with Ledge Lounger's registration. *See* Ex. A, at 2. Ledge Lounger and its counsel first learned of Global's cancellation petition on December 20, 2023, Ex. A, at 2, over a *month after* Ledge Lounger's November 10, 2023, filing of the complaint. PageID.27.

Ledge Lounger's goal from the beginning has been to stop Global's infringement of Ledge Lounger's trade dress rights. Indeed, on August 28, 2023, Ledge Lounger sent a letter to Global Pool identifying its trade dress rights and requesting that Global Pool cease making and selling its Global Lounger chair which infringed those rights. PageId.12 (¶ 33), PageId.32-35 (Ex. 2). On October 4, 2023, Global refused to stop selling its infringing chair. PageId.12 (¶ 34). Because Global Pool refused to cease its infringing activities Ledge Lounger filed the present lawsuit. PageID.13 (¶ 35). In short, Ledge Lounger's filing of this lawsuit had nothing to do with Global's cancellation petition and everything to do with stopping Global's infringement.

That said, Global's motion to compel should be denied. Global wastes the Court's and parties' resources moving that requests for admission to be deemed admitted based on being served one day late when Global suffered no prejudice from the one day delay. Next, Ledge Lounger's objections to the requests for admission should be upheld because, as explained below, they are justified.

## IV. ARGUMENT

### A. The Court Should Exercise Its Discretion and Decline to Find the Requests for Admission Deemed Admitted

Ledge Lounger served its objections to Global's first set of requests for admission "a day after the deadline," PageID.1396, due to a mistake docketing the response date. Ledge Lounger acknowledged this error and apologized to Global. Exhibit C. Global failed to provide the Court with this correspondence. Instead, Global proceeded with its discourteous request that the requests for admission be deemed admitted.

Discourtesies aside, whether an untimely response to a request for admission is deemed admitted is a discretionary matter for the court. *Hoffman v.* Neves, 2019 WL 13323949, *2 (E.D. Mich. June 1, 2019). Furthermore, Fed. R. Civ. P. 36(b) authorizes a court to "permit a longer time for a written answer" and to allow a party to withdraw an admission "if it would promote the presentation of the merits of the action" and would not prejudice the requesting party, as would be the case here. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153-54 (6th Cir. 1997) (district court did not abuse its discretion by deeming admissions withdrawn at oral argument where party did not file timely responses to requests for admission). Global does not argue that it suffered any prejudice from a one day late response. Accordingly, the Court should exercise its discretion and find that Global's Requests for Admission are <u>not</u> deemed admitted.

### B. Requests for Admission Nos. 1-3 Seek Admissions as to Compromise Negotiations That are Inadmissible Under Fed. R. Evid. 408

Ledge Lounger's objections to Request for Admission Nos. 1-3 are fully supported by the plain language of Fed. R. Evid. 408 and case law applying the rule. Rule 408 acts to protect freedom of discussion during settlement negotiations and thereby encourage settlements among

- 4 -

the parties. *Ciolli v. Iravani*, 625 F.Supp.2d 276, 285 (E.D. Pa. 2009). As aptly stated by the *Ciolli* court:

> If parties were permitted to take the content of [settlement] negotiations and use them in subsequent litigation for wrongful initiation of civil proceedings or abuse of process, then counsel would put themselves and their clients at risk of suit in every settlement conference in which they participate, resulting in either less effective or even non-existent negotiations.

*Id.* at 288. Global's attempts to use settlement discussion *from this case* to support its abuse of process claim *in this case* is precisely what Rule 408 is designed to avoid.

By its plain language, Rule 408 renders inadmissible statements made in attempts to settle a claim that are used to "prove … the validity … of a disputed claim." Fed. R. Evid. 408. That is exactly what Global wants to do here. Global seeks to use alleged statements from settlement discussions *about this case* to prove elements of its abuse of process claim *in this case*, namely (1) an ulterior motive, and/or (2) an act in the use of process. *Friedman v. Dozorc,* 412 Mich. 1, 30 (1981) (elements of abuse of process claim under Michigan law). "Where a seemingly permissive purpose under FRE 408 ultimately bears on an element of liability, exclusion applies." *Ciolli,* 625 F.Supp.2d at 288. Indeed, numerous courts have applied Rule 408 to find statements from settlement discussions inadmissible to support an abuse of process claim. *See e.g. Ciolli,* 625 F.Supp.2d at 287-88 (finding Rule 408 barred introduction of settlement negotiations to prove liability of defendants in action for abuse of process); *Fredin v. Middlecamp,* 2018 WL 4616456, *5 (D. Minn. Sept. 26, 2018) (dismissing abuse of process claim finding settlement statements barred by Rule 408 could not support claim); *World Enterprises v. Aquila, Inc.*, 2013 WL 4592204, *6 (D. Utah Aug. 28, 2013) (finding Rule 408 prohibited supporting abuse of process claim with settlement negotiation evidence relating to alleged improper purpose of legal process).

Global argues that it is not seeking admissions to prove liability, PageID.1401, but Global is "merely repackaging evidence that is so obviously related to liability in order to skirt the bounds of FRE 408." *Ciolli*, 625 F.Supp.2d at 288.

*Wine & Canvas* cited by Global is not precedential and the Court should not follow its reasoning because it is contrary to Michigan's abuse of process law. *Wine & Canvas* involved an abuse of process claim brought under Indiana law. *Wine & Canvas Development, LLC v. Muylle*, 868 F.3d 534, 537 (7th Cir. 2017). The district court admitted settlement testimony to show Plaintiffs' "improper intent and ulterior motive *in filing their lawsuit.*" *Id.* at 540. Here, "Global seeks to prove Ledge Lounger's improper motive *in filing this lawsuit* for its abuse-of-process claims," ECF #32 at 11 of 14 (emphasis added), but an abuse of process claim cannot be based off Ledge Lounger's filing of the lawsuit. *Friedman v. Dozorc*, 412 Mich. 1, 30 (1981) (affirming dismissal for failure to state a claim). And, as discussed above, Ledge Lounger's motive for filing this lawsuit was to stop Global's trade dress infringement. PageID.12-13 (¶¶ 33-35).

The *Penn* decision Global cites is not helpful nor persuasive. Notably, the Sixth Circuit *reversed* the *Penn* decision and the judgment on the abuse of process claim, finding no reasonable jury could find for Penn on its abuse of process claims. *Penn, LLC v. Prosper Bus. Dev. Corp.*, 600 Fed. Appx. 393, 397-400. (6th Cir. 2015). Furthermore, the Sixth Circuit found that the district court abused its discretion in admitting the testimony of Arnold relating to settlement discussions and the "ulterior motive" element of an abuse of process claim. *Id.* at 405.

*BTG* is distinguishable for multiple reasons. First, *BTG* addressed a motion to strike a pleading under Fed. R. Civ. P. 12(f) and a claim under Pennsylvania law for abuse of process. *BTG Int'l Inc. v. Bioactive Labs,* 2016 WL 3519712, *1, *10 (E.D. Pa. June 28, 2016). The court found that Rule 408 "does not govern the pleadings" and denied the motion to strike. *Id.* at *11. BTG's

pleading included terms of a written settlement proposal "as evidence of Defendants' improper use of [an] IPR[1] proceeding" allegedly filed to extort a large settlement. *Id.* at *3, 10.[2] Thus, BTG initiated a patent office proceeding to extort a settlement payment from the patent owner. In contrast, *Global* filed the trademark cancellation petition and Ledge Lounger filed this lawsuit to stop Global's trade dress infringement. Moreover, *BTG's* discussion of Rule 408 reinforces that the discovery Global seeks is inadmissible. *BTG* reiterated that settlement discussions are admissible only "if they are offered for a purpose *other than to prove liability* or the validity of an underlying claim." *Id.* at *10. That is not the present situation. Again, Global seeks to use alleged settlement negotiations to prove an element of its abuse of process claim, which goes directly to liability.

For all of these reasons, Ledge Lounger's objections are justified.

### C. Requests for Admission Nos. 4 and 5 Seek Irrelevant Information

Ledge Lounger objected to Request for Admission Nos. 4 and 5, which seek admissions as to Ledge Lounger's trade dress disputes with others, on the ground that the requests are irrelevant. The objection is justified and should be sustained. Whether, and on what terms, Ledge Lounger settled trade dress disputes with others has no bearing on Ledge Lounger's motivation for filing *this* suit. Ledge Lounger's motivation for filing this suit is plain and obvious—Ledge Lounger brought this suit to protect its trade dress rights after Global refused to stop infringing those rights. PageID.12-13 (¶¶33-35). Global does not dispute that evidence of prior acts arising before this

---

[1] "IPR" refers to an *Inter Partes* Review proceeding in the Patent Trial and Appeal Board for challenging the patentability of issued patent claims. *BTG,* 2016 WL 3519712, *2.

[2] The elements of an abuse of process claim under Pennsylvania law differ from the element under Michigan law. *See BTG*, 2016 WL 3519712, *10 citing *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. Ct. 2008) (stating that the elements of abuse of process in Pennsylvania are: (1) defendant used a legal process; (2) to accomplish a purpose for which the process was not designed; and (3) harm has been caused to plaintiff as a result).

lawsuit was filed cannot constitute an improper act in the abuse of process. *Peisner v. Detroit Free Press*, 68 Mich. App. 360, 366 (1976).

Because the other disputes are not direct evidence of Ledge Lounger's motivation for filing this suit, Global turns to circumstantial evidence and Fed. R. Evid. 404(b)(2), but to no avail. More specifically, Global argues that "if" Ledge Lounger had a "pattern" of using "infringement lawsuits" to "coerce competitors into ending trademark validity challenges" that could be evidence of improper motivation admissible under Fed. R. Evid. 404(b)(2). PageID.1401. Global's speculation regarding a "pattern" is not only unsupported but also insufficient to allow evidence under Fed. R. Evid. 404(b)(2).

Admitting evidence under Rule 404(b)(2) relies on a three part test established by the Sixth Circuit:

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Clay,* 667 F.3d 689, 693 (6th Cir. 2012).

Here, Global fails the first part of the test because there is no evidence the alleged "pattern" "actually occurred." Indeed, Global's allegations for its counterclaims demonstrate that there has been no "infringement lawsuits" used to end "trademark validity challenges." Global's counterclaim identifies three trade dress disputes: (i) Advantus Corp's filing a notice of opposition to Ledge Lounger's trade dress application (PageID.617, ¶ 62), (ii) Ledge Lounger's trade dress infringement suit against Luxury Lounger, Inc. (PageID.617-618, ¶ 65), and (iii) a declaratory judgment action filed by The Step2 Company, LLC against Ledge Lounger (PageID.618, ¶ 66). None of these three scenarios involved an "infringement lawsuit" to "coerce" the end of a

"trademark validity challenge" in the PTO. As to Advantus, Ledge Lounger did not file an "infringement lawsuit" against Advantus. *See* PageID.12-13 (¶¶ 33-35). As to Luxury Lounger, there was no "trademark validity challenge" in the PTO because Luxury Lounger did not file a cancellation proceeding. PageID.618-619 (¶ 65). As to Step2, Ledge Lounger did not file an "infringement lawsuit" against Step2—Step2 filed suit for a declaratory judgment—and that litigation "is pending" and has not settled. PageID.618 (¶ 66). Thus, Global's reliance on a "pattern" of past acts under Fed. R. Evid. 404(b)(2) is misplaced as the alleged acts did not "actually occur."

## V.   Conclusion

For the foregoing reasons, Global's motion to compel should be denied.

ATTORNEYS FOR PLAINTIFF, LEDGE LOUNGER, INC.

By: */s/ Matthew P. Becker*

| | |
|---|---|
| John S. Artz   (P48578) | Scott A. Burow (IL Bar. No. 6242616) |
| DICKINSON WRIGHT LLC | Matthew P. Becker (IL Bar No. 6255614) |
| 350 S. Main Street, Ste. 300 | BANNER & WITCOFF, LTD. |
| Ann Arbor, MI 48104 | 71 S. Wacker Drive, Suite 3600 |
| Telephone: (248) 433-7262 | Chicago, IL 60606 |
| jsartz@dickinsonwright.com | Telephone: (312) 463-5000 |
| | sburow@bannerwitcoff.com; mbecker@bannerwitcoff.com |

## **CERTIFICATE OF SERVICE**

I certify that on October 22, 2024, a true and accurate copy of PLAINTIFF'S OPPOSITION TO COUNTERCLAIM PLAINTIFF GLOBAL LIFT CORP.'S MOTION TO COMPEL re: LEDGE LOUNGER's UNTIMELY RESPONSES TO REQUESTS FOR ADMISSION was filed with the court through its ECF filing system, thereby providing notice to all counsel of record.

/s/ *Matthew P. Becker*
Attorney for Plaintiff